UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED PARCEL SERVICE, INC,           :

                                                        :        Civil Action No.
                Plaintiff,               :        1:12-cv-07961-SAS
                                                        :
   -against-                              :
                                                       :
LEXINGTON INSURANCE COMPANY,  :
                                                       :
              Defendant.              :
---------------------------------------------------------------x

 

**DEFENDANT LEXINGTON INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY
<u>TO STAY THE LITIGATION AND COMPEL ARBITRATION</u>**

 

SEDGWICK LLP
225 Liberty Street, 28th floor
New York, New York 10281
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

**PRELIMINARY STATEMENT**

Defendant Lexington Insurance Company ("Lexington"), by and through its attorneys, Sedgwick LLP, hereby moves this Court for an Order: (a) dismissing the Complaint filed by Plaintiff, United Parcel Service, Inc. ("UPS"), pursuant to Rule 12(c) of the Rules of Civil Procedure; or, alternatively, (b) staying the litigation and compelling UPS to arbitrate its claims against Lexington pursuant to the binding arbitration provision in the Lexington policy.

This is an insurance coverage action in which UPS seeks coverage as an additional insured under a Lexington policy for a personal injury matter pending in Kings County Supreme Court in which UPS is a defendant. As explained below, UPS commenced this action improperly and in violation of the policy's binding arbitration agreement.

Lexington issued Commercial General Liability Policy No. 43926334 (the "Primary Policy") to its named insured, Adelis International Security, Inc. ("Adelis"). Adelis, a security company, had entered into a Guard Services Agreement ("GSA") with UPS to furnish security personnel at various locations, and which required Adelis to name UPS as an additional insured on Adelis' general liability policies. While working at a UPS facility pursuant to the GSA, an Adelis employee was struck by a UPS vehicle, allegedly causing her bodily injury. The employee sued UPS for negligence, and UPS has sought coverage under the Primary Policy pursuant to the Policy's additional insured endorsement.

For purposes of this motion, the only pertinent portion of the Primary Policy is the Arbitration clause, which provides that, in the event of a disagreement as to the interpretation of the Policy, the dispute shall be submitted to binding arbitration before a panel of three arbitrators. Here, there is a dispute between Lexington and UPS as to whether UPS may be afforded coverage under the wording of the additional insured endorsement. This dispute necessarily involves an interpretation of the Policy, and whether the facts presented by the

1

underlying action permit UPS to be an additional insured. Consequently, the action should be dismissed because the Policy requires that it be resolved through arbitration.

## FACTUAL BACKGROUND

### A. The Guard Services Agreement

UPS entered into the GSA with Adelis on or about May 1, 2007. (See GSA, Ex. B to Pl.'s Compl.)[1] The GSA provides that Adelis shall furnish UPS with uniformed guards at various locations and during such hours as shall be mutually agreed upon by UPS and Adelis. (GSA, at ¶ 1.) Section 8 of the GSA requires Adelis to carry certain insurance coverage, including commercial general liability insurance, and further provides that UPS shall be named as an additional insured on these policies. (GSA, at ¶ 8.) The Rider to the GSA contains a substantially similar requirement regarding insurance procurement.

### B. The Primary Policy

Lexington issued the Primary Policy to Adelis for the policy period from January 18, 2009 to January 18, 2010. (See Primary Policy, Ex. A to Pl.'s Compl.) The Primary Policy contains an endorsement titled, "Additional Insured – Owners and Property Managers When Required By Written Contract With You." Although not at issue in this motion, the Additional Insured endorsement provides coverage for UPS but only with respect to liability for bodily injury caused by Adelis's ongoing operations for UPS, and only to the extent that the bodily injury was caused by Adelis's negligence or the negligence of those performing operations on Adelis's behalf.

---

[1] Plaintiff's Complaint, and the exhibits annexed to the Complaint, are attached as Exhibit A to the Declaration of J. Gregory Lahr dated February 15, 2013 (herein "Lahr Decl."). These exhibits may be considered by the Court in deciding this motion because the Second Circuit has held that, when deciding a motion under Rule 12, a court may consider certain materials without converting it into a summary judgment motion, including "the facts alleged in the complaint, documents attached to the complaint as exhibits, … documents incorporated by reference in the complaint," and documents that are "'integral' to the complaint" and about which there are "'no dispute[s] … regarding … authenticity or accuracy.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

The Primary Policy also contains an Arbitration clause at Section 15 of the Policy, which provides in pertinent part:

> Notwithstanding the Service of Suit Condition above, in the event of a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.
>
> *   *   *
>
> The arbitration proceeding shall take place in or in the vicinity of the Named Insured's address as shown in the Declarations or such other place as may be agreed to by the Named Insured and us. The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

As indicated on the Declarations page, Adelis is located in Rosedale, New York, which should be the general location of the arbitration.

**C.    The Underlying Action**

The underlying action, titled <u>Marilyn Chase v. United Parcel Service, Inc.</u>, was commenced on March 23, 2010 in the Supreme Court of the State of New York, County of Kings, under Index No. 7445/2010 ("Underlying Action"). (<u>See</u> Underlying Complaint, Ex. C to Pl.'s Compl.) In the complaint in the Underlying Action, Chase alleges that, on January 28, 2009, she was lawfully on the premises located at 643 West 43rd Street in New York City when she was struck by a tug car owned and operated by UPS, and sustained serious personal injury. (Underlying Compl., at ¶¶ 4-9.) She further alleges that the incident took place solely as the result of UPS's negligence. (Underlying Compl., at ¶ 10.) There is no mention whatsoever of Adelis in the Underlying Complaint.

**D.    UPS's Complaint**

As alleged in Plaintiff's Complaint, UPS's insurance carrier, Liberty Mutual, tendered UPS's defense of the Underlying Action to Adelis on November 18, 2009, and requested that

3

Adelis advise Lexington. (Pl.'s Compl., at ¶ 24.) On December 3, 2009, Lexington denied coverage for UPS for the Underlying Action because Chase's injury was caused by the negligence of UPS's employee. (Pl.'s Compl., at ¶ 29.)

This action ensued by UPS's filing of its Complaint against Lexington on October 25, 2012. Lexington filed its Answer on February 6, 2013, reserving its right to seek dismissal of the action pursuant to the Arbitration clause. (See Lahr Decl., Ex. B.) In accordance with the Court's Individual Rules and Procedures section IV.B, undersigned counsel sent a letter to UPS' counsel dated January 25, 2013, advising that Lexington may seek dismissal of the Complaint pursuant to the Primary Policy's Arbitration clause. (See Lahr Decl., Ex. C.) UPS' counsel responded by letter dated January 31, 2013. (See Lahr Decl., Ex. D.)

Under the plain terms of the Arbitration clause, any dispute related to policy interpretation must be submitted to binding arbitration, which includes UPS's dispute with Lexington regarding the application of the Additional Insured endorsement in the Primary Policy. The Policy provides that arbitration is the "the sole and exclusive remedy" for the resolution of any policy interpretation issues. As such, UPS wrongfully filed this declaratory judgment action, and it should be dismissed so that the parties may proceed to arbitration.

## LEGAL ARGUMENT

A.   **The Policy's Arbitration Clause is Enforceable and Requires UPS to Arbitrate**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract. [Emphasis added.]

4

The FAA requires courts to render contractual arbitration agreements enforceable.  See Volt Info. Scis., Inc. v. Board of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989).  See also Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265 (1995) (reasoning that the basic purpose of the FAA is to overcome courts' refusals to enforce agreements to arbitrate).  Moreover, the FAA "leaves no place for the exercise of discretion by a District Court, but instead mandates that District Courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

The Court of Appeals for the Second Circuit has indicated a strong preference to uphold and enforce arbitration clauses, finding that contractual agreements between parties outweigh even judicial economy and efficiency considerations.  See, e.g., Rush v. Oppenheimer & Co., 779 F.2d 885, 891 (2d Cir. 1985); In re Hagerstown Fiber Ltd. P'ship., 227 B.R. 181, 204 (Bankr. S.D.N.Y. 2002).  The Second Circuit has implemented a three-part inquiry for courts to ascertain whether a dispute falls within the scope of an arbitration clause.

First, the Court should determine whether the particular arbitration clause is broad or narrow.  See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001).  Although the Second Circuit does not have a hardened rule to determine an arbitration clause's scope, a provision requiring arbitration for disputes arising from the making and performing of a contract is generally deemed to be broad.  Id.

Second, if the arbitration clause is broad, there is a presumption of arbitrability for disputes, including matters ancillary to the claim triggering the arbitration.  Id. (the FAA "expresses 'a liberal federal policy favoring arbitration agreements' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'") (citing Moses H. Cone

5

Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)). See also Raytheon Co. v. National Union Fire Ins. Co., 306 F. Supp. 2d 346, 355 (S.D.N.Y. 2004) (Scheindlin, J.).

Third, if the court concludes the arbitration clause to be narrow, then the court must determine whether the dispute either falls within the purview of the arbitration clause and is therefore arbitrable, or if the issue is beyond the scope of the clause and is therefore not arbitrable. Louis Dreyfus Negoce S.A., 252 F.3d at 224. To determine whether a narrow arbitration clause governs over a claim, the court concentrates on the factual allegations set forth in a complaint instead of the causes of action asserted. See Energy Transp., Ltd. v. M.V. San Sebastian, 348 F. Supp. 2d 186, 207 (S.D.N.Y. 2004).

Here, UPS alleges that its tender of defense was timely, it met all of the conditions for coverage under the Policy, there are no exclusions in the Policy which would preclude coverage for the Underlying action, and UPS provided timely and proper notice of Chase's claims to Lexington. (Pl.'s Compl., at ¶¶ 25-28.) Although UPS further alleges that Lexington did not deny coverage due to a failure to meet the conditions of coverage, or under a Policy exclusion (Pl.'s Compl., at ¶ 30), that is inaccurate on its face. In fact, Lexington denied coverage under the Additional Insured endorsement because there was no allegation that Chase's bodily injury was caused by Adelis' negligence. As such, a condition of coverage (*i.e.*, Adelis being negligent) was not satisfied when UPS sought coverage (and still is not satisfied), and coverage is precluded for UPS for the same reason.

In view of the instant dispute as to what the terms of the Additional Insured endorsement require for coverage to be triggered for UPS, the Policy's Arbitration clause is implicated. The Policy's Arbitration clause applies to every dispute regarding "a disagreement as to the interpretation of this policy." Thus, the Arbitration clause encompasses the instant dispute

6

because an interpretation of the endorsement is at the heart of the disagreement between UPS and Lexington.

It is anticipated that UPS will assert that there is no dispute as to an interpretation of the Primary Policy which requires arbitration, and that the dispute involves only a question of whether Chase's injury was caused by Adelis's negligence.  In this instance, this is a distinction without a difference, and case law supports adhering to the Arbitration clause.

As an initial matter, the same argument has been raised in other federal actions with respect to a Lexington arbitration clause (or a very similarly worded arbitration clause), and rejected by the court.  See, e.g., Ag La Mesa LLC v. Lexington Ins. Co., No. 10cv1873, 2011 WL 11504 (S.D. Cal. Jan. 3, 2011); Harwest Indus. Minerals Corp. v. Twin City Fire Ins. Co., No. 09-cv-01089, 2010 WL 582364 (D. Colo. Feb. 18, 2010) (construing co-defendant Lexington's arbitration clause).  See also Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co., 857 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2012) (finding that, because the resolution of the dispute likely will require the decision-maker to interpret the terms of the agreement, and given the strong federal policy requiring any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration, National Union has shown enough to permit the Court to conclude that the dispute is within the purview of the arbitration clause).

The Arbitration clause requires UPS to arbitrate its dispute with Lexington relating to whether the Additional Insured endorsement is triggered such that there may be coverage for UPS for the Underlying Action.  An interpretation of the endorsement as applied to the complaint in the Underlying Action is directly at issue in this dispute.  Because there was no indication in the Underlying Action that Chase's bodily injury was caused by Adelis's negligence, Lexington denied coverage under the terms of the Additional Insured endorsement.

7

To the extent that UPS disagrees with Lexington's determination, it now must arbitrate that disagreement.

Moreover, the Arbitration clause specifically incorporates the Commercial Arbitration Rules of the American Arbitration Association (the "AAA Rules"). Rule 7 of the AAA Rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (See Lahr Decl., Ex. E.) In the Second Circuit, where the operative arbitration agreement incorporates the AAA Rules, the issue of arbitrability is to be decided by the arbitrator(s). See Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) ("We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.") As such, to the extent UPS questions the arbitrability of the instant dispute, it should be determined by the arbitrators selected by Lexington and UPS.

In the event that UPS argues that it is not bound by the Arbitration clause because it is an additional insured and not the Named Insured, that argument also has been rejected. See Best Concrete Mix Corp. v. Lloyd's of London Underwriters, 413 F. Supp. 2d 182, 187 (S.D.N.Y. 2006) (granting insurer's motion to stay litigation and compelling arbitration, and holding that, "[b]y seeking to enforce its indemnification rights as an additional insured under the policy, Best must also be bound by its arbitration clause because it wishes to avail itself of the protection and direct benefits afforded by the policy").

Lastly, case law supports the dismissal of UPS's Complaint at this time, so that arbitration of the dispute may proceed. See Indian Harbor Ins. Co. v. Global Transport Sys., Inc., 191 F. Supp. 2d 400 (S.D.N.Y. 2002) (granting motion to dismiss complaint); Cheshire

Place Assoc. v. West of England Ship Owners Mutual Ins. Assoc., 815 F. Supp. 593 (E.D.N.Y. 1993) (granting summary judgment and dismissing complaint).

## CONCLUSION

For the foregoing reasons, Lexington respectfully requests that the Court issue an order (a) dismissing Plaintiff's Complaint, or, alternatively, (b) staying the current litigation and compelling Plaintiff to submit to arbitration, and (c) any further relief that this Court deems reasonable and just.

Dated: New York, New York
February 15, 2013

Respectfully submitted,

SEDGWICK LLP

By: /s/ J. Gregory Lahr
J. Gregory Lahr (JL9969)
Ryan C. Chapoteau (RC1986)
*Attorneys for Defendant*
*Lexington Insurance Company*
225 Liberty Street, 28th Floor
New York, NY  10281-1008
Telephone: 212.422.0202
Facsimile: 212.422.0925

9