UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., | Case No.: 12-cv-07961 (SAS) |
| Plaintiff, | ECF Case |
| - against - | |
| LEXINGTON INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT LEXINGTON INSURANCE COMPANY'S
MOTION FOR JUDGMENT ON THE PLEADINGS, OR ALTERNATIVELY
TO STAY THE LITIGATION AND COMPEL ARBITRATION**

ANSA ASSUNCAO, LLP
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

     A.     The Policy .............................................................................................................. 2

          1.     The Additional Insured Endorsement ................................................. 3

          2.     The Insured Contract Provision .......................................................... 3

          3.     The Arbitration Clause ......................................................................... 4

     B.     The Underlying Action ....................................................................................... 4

     C.     UPS's Tender And Lexington's Response .......................................................... 5

     D.     The Instant Action .............................................................................................. 5

LEGAL ARGUMENT ......................................................................................................... 6

     I.     THE ARBITRATION CLAUSE DOES
          NOT COVER THE INSTANT DISPUTE ................................................. 6

     II.     THE COURT SHOULD DECIDE ANY
          QUESTION OF ARBITRABILITY ......................................................... 9

     III.     LEXINGTON'S MOTION DOES NOT ADDRESS
          UPS'S SECOND AND THIRD CAUSES OF ACTION .......................... 11

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page**

C<small>ASES</small>

*AG La Mesa LLC v. Lexington Ins. Co.*,
   No. 10-cv-1873, 2011 WL 11504 (S.D.Cal. Jan. 3, 2011) .......................................9

*Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
   857 F.Supp.2d 404 (S.D.N.Y. 2012) ....................................................................7, 8, 9

*Associated Indemnity Corp. v. Home Insurance Co.*,
   19 F.3d 1432, 1994 WL 59001 (6th Cir. 1994) .........................................................7, 8

*AXA Versicherung AG v. New Hampshire Ins. Co.*,
   708 F.Supp.2d 423 (S.D.N.Y. 2010) ..........................................................................7, 8

*Bank of America, N.A. v. Diamond State Ins. Co.*,
   38 Fed.Appx. 687 (2d Cir. 2002) ..................................................................................10

*Bell v. Cendant Corp.*,
   293 F (2d Cir. 2002) ......................................................................................................10

*Contec Corp. v. Remote Solution Co., Ltd.*,
   398 F.3d 205 (2d Cir. 2005) ..........................................................................................11

*Harwest Industrial Minerals Corp. v. Twin City Fire Ins. Co.*,
   No. 09-cv-01089, 2010 WL 582364 (D.Colo. Feb. 18, 2010) .....................................9

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79, 123 S.Ct. 588 (2002) ....................................................................6, 10, 11

*In re American Express Financial Advisors Securities Litigation*,
   672 F.3d 113 (2d Cir. 2011) ........................................................................................6, 7

*International Business Machines v. United States Fire Ins. Co.*,
   17 Misc.3d 1108(A), 851 N.Y.S.2d 58, 2007 WL 1891408 (Supreme Ct. N.Y. Co.
   2007) ...............................................................................................................................9

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ...........................................................................................6

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
   252 F.3d 218 (2d Cir. 2001) ...........................................................................................7

*Ogden Corp. v. Travelers Indemnity Co.*,
   681 F.Supp. 169 (S.D.N.Y. 1988) ..................................................................................9

*Regal Construction Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*,
    15 N.Y.3d 34, 904 N.Y.S.2d 338 (2010) ...............................................................8

*Rochdale Village, Inc. v. Public Service Employees Union*,
    605 F.2d 1290 (2d Cir. 1979).................................................................................7

*Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662, 130 S.Ct. 1758 (2010).....................................................................6

*Telenor Mobile Communications AS v. Storm LLC*,
    584 F.3d 396 (2d Cir. 2009)..................................................................................10

*Westport Ins. Corp. v. Napoli, Kaiser & Bern*,
    746 F.Supp.2d 502 (S.D.N.Y. 2010)......................................................................9

Plaintiff United Parcel Service, Inc. ("UPS"), by its attorneys, Ansa Assuncao, LLP, submits this memorandum of law in opposition to Defendant Lexington Insurance Company's ("Lexington") motion for judgment on the pleadings or, alternatively to stay the litigation and compel arbitration.

## PRELIMINARY STATEMENT

UPS seeks a declaration that Lexington is obligated to defend and indemnify it in a personal injury action (the "Underlying Action") commenced by an employee of Lexington's insured, Adelis International Security, Inc. ("Adelis"). UPS relies upon both the additional insured endorsement (the "Additional Insured Endorsement") and the insured contract provision (the "Insured Contract Provision") of Lexington's insurance policy with Adelis. UPS also seeks damages for breach of contract.

Lexington argues that this case should be dismissed or stayed due to the policy's arbitration clause (the "Arbitration Clause"). Lexington's motion should be denied for the following reasons. First, the Arbitration Clause does not apply. It requires arbitration only in the event of "a disagreement as to the interpretation" of the policy. (Complaint, Exhibit A, at Section IV, at ¶ 15.)[1] No such disagreement exists here. The issue is the application of the facts to the unambiguous and undisputed terms of the Additional Insured Endorsement.

Specifically, the Additional Insured Endorsement provides coverage to UPS as an additional insured for liability for bodily injury caused by Adelis's ongoing operations for UPS to the extent that such bodily injury is caused by Adelis's negligence or the negligence of those performing operations on Adelis's behalf. There is no dispute as to its meaning that requires interpretation.

---

[1] The Complaint is attached as Exhibit A to the Declaration of J. Gregory Lahr, dated February 15, 2013.

Tellingly, Lexington fails to identify any language in the Additional Insured Endorsement that is open to interpretation.  Instead, it contends that the complaint in the Underlying Action does not allege negligence by Adelis.  It is well settled that evidence of negligence, which UPS provided to Adelis, is sufficient.  Lexington's erroneous contention, therefore, is resolved by case law, not an interpretation of the Additional Insured Endorsement.

Second, the Arbitration Clause does not require the issue of arbitrability to be decided by an arbitrator.  The Court should decide the issue.

Third, Lexington's motion addresses only UPS's first cause of action involving the Additional Insured Endorsement.  The Court's determination of the motion, therefore, should be limited to that cause of action.  Lexington fails to address UPS's second cause of action involving the Insured Contract Provision or third cause of action for breach of contract.  The Insured Contract Provision provides another, independent basis for coverage to UPS.  It provides coverage for Adelis's liability for damages under an agreement in which Adelis assumed another party's tort liability to pay for a third person's bodily injury.  Adelis assumed UPS's tort liability in their agreement.  Lexington is responsible to UPS under the Insured Contract Provision.

## STATEMENT OF FACTS

**A.**     **The Policy**

UPS and Adelis entered into a Guard Services Agreement dated May 1, 2007 (the "Guard Services Agreement"), whereby Adelis agreed to provide security services at the UPS facility located at 643 West 43rd Street, New York, New York (the "Premises").  (Complaint, Exhibit B.)  The Guard Services Agreement requires Adelis to (1) name UPS as an additional insured in the specified policies; (2) indemnify and hold harmless UPS from all claims, losses, damages, expenses or liabilities which UPS may incur or sustain by reason of any act or omission of Adelis or any employee of Adelis and any injury suffered by any employee of Adelis, including

but not limited to personal injury, except those arising out of the sole negligence of UPS; and (3) procure the specified insurance coverage, including contractual liability insurance against the liability assumed under the indemnity agreement.  (*Id*., at ¶ 8 and Rider.)

Lexington issued Adelis a commercial general liability policy bearing policy number 43926334 and a policy term of January 18, 2009 through January 18, 2010 (the "Policy"). (Complaint, Exhibit A.)   Lexington also issued an excess liability policy to Adelis, policy number 19883784 with a policy term of January 18, 2009 through January 18, 2010.  (*Id*., at ¶ 11.)

### 1.　The Additional Insured Endorsement

The Policy contains the Additional Insured Endorsement, which states, in relevant part:

> However, such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' caused by [Adelis's] ongoing operations for the additional insured and only to the extent that such 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' is caused by [Adelis's] negligence or the negligence of those performing operations on [Adelis's] behalf.

(Complaint, Exhibit A.)

### 2.　The Insured Contract Provision

The Policy has a contractual liability exclusion, which excludes coverage for bodily injury for which Adelis is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  (Complaint, Exhibit A, at Section I, Coverage A, ¶ 2(b).)  The Insured Contract Provision states that this exclusion does not apply to liability for damages assumed in a contract or agreement that is an "insured contract."  (*Id*. at ¶ 2(b)(2).)  The Policy defines "insured contract" as follows:

> [t]hat part of any other contract or agreement pertaining to [Adelis's] business (including an indemnification of a municipality

3

> in connection with work performed for a municipality) under which [Adelis] assume[s] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Exhibit A, at Section V, ¶ 9(f).)

The Guard Services Agreement is an insured contract because it pertains to Adelis's business under which it assumes the tort liability of UPS to pay for bodily injury to a third person.

### 3.    The Arbitration Clause

The Policy contains a narrow Arbitration Clause.  It states, in the relevant part:

> Notwithstanding the Service of Suit Condition above, in the event of  a disagreement as to the interpretation of this policy, it is mutually agreed that such dispute shall be submitted to binding arbitration before a panel of three (3) Arbitrators, consisting of two (2) party-nominated (non-impartial) Arbitrators and a third (impartial) arbitrator (hereinafter "umpire") as the sole and exclusive remedy.
>
> *          *          *
>
> The arbitration proceeding shall take place in or in the vicinity of the Named Insured's address as shown in the Declarations or such other place as may be agreed to by the Named Insured and us.  The procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association.

(Complaint, Exhibit A, at Section IV, ¶ 15; emphasis added.)

### B.    The Underlying Action

On January 28, 2009, Marilyn Chase ("Chase") was an Adelis employee who worked at the Premises as a security guard manager.  (Complaint, at ¶ 19.)  Chase alleges that while working at the Premises, she was struck by a tug car that was owned and operated by UPS and its employees (the "Incident") and sustained personal injuries.  (Complaint, Exhibit C, at ¶ 9.)

On March 24, 2010, Chase commenced the personal injury action captioned *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action"). (Complaint, Exhibit C.) The evidence demonstrates that the Incident was caused in whole or in part by Chase's negligence. (Complaint, at ¶ 21.)

## C.    UPS's Tender And Lexington's Response

On November 18, 2009, UPS's insurance carrier, Liberty Mutual Insurance Company ("Liberty"), tendered UPS's defense against Chase's claims to Adelis and requested full indemnification. (Complaint, at ¶ 24.) Liberty requested that its tender be turned over to Adelis's insurance carrier. (*Id.*)

On December 3, 2009, Lexington denied Liberty's request for coverage and a defense against the Underlying Action because Lexington had allegedly determined that the Incident was the direct result of the negligence of UPS's employee. (Complaint, at ¶ 29.)

On June 20, 2012, counsel for UPS in the Underlying Action requested that Lexington revisit its denial of coverage under the Policy, accept the tender of defense and agree to indemnify UPS pursuant to the terms and conditions of the Guard Services Agreement. The request was made in light of Chase's deposition testimony which demonstrated that she bore at least partial responsibility for the Incident. (Complaint, at ¶ 31.) Lexington did not respond to the June 20, 2012 letter. (*Id.*, at ¶ 32.)

## D.    The Instant Action

On October 25, 2012, UPS commenced the instant action seeking declaratory relief under the Additional Insured Endorsement and the Insured Contract Provision, as well as damages for breach of contract.

On February 15, 2013, Lexington made the instant motion for judgment on the pleadings or, alternatively to stay the litigation and compel arbitration.

**LEGAL ARGUMENT**

**I.**

**THE ARBITRATION CLAUSE DOES NOT COVER THE INSTANT DISPUTE**

Lexington moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  In deciding a Rule 12(c) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

Lexington argues that the issue of coverage under the Additional Insured Endorsement must be submitted to arbitration.  However, UPS's claims are not subject to arbitration because there is no disagreement as to the interpretation of the Additional Insured Endorsement.

**A.      The Court's Consideration Of Arbitration Clauses.**

Arbitration clauses are subject to the Federal Arbitration Act (the "FAA").  *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1773 (2010).  The primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms.  *Id.*

Despite the liberal federal policy favoring arbitration agreements, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82, 123 S.Ct. 588, 591 (2002); *see also In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, 127 (2d Cir. 2011).

The Second Circuit follows a two-part test to determine the arbitrability of claims: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re American Express*, 672 F.3d at 127-28.

The first inquiry is not in dispute.  With respect to the second inquiry, the court should determine whether the particular clause is either broad or narrow.  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).  Where the arbitration clause is broad, a presumption of arbitrability arises.  *Id.*  If the arbitration clause is narrow, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause" or is a collateral issue that is "somehow connected to the main agreement that contains the arbitration clause."  *Id.*, quoting *Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979).  A collateral issue will generally be ruled beyond the purview of the narrow arbitration clause.  *Id.*

Courts have held that arbitration clauses limited to disputes as to the interpretation of the agreement are narrow.  *Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 857 F.Supp.2d 404, 409-10 (S.D.N.Y. 2012); *AXA Versicherung AG v. New Hampshire Ins. Co.*, 708 F.Supp.2d 423, 428 (S.D.N.Y. 2010).  The Sixth Circuit explained the reasoning for this holding in *Associated Indemnity Corp. v. Home Insurance Co.*, 19 F.3d 1432, 1994 WL 59001 (6th Cir. 1994).  In *Associated Indemnity Corp.*, the agreement required arbitration should "an irreconcilable difference of opinion arise as to the interpretation of the contract."  *Id.* at *2.  The court held that this clause was narrow and "expressly applie[d] solely to issues involving irreconcilable differences of opinion as to the interpretation of the language of the contract between the parties."  *Id.* at *3.  The court held that arbitration was not required because the movant failed to identify any provision of the contract requiring interpretation, let alone arbitration.  *Id.*

B.      **The Arbitration Clause Is Not Implicated.**

The Arbitration Clause provides that "in the event of a disagreement as to the interpretation of [the Policy]", the dispute shall be submitted to binding arbitration.  (Complaint,

Exhibit A, at Section IV, at ¶ 15.)  It is a narrow arbitration clause.  *Associated Indemnity Corp.*, 1994 WL 59001, at *2; *AXA Versicherung AG*, 708 F.Supp.2d at 428; *Alfa Laval U.S. Treasury Inc.*, 857 F.Supp.2d at 409-10.  It applies only to issues of policy interpretation.  It does not apply broadly to all disputes arising under the Policy.

The Arbitration Clause does not apply to the instant dispute.  There is no disagreement as to the interpretation of the Additional Insured Endorsement.  The language of the Additional Insured Endorsement is clear.  It provides coverage to UPS as an additional insured for liability for bodily injury caused by Adelis's negligence or the negligence of those performing operations on Adelis's behalf.  Lexington fails to identify any language in the Additional Insured Endorsement that is open to interpretation.

This action does not hinge on an interpretation of the Additional Insured Endorsement.  It hinges on the application of the facts to the terms of the Additional Insured Endorsement.  The question is whether UPS has presented sufficient facts to Lexington to trigger coverage for the Underlying Action under the Additional Insured Endorsement.  It is undisputed that the Underlying Action involves alleged bodily injury to an Adelis employee while she was performing Adelis's operations for UPS.  UPS has provided evidence of the employee's negligence.

Lexington does not raise an interpretation issue with its contention that the Adelis employee's complaint in the Underlying Action does not allege negligence by Adelis.  An employee does not have to allege this negligence in her complaint.  *Regal Construction Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 15 N.Y.3d 34, 398, 904 N.Y.S.2d 338, 342 (2010); *Westport Ins. Corp. v. Napoli, Kaiser & Bern*, 746 F.Supp.2d 502, 506 (S.D.N.Y. 2010).  Providing evidence of this negligence is sufficient for coverage to arise.  *International Business*

*Machines v. United States Fire Ins. Co.*, 17 Misc.3d 1108(A), 851 N.Y.S.2d 58, 2007 WL 1891408, at *7 (Supreme Ct. N.Y. Co. 2007); *Ogden Corp. v. Travelers Indemnity Co.*, 681 F.Supp. 169, 173 (S.D.N.Y. 1988).

The cases relied upon by Lexington are distinguishable.  They all involve disputes over the meaning of an agreement's terms.  For example, in *AG La Mesa LLC v. Lexington Ins. Co.*, No. 10-cv-1873, 2011 WL 11504 (S.D.Cal. Jan. 3, 2011), the parties disputed the interpretation of the defined term "workplace torts" in the endorsement to the policy.[2]  *Harvest Industrial Minerals Corp. v. Twin City Fire Ins. Co.*, No. 09-cv-01089, 2010 WL 582364 (D.Colo. Feb. 18, 2010), concerned a dispute over the meaning of timely notice and the policy's exclusions.[3]  *Alfa Laval U.S. Treasury Inc.* involved an interpretation of the agreement's methodology for calculating the amounts owed thereunder and when the insurer's claims accrued.  *Id*. at 413.

Here, there is no dispute as to the meaning of the Additional Insured Endorsement.  The resolution of this action requires an application of the facts to the Policy's terms.  Accordingly, there is no basis to dismiss this action or compel UPS to arbitrate the Additional Insured Endorsement.

## II.

## THE COURT SHOULD DECIDE ANY QUESTION OF ARBITRABILITY

Lexington argues that the arbitrator, not the Court, should decide the arbitrability of the instant dispute because the Arbitration Clause incorporates the Commercial Arbitration Rules of

---

[2]    The decision does not describe the dispute that required an interpretation.  The dispute is described in the memorandum of law in support of the motion, which is attached hereto as Exhibit A.  (*See* p. 8.)

[3]    The decision also does not describe the dispute that required an interpretation.  The dispute is described in the reply memorandum of law, which is attached hereto as Exhibit B. (*See* pp. 3-4.)

the American Arbitration Association (the "AAA Rules").  Lexington improperly expands the scope of the Arbitration Clause.

The question of arbitrability is presumptively resolved by the court, not the arbitrator. *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009).  This presumption can be rebutted only by "clear and unmistakable evidence from the arbitration agreement, as construed by relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."  *Id*., quoting *Bell v. Cendant Corp.*, 293 F,3d 563, 566 (2d Cir. 2002); *see also Bank of America, N.A. v. Diamond State Ins. Co.*, 38 Fed.Appx. 687, 689 (2d Cir. 2002).

The Arbitration Clause does not provide clear and unmistakable evidence of an agreement to arbitrate the question of arbitrability.  The express language of the Arbitration Clause limits the incorporation of the AAA Rules to the procedural rules.  (Complaint, Exhibit A, at Section IV, ¶ 15.)  The substantive rules are excluded.

The United States Supreme Court draws a distinction between gateway issues of arbitrability that are substantive for the court and procedural for the arbitrator.  *Howsam*, 537 at 84.  Substantive issues include whether the arbitration clause is binding or applies to the particular type of controversy.  *Id*.  Procedural issues include satisfaction of conditions precedent to a duty to arbitrate, notice, waiver, estoppel and timeliness.  *Id*.

Lexington's reliance on Rule 7(a) of the AAA Rules is misplaced.  This rule states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  It is a substantive rule, not a procedural rule.  *Howsam*, 537 U.S. at 84, 123 S.Ct. at 592.  As a

substantive rule, it is <u>not</u> incorporated into the Arbitration Clause.  The Court, not an arbitrator, must decide whether arbitration of UPS's claims is required.

Lexington's reliance on *Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005) is inappropriate.  In *Contec Corp.*, the arbitration clause required the controversy to be determined by arbitration held "in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . or any organization that is the successor thereto." *Id.* at 208.  However, the arbitration clause in *Contec Corp.* was unqualified.  It was not limited to the procedural rules as it is here.  In this case, only the procedural rules are incorporated into the Arbitration Clause.

### III.

### LEXINGTON'S MOTION DOES NOT ADDRESS <br> <u>UPS'S SECOND AND THIRD CAUSES OF ACTION</u>

Lexington's motion addresses only UPS's first cause of action for declaratory relief under the Additional Insured Endorsement.  (Complaint, at ¶¶ 33-40.)  Lexington's motion does <u>not</u> address UPS's second cause of action for declaratory relief under the Insured Contract Provision or its third cause of action for breach of contract.  (Complaint, at ¶¶ 41-52.)  These claims are appropriate for the Court's determination.  They are not subject to arbitration.

The Insured Contract Provision provides another, independent basis for coverage to UPS.  It provides coverage for liability for damages assumed by Adelis in the Guard Services Agreement, under which it assumed UPS's tort liability to pay for bodily injury to a third person (*e.g.*, Chase), except for damages arising out of the sole negligence of UPS.  Lexington is responsible to UPS under the Insured Contract Provision.

Accordingly, Lexington's motion should be considered with respect to the first cause of action only.  To the extent Lexington improperly tries to expand its motion on reply, the

11

arguments set forth above also apply to the second and third causes of action.  Specifically, the Arbitration Clause is not implicated because there is no disagreement as to the interpretation of the Insured Contract Provision.  If the Court determines that UPS is entitled to a defense and indemnification, then Lexington breached the Policy by not providing it.

## <u>CONCLUSION</u>

For the foregoing reasons, UPS respectfully requests that the Court issue an Order denying Lexington's motion in its entirety.

Dated: White Plains, New York
      March 1, 2013

ANSA ASSUNCAO, LLP
*Attorneys for Plaintiff*


By: <u>s/ Stephen P. McLaughlin</u>
    Stephen P. McLaughlin (SM- 4136)
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260
stephen.mclaughlin@ansalaw.com
