UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED PARCEL SERVICE, INC,  :
: Civil Action No.
         Plaintiff, : 1:12-cv-07961-SAS
:
  -against- :
:
LEXINGTON INSURANCE COMPANY, :
:
         Defendant. :
---------------------------------------------------------------x

**DEFENDANT LEXINGTON INSURANCE COMPANY'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS**
**MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY,**
**<u>TO STAY THE LITIGATION AND COMPEL ARBITRATION</u>**

          SEDGWICK LLP
          225 Liberty Street, 28th floor
          New York, New York 10281
          Telephone: (212) 422-0202
          Facsimile: (212) 422-0925

          Attorneys for Defendant
          LEXINGTON INSURANCE COMPANY

Defendant Lexington Insurance Company ("Lexington"), by and through its attorneys, Sedgwick LLP, hereby submits its reply memorandum of law in further support of its motion for judgment on the pleadings or, alternatively, to stay the litigation and compel Plaintiff, United Parcel Service, Inc. ("UPS"), to arbitrate its claims against Lexington.

## PRELIMINARY STATEMENT

As anticipated, UPS has argued primarily that the arbitration clause in the Lexington policy is not sufficiently broad to encompass the instant coverage dispute. UPS also asserts that the question of arbitrability is for the Court, and not the arbitrators. Lastly, UPS claims that its second and third causes of action still may be litigated in this Court, even if its first cause of action seeking a declaratory relief is subject to the arbitration clause. As explained below, none of these arguments provide a sufficient basis upon which to deny Lexington's motion. Rather, in each instance UPS' arguments may appear facially appealing, but they are substantively deficient.

## LEGAL ARGUMENT

**A.      The Question of Arbitrability is Unmistakably for the Arbitrators**

   *1.      The Lexington Arbitration Clause and the AAA Rules*

The arbitration clause in the Lexington policy provides, in pertinent part, that "[t]he procedural rules applicable to this arbitration, shall, except as provided otherwise herein, be in accordance with the Commercial Rules of the American Arbitration Association."[1]

The "Commercial Arbitration Rules & Mediation Procedures" of the American Arbitration Association (the "AAA Rules") consist of several parts, including (1) Commercial Mediation Procedures, (2) Commercial Arbitration Rules, (3) Expedited Procedures, (4) Procedures for Large, Complex Commercial Disputes, and (5) Optional Rules for Emergency

---

[1] See Lexington policy, attached as Exhibit A to Plaintiff's Complaint, annexed as Exhibit A to the Declaration of J. Gregory Lahr dated February 15, 2013 ("Lahr Decl.").

1

Measures of Protection.[2]  The Commercial Arbitration Rules contain Rules R-1 through R-54. R-1, "Agreement of the Parties," provides as follows:

> The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

Unless the dispute involves a claim that is less than $75,000 (triggering the Expedited Procedures), or the disclosed claim is in excess of $500,000 (triggering the Procedures for Large, Complex Commercial Disputes), R-1(d) provides that: "[a]ll other cases shall be administered in accordance with Sections R-1 through R-54 of these rules."  However, even where the Procedures for Large Complex Commercial Disputes apply, R-1(c) provides that the other portions of the Rules apply unless they are in conflict with the Procedures for Large, Complex Commercial Disputes.

In view of the foregoing, it cannot be disputed that each rule, from R-1 to R-54, applies in this situation, including R-7 which provides as follows:

> R-7.    Jurisdiction
>
> (a)    The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
>
> (b)    The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

---

[2] The AAA Rules are attached as Exhibit E to the Lahr Decl.

> (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

UPS contends that the arbitration clause in the Lexington policy only incorporates procedural, and not substantive, rules of the AAA Rules. Notwithstanding that UPS's argument presents a distinction without a difference, UPS does not explain how the AAA Rules are divided into procedural and substantive rules, and which rules are applicable and which rules are not. Moreover, UPS ignores the AAA's mandate in R-1(d) that all Rules apply to an arbitration that is governed by the AAA Rules. As such, UPS may not pick and choose which of the AAA Rules apply.

### 2. *Case Law Supports the Proposition that the Arbitrator Decides Arbitrability*

The question of arbitrability of a dispute in the presence of an arbitration clause that incorporates the AAA Rules is a familiar issue for this Court. In Gwathmey Siegel Kaufman & Assoc. Architects, LLC v. Rales, No. 12 Civ. 1983, 2012 WL 2247938 (S.D.N.Y. June 15, 2012) (Scheindlin, J.), the Court examined an arbitration clause that expressly incorporated the AAA Rules. Adhering to substantial precedent on this issue, the Court found that clear and unmistakable evidence of the parties' intent that the question of arbitrability shall be decided by the arbitrator, "includes the incorporation of the AAA Rules into a contract." Id. at *3. The Court granted the defendant's motion to dismiss due to the arbitration clause, finding that the incorporation of the AAA Rules required the arbitrability issue to be decided by an arbitrator. Id. at *4. Notably, one of the several cases that supported the Court's decision was Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115 (2d Cir. 2003).

In Shaw Group, the Second Circuit determined that there was clear and unmistakable evidence in the arbitration agreement that the parties intended to refer issues of arbitrability to

3

the arbitrator. The arbitration agreement referred to the "rules and procedures of International Arbitration." 322 F.3d at 120. The court noted that, "[w]hatever ambiguity there may be in identifying all 'rules and procedures of International Arbitration,'" the appellees did not contest that the parties understood the "rules" to include those of the International Chamber of Commerce ("ICC"). Id. at 122. Because the ICC Rules provided that the arbitral body was to address issues of arbitrability, the court determined that the issue was not for the court to decide. Id. at 122-23. See also Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y. 1997) (by adopting the NASD Code of Arbitration Procedure to govern the dispute, the parties agreed to give the arbitrator discretion to decide all issues, including issues of arbitrability and timeliness); Painewebber Inc. v. Bybyk, 81 F.3d 1193, 1200 (2d Cir. 1996) (affirming trial court's dismissal of action, noting that the "parties' broad grant of power to the arbitrators is unqualified by any language carving out substantive eligibility issues (with or without reference to timeliness) for resolution by the courts.")

UPS' effort to differentiate substantive issues from procedural issues rings hollow in this instance, particularly because (1) UPS does not contest that the rules referenced in the Lexington arbitration clause refer to the AAA Rules, (2) the case law demonstrates that the incorporation of the AAA Rules in the Lexington arbitration clause is sufficient to incorporate all of the rules, including the rule relating to the arbitrator's jurisdiction (R-7), and (3) UPS does not cite any case law to support its position – that is, any case law involving an arbitration clause that expressly incorporates the rules of arbitral body.

UPS' reliance on Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002), for the "distinction between gateway issues of arbitrability that are substantive for the court and procedural for the arbitrator" (Opp. Br. at 10), does not provide the support UPS is looking for to remove the question of arbitrability from the AAA in this instance. In Howsam, the arbitration

4

agreement did not reference a specific arbitral forum or any arbitration rules; rather, the defendant elected to proceed before the National Association of Securities Dealers ("NASD"). There was a question as to whether the defendant was time-barred from arbitrating before the NASD. The Supreme Court determined that the time limitation rule in the NASD Code of Arbitration Procedure – a designated "gateway question" – was an issue for the arbitrator, and not the judge. That is the extent of the Court's decision. It does not support the broader proposition advanced by UPS – that R-7 of the AAA Rules is a substantive rule, not a procedural rule, and thus not incorporated into the Lexington arbitration clause. (Opp. Br. at 10-11.)

The Lexington arbitration clause is sufficiently broad to encompass all of the AAA Rules, from R-1 to R-54. This is supported by the mandate of the AAA Rules that, when the parties incorporate the AAA Rules, all of the Rules are part of the arbitration agreement, and is further supported by the analysis set forth in Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115 (2d Cir. 2003), Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 689 N.E.2d 884, 666 N.Y.S.2d 990 (N.Y. 1997), and Painewebber Inc. v. Bybyk, 81 F.3d 1193, 1200 (2d Cir. 1996). See also Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205 (2005).

As such, whether the Lexington arbitration clause is broad enough to cover the instant coverage dispute is an issue that should be decided by the AAA arbitrators.

B.      **The Lexington Arbitration Clause Applies to the Coverage Dispute**

Even if the Court determines that it should consider the question of arbitrability of the coverage dispute, it should find that the Lexington arbitration clause applies in this instance.

The United States Supreme Court has held that the Federal Arbitration Act requires courts to enforce contractual arbitration agreements. See Volt Info. Scis., Inc. v. Board of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 474 (1989). See also Allied-Bruce Terminix Cos.,

Inc. v. Dobson, 513 U.S. 265 (1995) (reasoning that the basic purpose of the FAA is to overcome the refusal of courts to enforce arbitration agreements).[3]

The determination of whether a dispute is arbitrable under the FAA involves two questions: (1) whether there exists a valid agreement to arbitrate at all under the contract in question, and if so, (2) whether the dispute falls within the scope of the arbitration agreement. Atmosphere Sciences, LLC v. Schneider Advanced Tech., Inc., No. 12 Civ. 3223, 2012 WL 4240759 (S.D.N.Y. Sept. 19, 2012).[4]

The FAA "leaves no place for the exercise of discretion by a District Court, but instead mandates that District Courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). Moreover, the FAA "expresses 'a liberal federal policy favoring arbitration agreements' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 224 (2d Cir. 2001) (citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983)). See also Raytheon Co. v. National Union Fire Ins. Co., 306 F. Supp. 2d 346, 355 (S.D.N.Y. 2004).

Here, no matter how UPS attempts to simplify its coverage dispute with Lexington, it necessarily must involve an interpretation of the Additional Insured Endorsement, and whether the Endorsement affords coverage for UPS. Significantly, for additional insured coverage to

---

[3] The FAA directs the court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3. See also Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 227 (1987); Arrigo v. Blue Fish Commodities, Inc., 704 F. Supp. 299 (S.D.N.Y. 2010). However, courts typically follow the rule that, where all of the issues raised in the complaint must be submitted to arbitration, the court may dismiss an action rather than stay the proceedings. Arrigo, 704 F. Supp. 2d at 304-05 (citing a string of cases for this proposition, and dismissing the complaint).

[4] The Court of Appeals for the Second Circuit has indicated a strong preference to uphold and enforce arbitration clauses, finding that contractual agreements between parties outweigh even judicial economy and efficiency considerations. See, e.g., Rush v. Oppenheimer & Co., 779 F.2d 885, 891 (2d Cir. 1985); In re Hagerstown Fiber Ltd. P'ship., 227 B.R. 181, 204 (Bankr. S.D.N.Y. 2002).

apply to UPS, it must show that it is liable for bodily injury that is caused by (1) the Named Insured's (Adelis) operations for UPS, and (2) Adelis' negligence, or the negligence of those performing operations on Adelis' behalf.  There must be an interpretation of what constitutes a showing of negligence, and when this showing must be made.  There also must be an interpretation of what constitutes bodily injury caused by Adelis' "operations," and whether the injury to Adelis' employee meets that interpretation.  It is not just a simple application of facts to Policy language, and this is evidenced by UPS' contention that it "has provided evidence of the employee's negligence."  (Opp. Br. at 8-9.)  This begs the questions: what evidence was provided, does it demonstrate negligence by the employee, and is it sufficient to trigger coverage under the Additional Insured Endorsement under a reasonable interpretation of what the Endorsement requires?

UPS attempts to distinguish Ag La Mesa LLC v. Lexington Ins. Co., No. 10cv1873, 2011 WL 11504 (S.D. Cal. Jan. 3, 2011), and Harwest Indus. Minerals Corp. v. Twin City Fire Ins. Co., No. 09-cv-01089, 2010 WL 582364 (D. Colo. Feb. 18, 2010), by reviewing the insurer's briefs in those matters to determine what the purported interpretation issue was in those cases. (Opp. Br. at 9.)  UPS's bland description of the issues in those cases – involving the term "workplace torts," and the meaning of timely notice and the policy's exclusions – does not distinguish them from the instant case at all.

Indeed, in Ag La Mesa LLC, the dispute involved whether there was an Insured Event under the policy based upon what was contained in an underlying complaint.  The insured asserted that the allegations in the underlying complaint were sufficient to trigger coverage under the "Workplace Torts" definition in the policy.  In Harwest Indus. Minerals Corp., there was a question about the timeliness of notice of the claims, as well as whether certain exclusions

7

applied. The disputes in those cases are really no different than the dispute in this matter, and UPS simply arguing that they are "distinguishable" does not just make them so.

The decision in Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co., 857 F. Supp. 2d 404, 413-14 (S.D.N.Y. 2012) is particularly instructive because, even where there may have been a genuine question about whether there was an interpretation issue, the Court resolved it in favor of arbitration.

Thus, as the courts determined in the above cases, should the Court consider whether the arbitration clause is triggered in this dispute, it should find in favor of Lexington because there are Policy interpretation issues involving the Additional Insured Endorsement, and otherwise any doubt should be resolved in favor of arbitration.

## C.  UPS' Argument Involving the Second and Third Causes of Action is Unavailing

UPS's argument that Lexington does not address the second and third causes of action, and that they are not subject to arbitration, is a quintessential red-herring.

First, Lexington has moved for dismissal of the entire Complaint, and nowhere in its motion does it limit its request for dismissal, or for an order compelling arbitration, to the first cause of action only. That contention is entirely contrived by UPS.

Second, UPS's third cause of action is for breach of contract, which essentially is duplicative of its first cause of action for declaratory relief. Indeed, both causes of action allege that UPS is an additional insured (Pl.'s Compl. at ¶¶ 34-38, 48), and seek a determination that it is covered as an additional insured under the Lexington policy. Thus, even if Lexington limited its motion to the first cause of action, which it clearly did not, the same argument would apply to the third cause of action.

Lastly, the allegations in the second cause of action, while encompassed by Lexington's motion seeking dismissal of the Complaint, do not even apply to UPS. This cause of action

8

seeks declaratory relief with respect to an "insured contract." However, an insured contract clearly pertains to coverage for the Named Insured, Adelis, and not UPS as an additional insured. This is plain by the terms of the policy and the Guard Services Agreement between UPS and Adelis.

The Agreement allegedly requires Adelis to defend and indemnify UPS. (Pl.'s Compl. at ¶¶ 13-14.) That provision applies solely to Adelis, not Lexington, and it does not grant any coverage rights to UPS under the Lexington policy.

If Adelis is contractually required to defend and indemnify UPS, then Adelis may be covered under the Lexington policy for this contractual obligation to UPS. If so, the Contractual Liability Exclusion in the Lexington policy may not preclude coverage, for Adelis, because the Guard Services Agreement may be an "insured contract" as defined in the Lexington policy.

The Contractual Liability Exclusion provides that coverage is precluded for bodily injury for which Adelis (not UPS) is obligated to pay damages because of the assumption of liability in a contract or agreement (*i.e.*, the Guard Services Agreement). However, the Exclusion does not apply to liability for damages that are assumed in a contract that is an "insured contract." Thus, because the Guard Services Agreement may be an insured contract, Adelis' obligation to pay damages to UPS because it assumed that liability in the Guard Services Agreement may be a covered obligation for Adelis under the Lexington policy. Again, this has nothing to do with UPS, and does not pertain to UPS' sole basis for seeking coverage under the policy, which is as an additional insured. It is uncertain why UPS seeks a declaration regarding the insured contract coverage for Adelis; but in any event, if it truly believes that it is entitled to a declaration regarding that issue, it also must be dealt with in arbitration.

## **CONCLUSION**

For the foregoing reasons, Lexington respectfully requests that the Court issue an order (a) dismissing Plaintiff's Complaint, or, alternatively, (b) staying the current litigation and compelling Plaintiff to submit to arbitration, and (c) any further relief that this Court deems reasonable and just.

Dated: New York, New York
       March 11, 2013

                Respectfully submitted,

                SEDGWICK LLP

                By: /s/ J. Gregory Lahr
                    J. Gregory Lahr (JL9969)
                    Ryan C. Chapoteau (RC1986)
                    *Attorneys for Defendant*
                    *Lexington Insurance Company*
                    225 Liberty Street, 28th Floor
                    New York, NY  10281-1008
                    Telephone: 212.422.0202
                    Facsimile: 212.422.0925

To:    Stephen P. McLaughlin
        Ansa Assuncao, LLP
        707 Westchester Ave., Suite 309
        White Plains, New York 10604
        (914) 298-2260