UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED PARCEL SERVICE,

                Plaintiff,

    - against -

LEXINGTON INSURANCE GROUP,

              Defendant.
------------------------------------------------------X

**OPINION AND ORDER**

**12 Civ. 7961 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        United Parcel Service, Inc. ("UPS") brings this diversity action against defendant Lexington Insurance Company ("Lexington") seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that Lexington is obligated to defend and indemnify UPS in an underlying personal injury action. Additionally, UPS seeks damages for Lexington's alleged breach of contract in failing to provide a defense. Lexington now moves to dismiss UPS's Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure or, alternatively, to stay the litigation and compel UPS to arbitrate its claims against Lexington pursuant to the binding

arbitration provision in the Lexington insurance policy.[1]  For the following

reasons, Lexington's motion is denied.

## II.      BACKGROUND[2]

### A.      The Guard Services Agreement

On May 1, 2007, UPS entered into a Guard Services Agreement

("GSA") with Adelis.[3]  The GSA provides that Adelis will furnish UPS with

uniformed guards for locations and hours that are mutually agreed upon by UPS

and Adelis.[4]  The GSA requires Adelis to carry insurance coverage, including

commercial general liability insurance, and provides that UPS shall be named as an

additional insured on these policies.[5]  The GSA also requires Adelis to indemnify

UPS against all claims, losses, damages, expenses or liabilities which UPS may

incur by reason of any act or omission by any employee of Adelis, or any injury

---

[1]      Although Lexington does not state the provision under which it moves to compel arbitration, presumably it does so under section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, which governs the arbitrability of these claims.  *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 1773 (2010).

[2]      The following facts are drawn from the Complaint ("Compl.") and are presumed to be true for purposes of this motion.

[3]      *See* Compl. ¶ 12.

[4]      *See* GSA, Ex. B to Compl.

[5]      *See* Compl. ¶¶ 15-16.

suffered by any employee of Adelis, including personal injury, except when arising

out of the sole negligence of UPS.[6]

### B.    The Policy

Pursuant to the terms of the GSA, Adelis obtained an insurance policy

from Lexington (the "Policy").[7]  The Policy includes an Additional Insured

Endorsement, which states:

> such person or organization is an additional insured only
> with respect to liability for 'bodily injury', 'property
> damage', 'professional liability', or 'personal and
> advertising injury' caused by [Adelis's] ongoing operations
> for the additional insured and only to the extent that such
> 'bodily injury', 'property damage', 'professional liability',
> or 'personal and advertising injury' is caused by [Adelis's]
> negligence or the negligence of those performing
> operations on [Adelis's] behalf.

The Policy also contains an arbitration clause, which

provides, in relevant part, that:

> in the event of a disagreement as to the interpretation of this
> policy, it is mutually agreed that such dispute shall be
> submitted to binding arbitration . . . .
> * * *
> The *procedural rules* applicable to this arbitration, shall,
> except as provided otherwise herein, be in accordance with

---

[6]    *See id.*

[7]    *See* Policy, Ex. A to the Compl.

the Commercial Rules of the American Arbitration Association [the "AAA Rules"].**[8]**

## C.    The Underlying Action

Marilyn Chase sued UPS on March 24, 2010.[9]  Chase alleges that on January 28, 2009, while an employee of Adelis, she was hit and injured by a tug car that was owned and operated by UPS and its employees.[10]  UPS alleges that the incident was caused in whole, or in part, by the negligence of Chase.[11]  The Policy was in effect on the day of the incident.

On November 18, 2009, UPS's insurance carrier, Liberty Mutual Insurance ("Liberty"), submitted UPS's defense against Chase's claims to Adelis and its insurance carrier, Lexington.[12]  UPS requested complete indemnification. On December 3, 2009, Lexington denied Liberty's request for coverage because Lexington determined that the incident was the direct result of the negligence of the UPS employee who was operating the tug car.[13]  On June 20, 2012, UPS

---

[8]     *Id.*, Section IV, ¶ 15 (emphasis added).

[9]     *See* Compl. ¶ 18.

[10]    *See id.* ¶¶ 19-20.

[11]    *See id.* ¶ 21.

[12]    *See id.* ¶ 24.

[13]    *See id.* ¶ 29.

requested that Lexington revisit the denial of coverage in the underlying action because Chase's deposition testimony demonstrated that she bore partial responsibility for the incident.[14]  UPS did not receive a response to this request. UPS then filed the instant action on October 25, 2012.

## III.   APPLICABLE LAW

### A.   Arbitration

Arbitration clauses are subject to the FAA.[15]  Under the FAA, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[16]  However, "[d]espite the 'liberal federal policy favoring arbitration agreements,' 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[17]  The Second Circuit applies a two-part test to determine the arbitrability of claims: "(1)

---

[14]     *See id.* ¶ 31.

[15]     *See Stolt-Nielson*, 130 S. Ct. at 1773.

[16]     *In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)

[17]     *Id.* at 127 (quoting *Moses H. Cone*, 460 U.S. at 24 and *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."[18]

### B.    Rule 12(c) Motion

At any time after the pleadings close and before the trial commences, a party may move for a judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."[19]  The court "must accept all non-conclusory factual allegations as true and draw all reasonable inferences in the plaintiff's favor."[20]

## IV.    DISCUSSION

### A.    UPS Is Not Required to Arbitrate Its Claim Under the Additional Insured Endorsement[21]

---

[18]      *Id.* at 127-28.  The validity of the arbitration agreement is not in dispute.

[19]      *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 520 (2d Cir. 2006)).

[20]      *Simms v. City of New York*, 480 Fed. App'x 627, 630 (2d Cir. 2012) (citing *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)).

[21]      Lexington does not address the arbitrability of claims two and three in the Complaint, which are a request for declaratory relief under the Insured Contract Provision and an action for breach of contract respectively.  *See* Pl. Opp. (citing Compl. ¶¶ 41-52).  While Lexington argues that its motion was meant to address all claims, it failed to make any argument regarding, or even mentioning, the other causes of action until its Reply, which is too late.  *See Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999) (new arguments may not be

### 1.      The Court Decides the Issue of Arbitrability

Lexington argues that the Arbitration Clause incorporates the AAA Rules and that Rule 7(a) provides that the arbitrator has the power to decide its jurisdiction.[22]  UPS counters that the AAA Rules are incorporated only as to the Policy's procedural rules, and Rule 7(a) is a substantive rule and therefore inapplicable.[23]

The question of arbitrability is to be resolved by the courts,[24] absent "clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the

---

raised in reply papers).  To the extent Lexington argues that "even if Lexington limited its motion to the first cause of action . . . the same argument would apply to the third cause of action," the rulings in the Opinion apply equally to the third cause of action.  *See* Defendant's Reply Memorandum in Further Support of Its Motion for Judgment on the Pleadings or, Alternatively, to Stay the Litigation and Compel Arbitration ("Def. Reply Mem.") at 8.

[22]      *See* Def. Reply Mem. at 1-3.

[23]      *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Pleadings, or Alternatively, to Stay the Litigation and Compel Arbitration ("Opp. Mem."), at 9-10.

[24]      *See Telenor Mobile Comm'ns AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009).

arbitrator.'"[25]  The primary question of arbitrability is a substantive one.[26]  Here,

the incorporation of the AAA rules was expressly limited to the agreement's

*procedural* rules.[27] Thus, there is no clear and unmistakable evidence that the

parties here intended to empower the arbitrators to entertain questions of

arbitrability.  Therefore, this Court must decide the issue of arbitrability.

### 2.     The Arbitration Clause Does Not Cover the Instant Dispute

Lexington argues that "[it] denied coverage under the Additional

Insured Endorsement because there was no allegation that Chase's bodily injury

---

[25]     *Id*. (quoting *Bell v. Cendant Corp*., 293 F.3d 563, 565-66 (2d Cir. 2002)).

[26]     *See Howsam*, 537 U.S. at 85 (distinguishing between "issues of substantive arbitrability [which] are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, [which] are for the arbitrators to decide.") (citations omitted).  *See also Continental Cas. Co. v. Staffing Concepts, Inc.*, No. 8:09 Civ. 02036, 2011 WL 7459781, at *7 (M.D. Fla. Dec. 11, 2011) report and recommendation adopted, 8:09 Civ. 2036, 2012 WL 715652 (M.D. Fla. Mar. 5, 2012) (suggesting that if the clause expressly limits the incorporation of the AAA Rules to procedural issues, then the court may retain jurisdiction as to substantive rules, including the arbitrability of a dispute).

[27]     *Cf. Telenor*, 584 F.3d at 406  (finding clear intent to delegate the question of arbitrability to the arbitrator where the agreement provided that the claims would be arbitrated "in accordance with the [AAA Rules]); *Painewebber Inc. v. Bybyk*, 81 F.3d 1193, 1200 (2d Cir. 1996) (affirming trial court.s dismissal of action, "parties' broad grant of power to the arbitrators is *unqualified by any language carving out substantive eligibility* issues . . . for resolution by the courts.") (emphasis added).

was caused by Adelis' negligence," which was a condition of coverage.[28]  Thus,

because there is a "dispute as to what the terms of the Additional Insured

Endorsement require for coverage to be triggered, the Policy's Arbitration Clause

is implicated."[29]  UPS, in turn, argues that the action does not hinge on an

interpretation of the Additional Insured Endorsement, but rather on the application

of the facts to the terms of the Additional Insured Endorsement.[30]

   To determine whether the parties' dispute falls within the scope of the

arbitration clause, a court must first classify whether the particular clause is broad

or narrow.[31]  The Arbitration Clause at issue is narrow – it is limited to disputes

over an interpretation of the terms of the Policy.[32]  The Clause does not refer to

---

[28]  Def. Mem. at 6.

[29]  *Id.*

[30]  *See* Pl. Opp. at 8.

[31]  *See JLM Indus, Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 172  (2d Cir. 2004) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).

[32]  *See, e.g.*, *Alfa Laval U.S. Treasury Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 857 F. Supp. 2d 404, 409-10 (S.D.N.Y. 2012); *AXA Versicherung AG v. New Hampshire Ins. Co.*, 708 F. Supp. 2d 423, 428 (S.D.N.Y. 2010).

"any and all" controversies arising under the Policy, as would be found in a broad arbitration clause.[33]

   "[I]f reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue . . . . Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview.[34]  Here, the question is whether the determination of UPS's entitlement to coverage under the Policy requires an "interpretation of [the Policy]," or whether it merely requires an application of the facts to the undisputed terms of the Additional Insured Endorsement.  The answer is unquestionably the latter – in fact, Lexington concedes as much when it states that "Lexington denied coverage under the Additional Insured Endorsement because there was no allegation that Chase's bodily injury was caused by Adelis' negligence."[35]  In other words, there is *no* dispute that coverage is required if the Chase's injury was a result, in whole or in part, of Adelis' negligence, and that coverage is not required if the injury was entirely the result of UPS's negligence.

---

[33] *See Louis Dreyfus*, 252 F.3d at 225  (finding a broad clause where the agreement provided that "[a]ny dispute arising from the making, performance or termination of this Charter Party" is subject to arbitration).

[34] *Id.* at 224.

[35] Def. Mem. at 6.

The only question then, is whether the facts show that UPS was solely responsible, or whether they show that Adelis' negligence played some role.  This is not, as Lexington argues, a dispute over "what the terms of the Additional Insured Endorsement require for coverage to be triggered" – the parties concede that the Policy requires a finding of negligence by Adelis.[36]  As Lexington raises no other issue of interpretation that might place this dispute within the scope of the Arbitration Clause, its motion to compel arbitration is denied.

### B.    Dismissal Pursuant to Rule 12(c) Is Not Appropriate

Lexington raises only the issue of arbitration of the Additional Insured Endorsement claim in its Memorandum of Law, and raises no additional grounds why UPS's claims fail to state a claim on which relief may be granted.  Moreover, it is plain from the face of the Complaint that UPS has adequately pled that Chase's own negligence, as an employee of Adelis, was at least in part responsible

---

[36]     While the terms "operations" and "negligence" must be applied to determine eligibility for coverage, they do not require any interpretation of the Policy and are thus "collateral matters."  The Policy includes many term definitions.  Although negligence is not specifically defined,  "[i]f a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law; [and, again,] any ambiguity must be resolved in favor of the  insured." *Bridge Metal Indus., L.L.C. v. Travelers Indem. Co,* 812 F. Supp. 2d 527, 535 (S.D.N.Y. 2011) (citing *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 751 F. Supp. 2d 444, 450 (E.D.N.Y. 2010)).

for her injuries,[37] which is the central question in this case.  Therefore, the motion for judgment on the pleadings is denied.

## V.     CONCLUSION

For the foregoing reasons, defendant's motion is denied.  A conference is scheduled for May 13, 2013 at 4:30 p.m. at which time parties should be prepared to discuss the issues regarding Claim Two raised by defendant in its Reply.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       May 7, 2013

---

[37]     *See* Compl. ¶ 31 (Chase's deposition testimony demonstrated that she bore partial responsibility for the incident).

**- Appearances -**

**For Plaintiff:**

Stefanie A. Bashar, Esq.
Stephen P. McLaughlin, Esq.
Ansa Assuncao, LLP
707 Westchester Avenue, Suite 309
White Plains, NY 10604
Phone: (914) 298-2271

**For Defendant:**

Ryan C. Chapoteau, Esq.
J. Gregory Lahr, Esq.
Sedgwick LLP
125 Broad Street
New York, NY 10004
Phone: (212) 898-4029