UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., | Case No.: 12-cv-07961 (SAS) |
| Plaintiff, | ECF Case |
| - against - | |
| LEXINGTON INSURANCE COMPANY, | **PLAINTIFF'S LOCAL CIVIL RULE 56.1(a) STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| Defendant. | |

Plaintiff United Parcel Service, Inc. ("UPS"), by and through its attorneys, Ansa Assuncao, LLP, submits this Local Civil Rule 56.1(a) Statement of Undisputed Material Facts as follows.

1.      UPS and Adelis International Security, Inc. ("Adelis") entered into a Guard Services Agreement dated May 1, 2007 (the "Guard Services Agreement"), whereby Adelis agreed to provide security services at the UPS facility located at 643 West 43rd Street, New York, New York (the "Premises").  (Declaration of Stephen P. McLaughlin, dated June 25, 2013 ("McLaughlin Dec."), Exhibit C.)

2.      Paragraph 7 of the Guard Services Agreement provides as follows:

> [Adelis] shall defend, indemnify, and hold harmless UPS, including without limitation, United Parcel Service, Inc., a Delaware corporation and each of its successors, subsidiaries and affiliates, landlord, directors, officers, employees, and agents (hereinafter collectively referred to as 'UPS') of any of the foregoing, from and against any and all claims, losses, damages, suits, fees, judgments, costs, expenses (including attorney's fees), or liabilities of any kind or nature whatsoever related to the Work hereunder, including, but not limited to, those arising or alleged to have arisen out of or in consequence of negligence, wrongful acts or omissions, unlawful acts, or willful misconduct of [Adelis], or of [Adelis's] personnel, which UPS may incur or sustain arising out of or in connection with, but not limited to, personal injury (including death resulting therefrom), property loss or damage, false arrest, willful detention, false imprisonment, malicious

prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny or dishonesty.

[Adelis] shall bear any expense of defending any action, which may be brought against UPS alone or along with [Adelis] and others.  UPS will notify [Adelis] in writing of any claim asserted, or action brought, against UPS alone or along with [Adelis] or others.  Upon the written request of UPS, [Adelis] shall assume the defense of such action or any proceeding, and in any event will pay any judgment or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth in accordance with the terms set forth above.

(McLaughlin Dec., Exhibit C, at ¶ 7.)

3.      The rider to the Guard Services Agreement (the "Rider") provides as follows:

Any contrary or inconsistent provision in the attached agreement notwithstanding, [Adelis], agrees to be responsible for and to indemnify and to hold harmless United Parcel Service, Inc., its parent, landlord and affiliated companies (hereinafter collectively referred to as 'UPS') from any claims, losses, damages, expenses or liabilities of any kind or nature whatsoever, arising or alleged to have arisen in part, out of or in consequence of the work hereunder, which it may incur or sustain by reason of any act or omission of [Adelis] or any employee of [Adelis] and any injury suffered by any employee of [Adelis], including but not limited to personal injury (including death resulting therefrom), property damage, false arrest, willful detention, false imprisonment, malicious prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny and dishonesty, except from and against all losses, damages, expense, etc., as set forth hereinabove, arising out of the [sole] negligence of UPS.

[Adelis] will bear any expense of defending any action which may be brought against UPS alone or along with [Adelis] or others, and upon request of UPS shall assume the defense of such action or any proceeding, and will pay any [judgment] or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth.

(McLaughlin Dec., Exhibit C, at Rider.)

4.      Paragraph 8 of the Guard Services Agreement requires Adelis to procure the

insurance coverage specified therein, including:

> Comprehensive General Liability Insurance against all hazards (including contractual liability insurance against the liability assumed under the indemnity agreement between UPS and [Adelis] hereinabove set forth and made a condition of this Agreement), with the following minimum limits of liability:
>
> (1) Personal injury and bodily injury, including death resulting therefrom, on an occurrence basis: $1,000,000.00 aggregate. . . .

(McLaughlin Dec., Exhibit C, at ¶ 8(B).)

5.      The Rider contains an insurance provision similar to Paragraph 8 of the Guard Services Agreement.  (McLaughlin Dec., Exhibit C, at Rider.)

6.      Both Paragraph 8 of the Guard Services Agreement and the Rider require Adelis to name UPS as an additional insured in all policies except workers' compensation. (McLaughlin Dec., Exhibit C, at ¶ 8 and Rider.)

7.      Lexington Insurance Company ("Lexington") issued Adelis a commercial general liability policy bearing policy number 43926334 and a policy term of January 18, 2009 through January 18, 2010 (the "Policy").  (McLaughlin Dec., Exhibit D.)

8.      Lexington also issued an excess liability policy to Adelis, policy number 19883784 with a policy term of January 18, 2009 through January 18, 2010.  (McLaughlin Dec., Exhibit A, at ¶ 11.)

9.      The Policy contains an additional insured endorsement (the "Additional Insured Endorsement"), which states, in relevant part:

> Section II - Who Is An Insured is amended to include as an additional insured: (1) a person or organization that is the owner of real property or personal property, or (2) a person or organization responsible for hiring [Adelis] as an independent contractor, provided that, all of the following conditions are met:
>
> 1.      [Adelis is] performing 'professional services' on behalf of the owner of the real property or personal property, or the

3

person or organization responsible for hiring [Adelis] as an
independent contractor, whichever is applicable;

2.      [Adelis has] agreed in a written contract or written
agreement that such person or organization be added as an
additional insured on [Adelis's] policy; and

3.      the written contract or written agreement is in effect during
this policy period and executed prior to the 'occurrence' of
the 'bodily injury' or 'property damage', prior to the
'wrongful act', or prior to the offense giving rise to the
'personal and advertising injury", whichever is applicable.

However, such person or organization is an additional insured only
with respect to liability for 'bodily injury', 'property damage',
'professional liability', or 'personal and advertising injury' caused
by [Adelis's] ongoing operations for the additional insured and
only to the extent that such 'bodily injury', 'property damage',
'professional liability', or 'personal and advertising injury' is
caused by [Adelis's] negligence or the negligence of those
performing operations on [Adelis's] behalf.

(McLaughlin Dec., Exhibit D.)

10.     UPS qualifies as an additional insured under the Additional Insured Endorsement
because (a) Adelis performed professional services on behalf of UPS; (b) Adelis agreed in the
Guard Services Agreement that UPS would be added as an additional insured on the Policy; and
(c) the Guard Services Agreement was in effect during the applicable policy period and was
executed prior to the subject incident.  (McLaughlin Dec., Exhibit D.)

11.     The Policy provides that Lexington will pay those sums that Adelis "becomes
legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance
applies."  (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 1(a).)

12.     While the Policy generally excludes contractual liability, it expressly covers
liability arising out of "insured contracts" (the "Insured Contract Provision").   (McLaughlin
Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b).)

13.     The Policy defines "insured contract" as follows:

> [t]hat part of any other contract or agreement pertaining to
> [Adelis's] business (including an indemnification of a municipality
> in connection with work performed for a municipality) under
> which [Adelis] assume[s] the tort liability of another party to pay
> for 'bodily injury' . . . to a third person or organization.  Tort
> liability means a liability that would be imposed by law in the
> absence of any contract or agreement.

(McLaughlin Dec., Exhibit D, at Section V, ¶ 9(f).)

14.     Reasonable attorneys' fees and necessary litigation expenses incurred by the party in its defense of the underlying action are included as damages under the Insured Contract Provision.  (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b).)

15.     The Guard Services Agreement is an "insured contract" under the Policy because it pertains to Adelis's business under which it assumes the tort liability of UPS to pay for bodily injury to a third person.  (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b); Section V, ¶ 9(f).)

16.     On January 28, 2009, Marilyn Chase ("Chase") was an Adelis employee who worked at the Premises as a security guard manager.  (McLaughlin Dec., Exhibit A, at ¶ 19.)

17.     Chase alleges that while working at the Premises, she was struck by a tug car that was owned and operated by UPS and its employees (the "Incident") and sustained personal injuries.  (McLaughlin Dec., Exhibit G, at ¶ 9.)

18.     On November 18, 2009, Liberty Mutual Insurance Company ("Liberty"), acting on behalf of UPS, (a) informed Adelis that UPS had been placed on notice of the Incident involving Adelis employee Chase; (b) referred to Adelis's defense and indemnification obligations under the Guard Services Agreement; (c) tendered UPS's defense against Chase's claims to Adelis and requested full indemnification; (d) requested that the tender be turned over to Adelis's insurance carrier; and (e) advised that it will be seeking reimbursement of its

5

expenses to date and for all times going forward until Adelis assumes UPS's defense and indemnification.  (McLaughlin Dec., Exhibit E.)

19.     On December 3, 2009, Lexington (a) acknowledged Liberty's November 18, 2009 letter; (b) acknowledged that the Incident occurred while Chase was working as a security guard within the scope of her employment with Adelis; (c) denied UPS's tender request because it concluded that the Incident was the direct result of UPS's sole negligence; and (d) refused to reimburse Liberty for any expenses associated with the Chase matter.  (McLaughlin Dec., Exhibit F.)

20.     On March 24, 2010, Chase commenced *Chase v. United Parcel Service, Inc.,* Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action") against UPS seeking recovery for her alleged personal injuries resulting from the Incident.  (McLaughlin Dec., Exhibit G, at ¶ 9.)

21.     On May 18, 2010, UPS answered Chase's Complaint and alleged, *inter alia*, the following affirmative defenses: (a) Chase's alleged injuries were caused in whole or in part by her contributory negligence and/or culpable conduct; and (b) Chase's acts and/or omissions were the sole proximate cause of her alleged injuries.  (McLaughlin Dec., Exhibit H, at ¶¶ 8, 16.)

22.     On February 8, 2012, Chase was deposed.  (McLaughlin Dec., Exhibit I.)

23.     Chase testified that she (a) was familiar with the tug's operation and use at the Premises; (b) trained others regarding tugs; (c) saw the tug approaching her; (d) saw the tug the entire time before it hit her; (e) took no action to avoid being hit; and (f) remained where she was because she felt she had the right of way.  (McLaughlin Dec., Exhibit I, at 36:9-13; 37:22-38:10; 50:6-17; 51:5-10; 50:23-51:4.)

24.     On June 20, 2012, UPS's counsel in the Underlying Action requested that Lexington revisit its denial of coverage under the Policy, accept the tender of defense and agree to indemnify UPS pursuant to the terms and conditions of the Guard Services Agreement. (McLaughlin Dec., Exhibit J.)

25.     Lexington never responded to the June 20, 2012 request.   (McLaughlin Dec., Exhibit A, at ¶ 32.)

Dated:  White Plains, New York
        June 25, 2013

                                    ANSA ASSUNCAO, LLP
                                    *Attorneys for Plaintiff*


                                    By: s/ Stephen P. McLaughlin
                                         Stephen P. McLaughlin (SM- 4136)
                                    707 Westchester Avenue, Suite 309
                                    White Plains, New York 10604
                                    (914) 298-2260
                                    stephen.mclaughlin@ansalaw.com

TO:     J. Gregory Lahr, Esq.
        SEDGWICK LLP
        225 Liberty Street, 28th Floor
        New York, New York 10281
        (212) 422-0202
        *Attorneys for Defendant*