UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED PARCEL SERVICE, INC., | Case No.: 12-cv-07961 (SAS) |
|              Plaintiff, | ECF Case |
|     - against - | |
| LEXINGTON INSURANCE COMPANY, | |
|           Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF UNITED PARCEL SERVICE, INC.'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

ANSA ASSUNCAO, LLP
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 2

    A.      The Guard Services Agreement ........................................................................ 2

    B.      The Policy ......................................................................................................... 4

        1.      The Additional Insured Endorsement ................................................. 5

        2.      The Insured Contract Provision ........................................................... 6

    C.      The Incident ...................................................................................................... 6

    D.      UPS's Tender And Lexington's Response ........................................................ 7

    E.      The Underlying Action ..................................................................................... 7

    F.      UPS's Request For Reconsideration ................................................................ 8

    G.      The Instant Action ............................................................................................ 8

LEGAL ARGUMENT ......................................................................................................... 9

I.         STANDARD FOR SUMMARY JUDGMENT ................................................... 9

II.       LEXINGTON IS OBLIGATED TO DEFEND
         UPS IN THE UNDERLYING ACTION ........................................................... 10

    A.      Lexington's Duty To Defend Is Exceedingly Broad. ................................... 10

    B.      There Is A Reasonable Possibility Of Coverage Under The Policy. ........................ 13

    C.      The Policy Provides Primary Coverage for UPS. ...................................... 17

III.      LEXINGTON IS OBLIGATED TO REIMBURSE UPS
         FOR ITS DEFENSE EXPENSES IN THE UNDERLYING ACTION ......................... 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

C̲A̲S̲E̲S̲

*Allianz Ins. Co. v. Lerner*,
    416 F.3d 109 (2d Cir. 2005) ................................................................13

*Almar, Inc. v. Utica Mut. Ins. Co.*,
    280 A.D.2d 624, 721 N.Y.S.2d 96 (2d Dep't 2001) ...........................13

*Auriemma v. Biltmore Theatre, LLC*,
    82 A.D.3d 1, 917 N.Y.S.2d 130 (1st Dep't 2011) ..............................13

*Automobile Ins. Co. of Hartford v. Cook*,
    7 N.Y.3d 131, 818 N.Y.S.2d 176 (2006) ..........................................10

*Avondale Industries, Inc. v. Travelers Indemnity Co.*,
    887 F.2d 1200 (2d Cir. 1989) ...............................................................9

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
    8 N.Y.3d 708, 840 N.Y.S.2d 302 (2007) ..........................................10

*CGS Industries, Inc. v. Charter Oak Fire Ins. Co.*,
    --- F.3d ---, 2013 WL 2476998 (2d Cir. 2013) ..................................10

*Continental Cas. Co. v. Rapid-American Corp.*,
    80 N.Y.2d 640, 593 N.Y.S.2d 966 (1993) ........................................11

*D'Amico v. City of New York*,
    132 F.3d 145 (2d Cir. 1998) .................................................................9

*Davidson v. Hilton Hotels Corp.*,
    266 A.D.2d 336, 698 N.Y.S.2d 297 (2d Dep't 1999) .........................10

*Feldman Law Group P.C. v. Liberty Mut. Ins. Co.*,
    819 F.Supp.2d 247 (S.D.N.Y. 2011) (Scheindlin, J.) ........................11

*Fitzpatrick v. American Honda Motor Co., Inc.*,
    78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) .....................................11, 12

*Giraldez v. City of New York*,
    214 A.D.2d 461, 625 N.Y.S.2d 517 (1st Dep't 1995) ........................14

*Graeber-Nagel v. Naranjan*,
    101 A.D.3d 1078, 956 N.Y.S.2d 530 (2d Dep't 2012) ..................15, 16

*Guzman v. Iceland*,
    18 A.D.3d 704, 795 N.Y.S.2d 745 (2d Dep't 2005) ...........................14

*Hernandez v. Brooklyn & Queens Tr. Corp.*,
    284 N.Y. 535 (1940) ..................................................................................14

*In re Methyl Tertiary Butyl Ether Products Liability Litigation*,
    824 F.Supp.2d 524 (S.D.N.Y. 2011)............................................................9

*International Business Machines Corp. v. Liberty Mut. Fire Ins. Co.*,
    303 F.3d 419 (2d Cir. 2002)........................................................................10

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005)..........................................................................9

*Jones v. Vialva-Duke*,
    106 A.D.3d 1052, --- N.Y.S.2d --- (2d Dep't 2013) ..................................15

*Kane v. United States*,
    189 F.Supp.2d 40 (S.D.N.Y. 2002) ...........................................................14

*Kulaga v. State*,
    37 A.D.2d 58, 322 N.Y.S.2d 542 (4th Dep't 1971) ...................................14

*Langenberg v. Sofair*,
    No. 03 Civ. 8339, 2006 WL 3518197 (S.D.N.Y. Dec. 6, 2006)................18

*Luzzi v. Charles E. Haff Co.*,
    96 N.Y.S. 456 (App. Term. 1906) ....................................................14, 15, 16

*Maddox v. City of New York*,
    66 N.Y.2d 270, 496 N.Y.S.2d 726 (1985) .................................................14

*Maryland Cas. Co. v. Continental Cas. Co.*,
    332 F.3d 145 (2d Cir. 2003)...................................................10, 11, 16, 17

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348 (1986) ...........................................................9

*Murnane Bldg. Contractors, Inc. v. Zurich American Ins. Co.*,
    --- N.Y.S.2d ---, 2013 WL 2420854 (2d Dep't 2013).................................9

*National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*,
    103 A.D.3d 473, 962 N.Y.S.2d 9 (1st Dep't 2013) ...............................17, 18

*New York Telephone Co. v. Beckers*,
    30 F.2d 578 (2d Cir. 1929)..........................................................................15

*Nucci v. Warshaw Const. Corp.*,
    13 A.D.2d 699, 214 N.Y.S.2d 91 (2d Dep't 1961) ....................................14

iii

*Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*,
    99 N.Y.2d 391, 756 N.Y.S.2d 822 (2003) ............................................................. 17

*Russo v. DiMilia*,
    894 F.Supp.2d 391 (S.D.N.Y. 2012) ...................................................................... 9

*Schmidt v. S. M. Flickinger Co., Inc.*,
    88 A.D.2d 1068, 452 N.Y.S.2d 767 (3d Dep't 1982) ............................................ 15

*Spavone v. New York State Dep't of Correctional Services*,
    --- F.3d ---, 2013 WL 3064853 (2d Cir. 2013) ..................................................... 8

*State Farm Fire & Cas. Co. v. Joseph M.*,
    106 A.D.3d 806, 964 N.Y.S.2d 621 (2d Dep't 2013) ............................... 11, 13, 16

*Staten Island Molesi Social Club, Inc. v. Nautilus Ins. Co.*,
    39 A.D.3d 843, 835 N.Y.S.2d 303 (2d Dep't 2007) ............................................. 13

*Storr v. New York Cent. R.R. Co.*,
    261 N.Y. 348 (1933) ............................................................................................. 14

*Sylvia v. Eyth*,
    144 Misc. 316, 259 N.Y.S. 85 (County Ct. Westchester Co. 1932) ...................... 14

*Tedla v. Ellman*,
    280 N.Y. 124 (1939) ............................................................................................. 14

*Townes v. Park Motor Sales, Inc.*,
    7 A.D.2d 109, 180 N.Y.S.2d 553 (1st Dep't 1958) .............................................. 14

*United States Fidelity & Guaranty Co. v. Copfer*,
    48 N.Y.2d 871, 424 N.Y.S.2d 356 (1979) ..................................................... 17, 18

*Weinstock v. Columbia University*,
    224 F.3d 33 (2d Cir. 2000) ..................................................................................... 9

*Wolff v. United States*,
    214 F.Supp. 362 (S.D.N.Y. 1963) ........................................................................ 15

## STATUTES

CPLR § 5001 ............................................................................................................... 18

CPLR § 5004 ............................................................................................................... 18

Plaintiff United Parcel Service, Inc. ("UPS"), by its attorneys, Ansa Assuncao, LLP, submits this memorandum of law in support of its motion pursuant to Rule 56(a) of the Federal Rules of Civil Procedure for partial summary judgment.

## PRELIMINARY STATEMENT

UPS seeks an order requiring Defendant Lexington Insurance Company ("Lexington") to (1) assume UPS's defense in *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action"); and (2) reimburse the attorneys' fees and expenses UPS has incurred to date in its defense of the Underlying Action.[1]

An insurer's duty to defend its insured against third-party claims is exceedingly broad and arises whenever there is a reasonable possibility of coverage under the policy terms. Whether an insured might ultimately be found liable to a third party is not an issue for an insurer to consider when presented with a claim against its insured.  As one New York court has observed, "the duty to defend arises not from the probability of recovery, but from its possibility, no matter how remote."[2]  The scope of the duty is so broad in fact that New York courts resolve any doubts regarding the existence of the duty to defend in favor of the insured.

UPS is an additional insured under Lexington's policy (the "Policy") with Adelis International Security, Inc. ("Adelis").  The Policy provides UPS with coverage for liability caused by Adelis's ongoing operations for UPS to the extent that the injury is caused (even in

---

[1]     By making a motion for partial summary judgment with respect to these claims only, UPS is not waiving the right to make a subsequent motion for summary judgment on its remaining claims.  UPS expressly reserves this right.

[2]     *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*, 66 A.D.2d 269, 278, 412 N.Y.S.2d 605, 610 (1st Dep't 1979).

part) by Adelis's negligence or the negligence of those acting on Adelis's behalf.  The Policy also insures Adelis's obligation to pay damages to UPS under their guard services agreement.

Marilyn Chase ("Chase") was an Adelis employee who was allegedly injured while working as a security guard at UPS's West 43rd Street facility.  Based on the facts developed in the Underlying Action, a fact finder may find that Chase was at least partially at fault for the incident and contributed to her own injuries.  In this context, Chase's actions are attributable to Adelis.  As Adelis's employee, Chase's negligence is Adelis's negligence.  Thus, to the extent Chase's negligence contributed to the incident, Lexington's duty to defend is triggered.

Lexington is aware of these facts and circumstances.  Nonetheless, it has repeatedly declined UPS's requests for a defense and coverage under the Policy.  Lexington's refusal to defend UPS in the Underlying Action constitutes a breach of its policy obligations.  UPS moves for an order declaring that Lexington is obligated to defend UPS in the Underlying Action and awarding the attorneys' fees and expenses that UPS incurred to date in its defense of the Underlying Action.

## STATEMENT OF FACTS

**A.** **The Guard Services Agreement**

UPS and Adelis entered into a Guard Services Agreement dated May 1, 2007 (the "Guard Services Agreement"), whereby Adelis agreed to provide security services at the UPS facility located at 643 West 43rd Street, New York, New York (the "Premises").  (Declaration of Stephen P. McLaughlin, dated June 25, 2013 ("McLaughlin Dec."), Exhibit C.)

Paragraph 7 of the Guard Services Agreement sets forth Adelis's defense and indemnification obligations.  It provides as follows:

> [Adelis] shall defend, indemnify, and hold harmless UPS, including without limitation, United Parcel Service, Inc., a Delaware corporation and each of its successors, subsidiaries and affiliates,

2

landlord, directors, officers, employees, and agents (hereinafter collectively referred to as 'UPS') of any of the foregoing, from and against any and all claims, losses, damages, suits, fees, judgments, costs, expenses (including attorney's fees), or liabilities of any kind or nature whatsoever related to the Work hereunder, including, but not limited to, those arising or alleged to have arisen out of or in consequence of negligence, wrongful acts or omissions, unlawful acts, or willful misconduct of [Adelis], or of [Adelis's] personnel, which UPS may incur or sustain arising out of or in connection with, but not limited to, personal injury (including death resulting therefrom), property loss or damage, false arrest, willful detention, false imprisonment, malicious prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny or dishonesty.

[Adelis] shall bear any expense of defending any action, which may be brought against UPS alone or along with [Adelis] and others. UPS will notify [Adelis] in writing of any claim asserted, or action brought, against UPS alone or along with [Adelis] or others.  Upon the written request of UPS, [Adelis] shall assume the defense of such action or any proceeding, and in any event will pay any judgment or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth in accordance with the terms set forth above.

(McLaughlin Dec., Exhibit C, at ¶ 7.)

The rider to the Guard Services Agreement (the "Rider") requires indemnification and defense for all claims, losses, damages, expenses or liabilities, except those arising out of the sole negligence of UPS.  It provides as follows:

Any contrary or inconsistent provision in the attached agreement notwithstanding, [Adelis], agrees to be responsible for and to indemnify and to hold harmless United Parcel Service, Inc., its parent, landlord and affiliated companies (hereinafter collectively referred to as 'UPS') from any claims, losses, damages, expenses or liabilities of any kind or nature whatsoever, arising or alleged to have arisen in part, out of or in consequence of the work hereunder, which it may incur or sustain by reason of any act or omission of [Adelis] or any employee of [Adelis] and any injury suffered by any employee of [Adelis], including but not limited to personal injury (including death resulting therefrom), property damage, false arrest, willful detention, false imprisonment, malicious prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny and dishonesty, except from and against all losses,

3

> damages, expense, etc., as set forth hereinabove, arising out of the [sole] negligence of UPS.
>
> [Adelis] will bear any expense of defending any action which may be brought against UPS alone or along with [Adelis] or others, and upon request of UPS shall assume the defense of such action or any proceeding, and will pay any [judgment] or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth.

(McLaughlin Dec., Exhibit C, at Rider.)

Paragraph 8 of the Guard Services Agreement requires Adelis to procure the insurance coverage specified therein.  One required coverage is:

> Comprehensive General Liability Insurance against all hazards (including contractual liability insurance against the liability assumed under the indemnity agreement between UPS and [Adelis] hereinabove set forth and made a condition of this Agreement), with the following minimum limits of liability:
>
> Personal injury and bodily injury, including death resulting therefrom, on an occurrence basis: $1,000,000.00 aggregate. . . .

(McLaughlin Dec., Exhibit C, at ¶ 8(B).)  The Rider contains a similar insurance provision.  (*Id.*, at Rider.)  Both Paragraph 8 of the Guard Services Agreement and the Rider require Adelis to name UPS as an additional insured in all policies except workers' compensation.  (*Id.*, at ¶ 8 and Rider.)

**B.**     **The Policy**

Lexington issued Adelis the Policy which had a term of January 18, 2009 through January 18, 2010.  (McLaughlin Dec., Exhibit D.)  Lexington also issued Adelis an excess liability policy, policy number 19883784 with a policy term of January 18, 2009 through January 18, 2010.  (*Id.*, Exhibit A, at ¶ 11.)

1.      __The Additional Insured Endorsement__

The Policy contains an additional insured endorsement (the "Additional Insured Endorsement"), which states, in relevant part:

> Section II - Who Is An Insured is amended to include as an additional insured: (1) a person or organization that is the owner of real property or personal property, or (2) a person or organization responsible for hiring [Adelis] as an independent contractor, provided that, all of the following conditions are met:
>
> 1.      [Adelis is] performing 'professional services' on behalf of the owner of the real property or personal property, or the person or organization responsible for hiring [Adelis] as an independent contractor, whichever is applicable;
>
> 2.      [Adelis has] agreed in a written contract or written agreement that such person or organization be added as an additional insured on [Adelis's] policy; and
>
> 3.      the written contract or written agreement is in effect during this policy period and executed prior to the 'occurrence' of the 'bodily injury' or 'property damage', prior to the 'wrongful act', or prior to the offense giving rise to the 'personal and advertising injury", whichever is applicable.
>
> However, such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' caused by [Adelis's] ongoing operations for the additional insured and only to the extent that such 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' is caused by [Adelis's] negligence or the negligence of those performing operations on [Adelis's] behalf.

(McLaughlin Dec., Exhibit D.)

UPS qualifies as an additional insured under the Additional Insured Endorsement because (1) Adelis performed professional services on behalf of UPS; (2) Adelis agreed in the Guard Services Agreement that UPS would be added as an additional insured on the Policy; and (3) the Guard Services Agreement was in effect during the applicable policy period and was executed prior to the subject incident.

2.      **The Insured Contract Provision**

The Policy provides that Lexington will pay those sums that Adelis "becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 1(a).)  While the Policy generally excludes contractual liability, it expressly covers liability arising out of "insured contracts" (the "Insured Contract Provision").  (*Id*., at ¶ 2(b).)  The Policy defines "insured contract" as follows:

> [t]hat part of any other contract or agreement pertaining to [Adelis's] business (including an indemnification of a municipality in connection with work performed for a municipality) under which [Adelis] assume[s] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(*Id*., at Section V, ¶ 9(f).)  Reasonable attorneys' fees and necessary litigation expenses incurred by the party in its defense of the underlying action are included as damages.  (*Id*., at Section I, Coverage A, ¶ 2(b).)

The Guard Services Agreement is an "insured contract" because it pertains to Adelis's business under which it assumes the tort liability of UPS to pay for bodily injury to a third person.  Lexington, therefore, insures Adelis's obligation to pay damages to UPS under the Guard Services Agreement.

C.      **The Incident**

On January 28, 2009, Chase was an Adelis employee who worked at the Premises as a security guard manager.  (McLaughlin Dec., Exhibit A, at ¶ 19.)  Chase alleges that while working at the Premises, she was struck by a tug car that was owned and operated by UPS and its employees (the "Incident") and sustained personal injuries.  (*Id*., Exhibit G, at ¶ 9.)

**D.     UPS's Tender And Lexington's Response**

On November 18, 2009, Liberty Mutual Insurance Company ("Liberty"), acting on behalf of UPS, informed Adelis that UPS had been placed on notice of the Incident involving Adelis employee Chase.  (McLaughlin Dec., Exhibit E.)   Liberty tendered UPS's defense against Chase's claims to Adelis and requested full indemnification under the terms of the Guard Services Agreement.  (*Id*.)  Liberty requested that the tender be turned over to Adelis's insurance carrier.  (*Id*.)  Liberty also advised that it would be seeking reimbursement of all the expenses it incurred until Adelis assumed UPS's defense and indemnification.  (*Id*.)

Lexington acknowledged Liberty's November 18, 2009 letter on December 3, 2009. (McLaughlin Dec., Exhibit F.)  Lexington conceded that the Incident occurred while Chase was working as a security guard within the scope of her employment with Adelis.  (*Id*.)  However, it denied UPS's tender request because it concluded that the Incident was the direct result of UPS's sole negligence.  (*Id*.)  Lexington refused to reimburse any expenses associated with the Chase matter.  (*Id*.)

**E.     The Underlying Action**

On March 24, 2010, Chase commenced the Underlying Action against UPS seeking recovery for her alleged personal injuries resulting from the Incident.  (McLaughlin Dec., Exhibit G, at ¶ 9.)

On May 18, 2010, UPS answered Chase's Complaint.  (McLaughlin Dec., Exhibit H.) UPS alleged, *inter alia*, the following affirmative defenses: (1) Chase's alleged injuries were caused in whole or in part by her contributory negligence and/or culpable conduct; and (2) Chase's acts and/or omissions were the sole proximate cause of her alleged injuries.  (*Id*., at ¶¶ 8, 16.)

**F.      UPS's Request For Reconsideration**

The facts indicate that Chase's negligence contributed to the Incident and/or her alleged injuries.  (McLaughlin Dec., Exhibit A, at ¶ 21.)  Specifically, Chase's deposition testimony demonstrates that she bears at least partial responsibility for the Incident and her alleged injuries. (*Id*., Exhibit I.)

In light of Chase's deposition testimony, on June 20, 2012, UPS's counsel in the Underlying Action requested that Lexington revisit its denial of coverage under the Policy, accept the tender of defense and agree to indemnify UPS pursuant to the terms and conditions of the Guard Services Agreement.  (McLaughlin Dec., Exhibit J.)  Lexington never responded to the June 20, 2012 letter.  (*Id*., Exhibit A, at ¶ 32.)

**G.      The Instant Action**

On October 25, 2012, UPS commenced the instant action seeking declaratory relief under the Additional Insured Endorsement and the Insured Contract Provision, as well as damages for breach of contract.

On February 15, 2013, Lexington moved for judgment on the pleadings or, alternatively to stay the litigation and compel arbitration.  The Court denied Lexington's motion on May 7, 2013.

On May 21, 2013, the Court heard pre-motion arguments on the instant motion for partial summary judgment on Lexington's duty to defend UPS in the Underlying Action and set a briefing schedule.

## LEGAL ARGUMENT

### I.

### THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  F.R.C.P. 56(a); *Spavone v. New York State Dep't of Correctional Services*, --- F.3d ---, 2013 WL 3064853, at *6 (2d Cir. 2013). An issue of fact is "genuine" if the evidence is such that no reasonable jury could return a verdict for the nonmoving party.  *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000).  A fact is "material" when it might affect the outcome of the suit under the governing law.  *Jeffreys*, 426 F.3d at 553.

After the moving party has carried its initial burden of demonstrating its entitlement to judgment as a matter of law, the burden shifts to the nonmoving party to show that a genuine issue of material fact exists that requires a trial.  *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Jeffreys*, 426 F.3d at 554, quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).  The nonmoving party may not rely on conclusory allegations or unsubstantiated speculation.  *Id*.; *Weinstock*, 224 F.3d at 41.  It must offer some hard evidence showing that its version of the events is not "wholly fanciful."  *Jeffreys*, 426 F.3d at 554, quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

When considering a summary judgment motion, the court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial.  *Russo v. DiMilia*, 894 F.Supp.2d 391, 405 (S.D.N.Y. 2012).

A party may move for partial summary judgment as to a claim, defense or part of a claim or defense.  F.R.C.P. 56(a); *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 824 F.Supp.2d 524, 533 (S.D.N.Y. 2011).  Courts may grant partial summary judgment requiring the insurer to assume the defense of the insured.  *Avondale Industries, Inc. v. Travelers Indemnity Co.*, 887 F.2d 1200, 1203-04 (2d Cir. 1989).  They may also grant summary judgment on the insured's entitlement to recover the defense costs from the insurer.  *Murnane Bldg. Contractors, Inc. v. Zurich American Ins. Co.*, --- N.Y.S.2d ---, 2013 WL 2420854, at *2 (2d Dep't 2013); *Davidson v. Hilton Hotels Corp.*, 266 A.D.2d 336, 337, 698 N.Y.S.2d 297, 299 (2d Dep't 1999).

## II.

## LEXINGTON IS OBLIGATED TO DEFEND UPS IN THE UNDERLYING ACTION

UPS is entitled to judgment as a matter of law on Lexington's duty to defend it in the Underlying Action.  The evidence demonstrates that Chase was an Adelis employee performing its operations for UPS at the time of the Incident and it is at least reasonably possible that her actions contributed to the Incident and her own alleged injuries.  Since there is a reasonable possibility of coverage under the Policy, Lexington is obligated to defend UPS in the Underlying Action.

### A.       Lexington's Duty To Defend Is Exceedingly Broad.

As insurer's duty to defend is "exceedingly broad."  *International Business Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 424 (2d Cir. 2002); *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 305 (2007).  It is far broader than the duty to indemnify.  *CGS Industries, Inc. v. Charter Oak Fire Ins. Co.*, --- F.3d ---, 2013 WL 2476998, at *5 (2d Cir. 2013); *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 179 (2006).  The duty to defend arises when there is a reasonable possibility

of coverage under the policy terms. *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003).

When presented with a claim against its insured, an insurer is not to consider whether its insured might ultimately be found liable to a third party. *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*, 66 A.D.2d 269, 278, 412 N.Y.S.2d 605, 610 (1st Dep't 1979). The duty to defend "arises not from the probability of recovery, but from its possibility, no matter how remote." *Id*. Any doubts regarding the existence of the duty to defend is resolved in favor of the insured. *Id*.

The insurer must defend "whenever the four corners of the complaint suggest--or the insurer has actual knowledge of facts establishing--a reasonable possibility of coverage." *Maryland Cas. Co.*, 332 F.3d at 160, quoting *Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 648, 593 N.Y.S.2d 966, 969 (1993); *see also Feldman Law Group P.C. v. Liberty Mut. Ins. Co.*, 819 F.Supp.2d 247, 256 (S.D.N.Y. 2011) (Scheindlin, J.); *State Farm Fire & Cas. Co. v. Joseph M.*, 106 A.D.3d 806, 964 N.Y.S.2d 621, 622 (2d Dep't 2013).

While an analysis of the allegations in the underlying complaint often serve as the first step for determining whether the duty to defend arises, the underlying complaint's allegations are not controlling. *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 66, 571 N.Y.S.2d 672, 674 (1991). The duty to defend will be found whenever the insurer has actual knowledge of facts that indicate that the action involves a covered event. *Id*. Courts recognize that "wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify--clearly an unacceptable result." *Id*. The New York Court of Appeals explained that:

> the duty to defend derives, in the first instance, not from the complaint drafted by a third party, but rather from the insurer's

11

own contract with the insured. While the allegations in the complaint may provide the significant and usual touchstone for determining whether the insurer is contractually bound to provide a defense, the contract itself must always remain a primary point of reference. Indeed, a contrary rule making the terms of the complaint controlling would allow the insurer to construct a formal fortress of the third party's pleadings thereby successfully ignoring true but unpleaded facts within its knowledge that require it to conduct the insured's defense. Further, an insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint. This is particularly so because the drafter of the pleading may be unaware of the true underlying facts or the nuances that may affect the defendant's coverage and it might not be in the insured's (or the insurer's) interest to reveal them.

*Id*. at 68, 571 N.Y.S.2d at 676-77 (internal citations and quotation marks omitted).

The instant case illustrates the rationale for this rule. Lexington owes UPS a defense and indemnification against claims arising from Adelis's negligence in performing services for UPS. UPS is entitled to a defense and indemnification unless it is solely responsible for the injury.

Here, Chase worked for Adelis and was assigned to UPS's facility. She was allegedly injured by a collision with a UPS tug car. Under these circumstances, Chase's Complaint would never admit or assert that she bears some or all of the responsibility for the Incident or her alleged injuries. She has every incentive not to plead these facts. If she did, she would reduce or prevent her recovery against UPS. She would also not allege in her Complaint any negligence against Adelis since that claim would be barred by workers' compensation and could further reduce her recovery against UPS. Nonetheless, Chase may ultimately be found comparatively negligent and partially responsible for her alleged injuries. In fact, that is one of UPS's defenses in the Underlying Action.

If Lexington's duty to defend were based solely upon the allegations in Chase's Complaint, despite known facts, it would never be required to defend UPS, an additional insured,

in a situation like this where UPS was sued by insured's employee.  This would be true even if the facts show that the employee was negligent.[3]  This result is contrary to New York law.

Thus, an insurer may <u>not</u> disclaim coverage on the ground that the allegations in the underlying complaint do not make out a claim for coverage.  *Almar, Inc. v. Utica Mut. Ins. Co.*, 280 A.D.2d 624, 625, 721 N.Y.S.2d 96, 97 (2d Dep't 2001).   An insurer cannot ignore information supplied by the insured in assessing its duty to defend.  *Staten Island Molesi Social Club, Inc. v. Nautilus Ins. Co.*, 39 A.D.3d 843, 845, 835 N.Y.S.2d 303, 305 (2d Dep't 2007); *Almar*, 280 A.D.2d at 625, 721 N.Y.S.2d at 97.   Deposition testimony can provide the insurer with knowledge of facts establishing a reasonable possibility of coverage.  *Auriemma v. Biltmore Theatre, LLC*, 82 A.D.3d 1, 13, 917 N.Y.S.2d 130, 139 (1st Dep't 2011).

An insurer like Lexington may avoid its duty to defend only if it establishes, as a matter of law, that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any provision of the insurance policy.  *CGS Industries, Inc.*, 2013 WL 2476998, at *7; *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005); *State Farm Fire & Cas. Co.*, 106 A.D.3d at 806, 964 N.Y.S.2d at 622.   Here, Lexington cannot meet this standard.

**B.        <u>There Is A Reasonable Possibility Of Coverage Under The Policy.</u>**

The Additional Insured Endorsement provides coverage to UPS as an additional insured for liability for bodily injury caused by Adelis's ongoing operations for UPS to the extent that such injury is caused in part by Adelis's negligence or the negligence of those acting on Adelis's

---

[3]      Notably, Lexington denied UPS's tender <u>before</u> the Underlying Action was commenced. Lexington, therefore, did not know the contents of Chase's Complaint at that time.  Accordingly, Lexington's argument that Chase's Complaint does not trigger its duty to defend is disingenuous and should be rejected.

behalf.  (McLaughlin Dec., Exhibit D.)   The Insured Contract Provision insures Adelis's obligation to pay damages to UPS under the Guard Services Agreement.  (*Id*., at ¶ 2(b).)

There is a reasonable possibility of coverage for the Underlying Action under the Policy. Chase was an Adelis employee.  She was allegedly injured while performing Adelis's ongoing operations for UPS.  For the purposes of determining Lexington's duty to defend, Chase is synonymous with Adelis.  Moreover, the facts suggest that Chase was contributorily negligent and that she contributed to the Incident and her alleged injuries.  Since a jury could find her at least partially at fault for the Incident, Lexington's defense obligations under the Policy are triggered.

A plaintiff must exercise the same level of due care that a reasonably prudent person would use under similar circumstances to avoid or protect herself from injury.  *Tedla v. Ellman*, 280 N.Y. 124, 126 (1939); *Kane v. United States*, 189 F.Supp.2d 40, 52 (S.D.N.Y. 2002); *Kulaga v. State*, 37 A.D.2d 58, 60, 322 N.Y.S.2d 542, 545 (4th Dep't 1971).   Plaintiff's awareness of the risk is assessed against the background of her skill and experience.  *Maddox v. City of New York*, 66 N.Y.2d 270, 278, 496 N.Y.S.2d 726, 730 (1985); *Guzman v. Iceland*, 18 A.D.3d 704, 705, 795 N.Y.S.2d 745, 746 (2d Dep't 2005).

In considering plaintiff's comparative negligence, the jury has a right to consider all factors, including plaintiff's disregard of a hazard that could have been avoided by the reasonable exercise of prudence and caution.  *Giraldez v. City of New York*, 214 A.D.2d 461, 462, 625 N.Y.S.2d 517, 518 (1st Dep't 1995).  Indeed, plaintiff cannot remain in a position of danger and then seek to recover damages when that danger results in harm.  *Storr v. New York Cent. R.R. Co.*, 261 N.Y. 348, 349 (1933); *Nucci v. Warshaw Const. Corp.*, 13 A.D.2d 699, 699,

214 N.Y.S.2d 91, 93 (2d Dep't 1961); *Townes v. Park Motor Sales, Inc.*, 7 A.D.2d 109, 112, 180 N.Y.S.2d 553, 556 (1st Dep't 1958).

New York courts have held that a plaintiff has a duty to avoid being hit. *Hernandez v. Brooklyn & Queens Tr. Corp.*, 284 N.Y. 535, 538-39 (1940); *Sylvia v. Eyth*, 144 Misc. 316, 317-18, 259 N.Y.S. 85, 86 (County Ct. Westchester Co. 1932). For example, in *Luzzi v. Charles E. Haff Co.*, 96 N.Y.S. 456 (App. Term. 1906), plaintiff saw a truck approaching him and had an opportunity to get out of its way. Instead of doing so, he stood still and allowed himself to be injured. The appellate court held that he was guilty of contributory negligence. *Id.*

Even if plaintiff has the right of way, she has a duty to avoid a collision. *Jones v. Vialva-Duke*, 106 A.D.3d 1052, --- N.Y.S.2d --- (2d Dep't 2013); *Graeber-Nagel v. Naranjan*, 101 A.D.3d 1078, 1078, 956 N.Y.S.2d 530, 531 (2d Dep't 2012). Plaintiff cannot continue blindly ahead with no regard for her own safety. *New York Telephone Co. v. Beckers*, 30 F.2d 578, 580 (2d Cir. 1929); *Wolff v. United States*, 214 F.Supp. 362, 364 (S.D.N.Y. 1963). Rather, plaintiff is:

> required to use due care in light of all of the circumstances and heed any danger that confronted her. The right of way is not a right to self-inflicted mayhem for which the defendant can be held liable, and one cannot, to the exclusion of everyone and everything around him, rely solely upon his right of way.

*Schmidt v. S. M. Flickinger Co., Inc.*, 88 A.D.2d 1068, 1068-69, 452 N.Y.S.2d 767, 769 (3d Dep't 1982).

Here, the evidence demonstrates Chase's comparative negligence with respect to the Incident. For example, Chase testified as follows:

> Q.    Now, the tow car that came in contact with you, before it came in contact with you were you facing it or did you have your back to it?
>
> A.    I was facing it.

Q.     And did you see it coming towards you?

A.     Right--yes.

Q.     And before it came into contact with you, did you try to move out of the way in any way?

A.     No.  I was standing right there.

Q.     Any why didn't you try to get out of the way as it was coming towards you?

A.     Because I didn't know he going to make the U-turn.

Q.     But as you saw the tow car actually coming towards you before it struck you, why didn't you try to get out of the way?

A.     Because I feel I'm on the yellow line.  I have the right of way.

Q.     Did you watch the tow car the entire time until it struck you?

A.     Yes.

Q.     Did you try to jump up in the air to miss it?

A.     No.  I just--I don't know.

(McLaughlin Dec., Exhibit I, at 50:6-52:10.)

Chase was familiar with the tug's operation and use at the Premises.  (McLaughlin Dec., Exhibit I, at 36:9-13.)  She trained others regarding tugs.  (*Id.*, at 37:22-38:10.)  She saw the tug approaching her.  (*Id.*, at 50:6-13; 51:5-7.)  She testified that she saw the tug the entire time before it hit her.  (*Id.*, at 51:5-7.)  She saw it approach her yet she took no action to avoid being hit.  (*Id.*, at 50:14-17; 51:8-10.)  Instead, she remained where she was because she felt she had the right of way.  (*Id.*, at 50:23-51:4.)

A jury could conclude that Chase breached her duty to avoid being hit.  *Luzzi*, 96 N.Y.S. at 456.  This duty to use reasonable care to avoid injury is not changed by her allegedly having

the right of way. *Jones*, 106 A.D.3d at 1052; *Graeber-Nagel*, 101 A.D.3d at 1078, 956 N.Y.S.2d at 531.

Based upon these facts, a jury could determine that Chase's negligence contributed to the Incident because, among other things, she remained in a position of danger and was aware of the potential risk. Accordingly, there is a reasonable possibility of coverage under the Policy. *Maryland Cas. Co.*, 332 F.3d at 160.

Lexington denied UPS's tender because Lexington concluded that the Incident was solely the product of UPS's negligence. However, Lexington has no right to make that conclusion. Rather, the Court or the jury has the right and authority to make that conclusion. Lexington's duty to defend has a far lesser threshold. Here, Lexington is required to defend UPS because it had actual knowledge of facts establishing a reasonable possibility of coverage. *Maryland Cas. Co.*, 332 F.3d at 160.

UPS, therefore, has demonstrated its entitlement to judgment as a matter of law on its claim that Lexington is obligated to defend it in the Underlying Action. Lexington should be ordered to assume UPS's defense and pay for all attorneys' fees and expenses going forward.

## C.    The Policy Provides Primary Coverage for UPS.

The well-understood meaning of the term additional insured is an entity enjoying the same protection as the named insured. *Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003). Therefore, coverage for an additional insured is primary unless unambiguously stated otherwise in the underlying contract between the additional insured and the contractor. *Id.* at *393*-94, 756 N.Y.S.2d at 823. UPS, therefore, has primary coverage under the Policy because the Guard Services Agreement does not unambiguously state otherwise.

17

## III.

### LEXINGTON IS OBLIGATED TO REIMBURSE UPS
### FOR ITS DEFENSE EXPENSES IN THE UNDERLYING ACTION

If the insurer breaches its duty to defend, it is liable for the expenses incurred by the insured in providing for the insured's own defense. *United States Fidelity & Guaranty Co. v. Copfer*, 48 N.Y.2d 871, 873, 424 N.Y.S.2d 356, 357 (1979); *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474, 962 N.Y.S.2d 9, 11 (1st Dep't 2013). The insured is also entitled to interest at nine percent per annum from the date it paid each legal bill. CPLR §§ 5001, 5004; *Langenberg v. Sofair*, No. 03 Civ. 8339, 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 6, 2006); *National Union Fire Ins. Co. of Pittsburgh, PA*, 103 A.D.3d at 474, 962 N.Y.S.2d at 11.

Here, Lexington breached its duty to defend UPS in the Underlying Action. It, therefore, breached the Policy. As a result, Lexington is required to reimburse UPS for the attorneys' fees and expenses that UPS has incurred to date in its defense of Underlying Action, together with interest. *United States Fidelity & Guaranty Co.*, 48 N.Y.2d at 873, 424 N.Y.S.2d at 357; *National Union Fire Ins. Co. of Pittsburgh, PA*, 103 A.D.3d at 474, 962 N.Y.S.2d at 11.

UPS, has demonstrated its entitlement to judgment as a matter of law on its claim that Lexington is obligated to reimburse it for the attorneys' fees and expenses it has incurred to date in its defense of the Underlying Action, plus interest from the date each bill was paid. Lexington, therefore, should be ordered to reimburse UPS.

## <u>CONCLUSION</u>

For the foregoing reasons, UPS respectfully requests that the Court issue an Order granting its motion in its entirety.

Dated: White Plains, New York
June 25, 2013

ANSA ASSUNCAO, LLP
*Attorneys for Plaintiff*

By: s/ Stephen P. McLaughlin
    Stephen P. McLaughlin (SM- 4136)
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260
stephen.mclaughlin@ansalaw.com