UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED PARCEL SERVICE, INC.,

Plaintiff,

- against -

LEXINGTON INSURANCE COMPANY,

Defendant.

Case No.: 12-cv-07961 (SAS)

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF UNITED PARCEL SERVICE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

ANSA ASSUNCAO, LLP
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

LEGAL ARGUMENT ..... 2

I. LEXINGTON'S FACTUAL ARGUMENT DEMONSTRATES THAT IT IS OBLIGATED TO DEFEND UPS IN THE UNDERLYING ACTION ..... 2

A. The Evidence Demonstrates Chase's Negligence ..... 2

B. Lexington's Duty To Defend Is Ripe For Determination. ..... 5

II. THE LEXINGTON POLICY PROVIDES PRIMARY COVERAGE ..... 7

A. New York Court of Appeals Precedent Requires Primary Coverage To Additional Insureds. ..... 7

B. UPS's Self Insurance Does Not Constitute "Other Insurance." ..... 8

III. LEXINGTON AND LIBERTY ARE NOT CO-INSURERS ..... 9

IV. LEXINGTON IS REQUIRED TO REIMBURSE UPS FOR ALL ATTORNEYS' FEES AND EXPENSES ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page (s)**

**Cases**

*83 Kajima Construction Services, Inc. v. Cati, Inc.*,
302 A.D.2d 228, 755 N.Y.S.2d 375 (1st Dep't 2003) ....................5, 6

*American Cas. of Reading, PA v. St. Charles Hosp. and Rehabilitation Ctr.*,
21 A.D.3d 914, 801 N.Y.S.2d 57 (2d Dep't 2005) ....................9

*American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*,
66 A.D.2d 269, 412 N.Y.S.2d 605 (1st Dep't 1979) ....................4

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
33 A.D.3d 116, 821 N.Y.S.2d 1 (1st Dep't 2006) ....................5, 6

*BP Air Conditioning Corp. v. One Beacon Ins. Group*,
8 N.Y.3d 708, 840 N.Y.S.2d 302 (2007) ....................6

*Consolidated Edison Co. of New York, Inc. v. Liberty Mutual*,
193 Misc.2d 399, 749 N.Y.S.2d 402 (Supreme Ct. N.Y. Co. 2002) ....................9

*Fitzpatrick v. American Honda Motor Co., Inc.*,
78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) ....................10

*Giraldez v. City of New York*,
214 A.D.2d 461, 625 N.Y.S.2d 517 (1st Dep't 1995) ....................4

*Hernandez v. Brooklyn & Queens Tr. Corp.*,
284 N.Y. 535 (1940) ....................3

*Holt v. New York City Transit Authority*,
151 A.D.2d 460, 542 N.Y.S.2d 250 (2d Dep't 1989) ....................5

*Kane v. United States*,
189 F.Supp.2d 40 (S.D.N.Y. 2002) ....................3

*Maddox v. City of New York*,
66 N.Y.2d 270, 496 N.Y.S.2d 726 (1985) ....................3

*Maryland Cas. Co. v. Continental Cas. Co.*,
332 F.3d 145 (2d Cir. 2003) ....................3, 5

*Murnane Bldg. Contractors, Inc. v. Zurich American Ins. Co.*,
107 A.D.3d 674, 966 N.Y.S.2d 486 (2d Dep't 2013) ....................9

*Pav-Lak Industries, Inc. v. Arch Ins. Co.*,
56 A.D.3d 287, 866 N.Y.S.2d 671 (1st Dep't 2008) ....................................................9

*Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*,
99 N.Y.2d 391, 756 N.Y.S.2d 822 (2003) ....................................................6, 8, 9

*QBE Ins. Corp. v. Public Service Mut. Ins. Co.*,
102 A.D.3d 442, 958 N.Y.S.2d 103 (1st Dep't 2013) ....................................................9

*State of New York v. AMRO Realty Corp.*,
936 F.2d 1420 (2d Cir. 1991)....................................................7

*Storr v. New York Cent. R.R. Co.*,
261 N.Y. 348 (1933) ....................................................3

*Village of Brewster v. Virginia Sur. Co., Inc.*,
70 A.D.3d 1239, 896 N.Y.S.2d 203 (3d Dep't 2010)....................................................10

Plaintiff United Parcel Service, Inc. ("UPS"), by its attorneys, Ansa Assuncao, LLP, submits this memorandum of law in further support of its motion pursuant to Rule 56(a) of the Federal Rules of Civil Procedure for partial summary judgment.

## PRELIMINARY STATEMENT

Defendant Lexington Insurance Company ("Lexington") owes UPS a defense in *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action") as an additional insured under its policy (the "Lexington Policy") with Adelis International Security, Inc. ("Adelis") and is obligated to reimburse UPS for its attorneys' fees and expenses. Lexington's attempt to avoid these obligations or delay their application is meritless. The Court should reject Lexington's arguments for the following reasons.

First, Lexington's attempt to parse the facts to demonstrate that Marilyn Chase ("Chase") was not at least partially at fault for the incident (the "Incident") is self-defeating. It is not for an insurer like Lexington to determine whether its named insured's employee contributed to the incident. That question belongs to the jury or the Court. The question is whether there exists a "reasonable possibility of coverage" under the law. It is undisputed that Chase had a duty of care to avoid the Incident, just like UPS. Lexington's parsing of the facts means that a reasonable possibility of coverage exists. Thus, Lexington's own argument proves that the duty to defend has been triggered.

Second, Lexington's argument that this motion is premature is meritless. This is essentially a legal argument which involves the terms of the Lexington Policy, the underlying service contract and New York insurance law. Here, the Lexington Policy's additional insured endorsement (the "Additional Insured Endorsement") expressly provides primary coverage. No factual determination or other discovery is necessary.

Third, Lexington's argument that the Lexington Policy only provides excess coverage under the Additional Insured Endorsement's "other insurance" clause (the "Other Insurance Clause") has been rejected by the New York Court of Appeals. Coverage for UPS as additional insured is primary because it is not unambiguously stated otherwise in the underlying service contract. Moreover, the Other Insurance Clause does not even apply. UPS is essentially self-insured. Self-insurance does not constitute "other insurance" under "other insurance" clauses.

Lexington's alternative arguments are also meritless. Lexington and Liberty Mutual Insurance Company ("Liberty"), UPS's insurer, are not co-insurers. When the Lexington Policy and Liberty's policy with UPS (the "Liberty Policy") are reviewed together, their express terms provide that the Lexington Policy is primary and the Liberty Policy is excess. Liberty, therefore, is not required to split the costs of UPS's defense.

Finally, the Court should reject Lexington's attempt to mitigate its losses by claiming that it should not pay UPS's attorneys' fees and expenses prior to its receipt of Chase's deposition transcript. Chase's negligence has always been an issue in the Underlying Action. Lexington should have defended UPS from the beginning. Lexington should not be allowed to force UPS to pay the costs of developing evidence against Chase.

## LEGAL ARGUMENT

### I.

### LEXINGTON'S FACTUAL ARGUMENT DEMONSTRATES THAT IT IS OBLIGATED TO DEFEND UPS IN THE UNDERLYING ACTION

#### A. The Evidence Demonstrates Chase's Negligence.

Lexington tries to avoid its duty to defend UPS by arguing that the facts do not support a finding of Chase's negligence. This argument is self-defeating. By resorting to a factual

argument, one which parses the facts and asks the Court to make inferences and assumptions, Lexington essentially demonstrates that its duty to defend has been triggered.

The standard to be applied is whether a "reasonable possibility of coverage" exists under the Lexington Policy. *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003). The Additional Insured Endorsement is broad and covers any claims arising from Adelis's negligence in performing services for UPS. Chase, an Adelis employee, was allegedly injured while performing these services. Lexington has a duty to defend UPS if there is a reasonable possibility of negligence on Adelis's part, through Chase.

Chase, like any plaintiff, must exercise the same level of due care that a reasonably prudent person would use under similar circumstances to avoid or protect herself from injury. *Kane v. United States*, 189 F.Supp.2d 40, 52 (S.D.N.Y. 2002). New York law places an affirmative duty on her to avoid being hit. *Hernandez v. Brooklyn & Queens Tr. Corp.*, 284 N.Y. 535, 538-39 (1940). She conceded that she took no action to avoid being hit when she saw the tug approach her. (Declaration of Stephen P. McLaughlin, dated June 25, 2013 ("McLaughlin Dec."), Exhibit I, at 50:14-17; 51:8-10.) She remained in a position of danger because she felt she had the right of way, which precludes her recovery of damages. (*Id*., at 50:23-51:4); *Storr v. New York Cent. R.R. Co.*, 261 N.Y. 348, 349 (1933). She was also aware of the risk due to her experience working at UPS's facility. (McLaughlin Dec., Exhibit I, at 36:9-13; 37:22-38:10); *see Maddox v. City of New York*, 66 N.Y.2d 270, 278, 496 N.Y.S.2d 726, 730 (1985).

Chase's failure to take evasive action and acceptance of the risk may support a finding of negligence. A jury could determine that her negligence contributed to the Incident and her injuries. Accordingly, there is a reasonable possibility of coverage under the Lexington Policy, which triggers Lexington's duty to defend. *Maryland Cas. Co.*, 332 F.3d at 160.

Lexington tries to avoid its duty to defend UPS by interpreting the evidence. For example, Lexington argues what it thinks Chase meant when she testified regarding her belief that she had the right of way: "The entirety of Chase's testimony reveals that her belief that she had the 'right of way' meant that she thought she was standing in a safe spot, where she was trained to stand when a vehicle passes." (Lexington's Memorandum of Law, dated July 23, 2013, at pp. 8-9.) Lexington also tries to explain why she did not get out of the way: "It defies logic that Chase knowingly would refuse to move in the face of a tow car about to strike her, and the only possible explanation is that the fishtailing tow car was unexpected, and resulted from [the driver's] negligent turn." (*Id*., at p. 9.)

An insurer like Lexington does not have the right to interpret the evidence to determine when its duty to defend has been triggered. The jury or the Court has the right to determine whether Chase was negligent. *Giraldez v. City of New York*, 214 A.D.2d 461, 462, 625 N.Y.S.2d 517, 518 (1st Dep't 1995). Here, Lexington, viewing the evidence through an insurer's lens, asks the Court to interpret and draw inferences and conclusions from the facts in order to determine whether the duty to defend has arisen. This type of analysis is improper and should be rejected by the Court.

The cases cited by Lexington are inapposite. They do not involve the standard that is applicable here: whether a reasonable possibility of coverage under an insurance policy exists due to plaintiff's contributory negligence. This is a lesser standard that requires any doubts regarding the existence of the duty to defend to be resolved in favor of the insured. *American Home Assurance Co. v. Port Auth. of N.Y. & N.J.*, 66 A.D.2d 269, 278, 412 N.Y.S.2d 605, 610 (1st Dep't 1979).

Most of Lexington's cases involve the appellate court's review of the jury's verdict to determine whether the facts at trial supported it, an entirely different standard. The cases recognize the importance of the jury's role in determining plaintiff's negligence. For example, in *Holt v. New York City Transit Authority*, 151 A.D.2d 460, 461, 542 N.Y.S.2d 250, 251 (2d Dep't 1989), the court held that contributory negligence is "a jury question in all but the clearest cases." The cases also do not negate the above rules regarding plaintiff's duties.

Lexington is required to defend UPS because there is a legal theory that Chase was at least partially at fault for the Incident. *Maryland Cas. Co.*, 332 F.3d at 160. UPS, therefore, has demonstrated its entitlement to judgment as a matter of law.

**B. Lexington's Duty To Defend Is Ripe For Determination.**

UPS's request for a ruling on the duty to defend is not premature. Lexington is the primary insurer under the express terms of the Additional Insured Endorsement. No further determination is required.

Lexington's reliance on *83 Kajima Construction Services, Inc. v. Cati, Inc.*, 302 A.D.2d 228, 755 N.Y.S.2d 375 (1st Dep't 2003) is misplaced. In that case, defendant insurer's policy expressly provided that the additional insured coverage would be primary only after the underlying claim was determined to be solely the result of the named insured's negligence. Thus, because of the policy's express terms, the court could not determine whether the additional insured was entitled to primary coverage until liability was determined in the underlying action.

The First Department later explained why the result in *Kajima* is distinguishable from cases like the present one. *See BP Air Conditioning Corp. v. One Beacon Ins. Group,* 33 A.D.3d 116, 821 N.Y.S.2d 1 (1st Dep't 2006). In *Kajima*, until the liability determination was made, defendant insurer was, by the terms of the additional insured endorsement, merely an excess

insurer without any obligation to defend the additional insured prior to the exhaustion of primary coverage. The court further explained that:

> [t]he particular language of the *Kajima* additional insured endorsement provides the context of our characterization there of the rule governing the activation of the duty to defend as 'not unyielding but rather one of expedience.' It was only because [defendant insurer] was not, at that juncture, a primary insurer under its policy's additional insured endorsement that we saw 'no practical need,' prior to the determination of the underlying action, for [defendant insurer] to contribute to the defense of an additional insured that was already being defended by its own carrier. Since the additional insured endorsement at issue here does not use the contingent language found in the additional insured endorsement in *Kajima*, the additional insured's receipt of a defense from its own carrier lacks the significance in this case that it had in *Kajima*. Plainly, 'expedience' cannot trump the meaning of the applicable contractual language, as that language has been construed by the Court of Appeals.

*Id*. at 127-28, 821 N.Y.S.2d at 9 (internal citations omitted).

On appeal, the Court of Appeals rejected the insurer's argument for a different standard that requires a liability determination before an additional named insured is entitled to a defense. *BP Air Conditioning Corp. v. One Beacon Ins. Group*, 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 306 (2007). The Court of Appeals held that the standard for determining whether an additional insured is entitled to a defense is the same standard that is used to determine if a named insured is entitled to a defense. *Id*. at 715, 840 N.Y.S.2d at 306.

Here, the Additional Insured Endorsement does not use the conditional language found in *Kajima*. It expressly provides primary coverage to UPS. *See Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003).

## II.

## THE LEXINGTON POLICY PROVIDES PRIMARY COVERAGE

Lexington's latest attempt to avoid defending UPS posits that the Lexington Policy is excess to the Liberty Policy, the theory being that the primary insurer provides a defense, the excess insurer does not. This new defense should be rejected because it was not asserted when Lexington disclaimed coverage even though Lexington had knowledge of the circumstances regarding it (*e.g.*, the Other Insurance Clause and Liberty's involvement). (McLaughlin Dec., Exhibits E and F); *see State of New York v. AMRO Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (holding that an insurer is deemed to have waived a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge of the circumstances regarding the unasserted defense). The defense is also contrary to law.

### A. New York Court of Appeals Precedent Requires Primary Coverage To Additional Insureds.

Lexington's argument that the Additional Insured Endorsement provides excess coverage to UPS because the underlying service contract does not expressly require primary coverage has been rejected by the New York Court of Appeals.

The Additional Insured Endorsement's Other Insurance Clause provides:

> The coverage provided by this endorsement to the additional insured shall be excess over any other insurance available to the additional insured covering liability for damages arising out of the premises or operations for which such additional insured has been added pursuant to this endorsement. Notwithstanding the prior sentence of this paragraph B., the coverage provided to the additional insured under this endorsement shall be primary if the contract or written agreement between [Adelis] and the additional insured requires that this coverage be primary.

(McLaughlin Dec., Exhibit D; emphasis added.)

In *Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003), the New York Court of Appeals considered a substantially similar "other insurance" clause. The court held that the clause provided primary coverage to the additional insured, even though the underlying contract did not expressly require that the coverage be primary. *Id*. The court recognized that the well-understood meaning of the term additional insured is an entity enjoying the same protection as the named insured. *Id*. Coverage for the additional insured, therefore, is primary unless unambiguously stated otherwise in the underlying contract. *Id.*

As in *Pecker Iron Works of New York*, *Inc.*, Adelis's agreement to name UPS as an additional insured also constituted the parties' agreement that Adelis's insurer - not UPS's insurer - would provide UPS with primary coverage. In the Other Insurance Clause, Lexington agreed to provide primary coverage to any party with whom Adelis had agreed that coverage would be primary. When Adelis agreed to it, the Other Insurance Clause was satisfied. The express terms of the Other Insurance Clause, therefore, provide primary coverage to UPS.

**B. <u>UPS's Self Insurance Does Not Constitute "Other Insurance."</u>**

The Other Insurance Clause does not even apply here. UPS is essentially self-insured. UPS's deductible under the Liberty Policy matches the limit of the Liberty Policy.[1] (Declaration of J. Gregory Lahr, dated July 23, 2013 ("Lahr Dec."), Exhibit B, at UPS000002; UPS00038.) Self-insurance does not constitute "other insurance" within the meaning of "other insurance"

---

[1] Lexington asserts that UPS's deductible does not apply to the duty to defend and the Liberty Policy does not specify that UPS is responsible for defense costs. Lexington is wrong. Pursuant to the Liberty Policy's deductible endorsement, UPS is responsible for all "supplementary payments" because of bodily injury under the bodily injury coverage. (Lahr Dec., Exhibit B, at UPS00038.) Supplementary payments include all expenses incurred by Liberty with respect to any suit against UPS that Liberty defends. (*Id.*, at UPS00081.) Accordingly, UPS, not Liberty, is responsible for defense costs.

clauses. *American Cas. of Reading, PA v. St. Charles Hosp. and Rehabilitation Ctr.*, 21 A.D.3d 914, 915-16, 801 N.Y.S.2d 57, 58 (2d Dep't 2005); *Consolidated Edison Co. of New York, Inc. v. Liberty Mutual*, 193 Misc.2d 399, 401, 749 N.Y.S.2d 402, 403 (Supreme Ct. N.Y. Co. 2002).

**III.**

**LEXINGTON AND LIBERTY ARE NOT CO-INSURERS**

Lexington argues that if the Lexington Policy provides primary coverage, then Lexington and Liberty are co-insurers because the Liberty Policy also provides primary coverage. Lexington ignores the Liberty Policy's express language that it is excess under the circumstances presented here.

The Liberty Policy's "other insurance" clause provides that it is excess over:

> [a]ny other primary insurance available to [UPS] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [UPS has] been added as an additional insured by attachment of an endorsement.

(Lahr Dec., Exhibit B, at UPS000084.)

The Lexington Policy is primary in accordance with *Pecker Iron Works of New York, Inc. v. Traveler's Ins. Co.*, 99 N.Y.2d 391, 393, 756 N.Y.S.2d 822, 823 (2003). The Liberty Policy, therefore, is excess under its "other insurance" clause as a matter of law. *See QBE Ins. Corp. v. Public Service Mut. Ins. Co.*, 102 A.D.3d 442, 443, 958 N.Y.S.2d 103, 104 (1st Dep't 2013); *Pav-Lak Industries, Inc. v. Arch Ins. Co.*, 56 A.D.3d 287, 288, 866 N.Y.S.2d 671, 673 (1st Dep't 2008).

Accordingly, Lexington is obligated to defend UPS on a primary basis. *Murnane Bldg. Contractors, Inc. v. Zurich American Ins. Co.*, 107 A.D.3d 674, 966 N.Y.S.2d 486, 489 (2d Dep't 2013). Coverage under the Lexington Policy must be exhausted before Liberty is required

to contribute under the Liberty Policy. *Village of Brewster v. Virginia Sur. Co., Inc.*, 70 A.D.3d 1239, 1243, 896 N.Y.S.2d 203, 207 (3d Dep't 2010).

**IV.**

**LEXINGTON IS REQUIRED TO REIMBURSE UPS FOR ALL ATTORNEYS' FEES AND EXPENSES**

Lexington argues that its duty to defend did not arise until it was given a copy of Chase's deposition transcript and, therefore, it should not be responsible for UPS's attorneys' fees and expenses prior to then. Lexington's argument is without merit.

Chase's negligence has always been an issue in the Underlying Action. UPS asserted affirmative defenses regarding Chase's negligence in its Answer. (McLaughlin Dec., Exhibit H, at ¶¶ 8, 16.) In order for Lexington's duty to defend to arise, Chase did not have to admit or assert in her Complaint that she bore some or all of the responsibility for the Incident or her alleged injuries. *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 66, 571 N.Y.S.2d 672, 674 (1991).

Lexington was required to defend UPS in the Underlying Action from the beginning. UPS should not be forced to pay substantial fees and expenses in discovery to develop evidence against Chase. Lexington would have paid these fees and expenses but for the wrongful disclaimer. This result cannot be allowed.

**CONCLUSION**

For the foregoing reasons and the reasons set forth in its moving papers, UPS respectfully requests that the Court issue an Order granting its motion in its entirety.

Dated: White Plains, New York
       July 30, 2013

                                        ANSA ASSUNCAO, LLP
                                        *Attorneys for Plaintiff*

                                        By: s/ Stephen P. McLaughlin
                                            Stephen P. McLaughlin (SM- 4136)
                                        707 Westchester Avenue, Suite 309
                                        White Plains, New York 10604
                                        (914) 298-2260
                                        stephen.mclaughlin@ansalaw.com