UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED PARCEL SERVICE, INC.,<br><br>      Plaintiff,<br><br>  - against -<br><br>LEXINGTON INSURANCE COMPANY,<br><br>      Defendant. | Case No.: 12-cv-07961 (SAS)<br><br>   ECF Case<br><br><br>**PLAINTIFF'S REPLY LOCAL CIVIL RULE 56.1(a) STATEMENT OF UNDISPUTED MATERIAL FACTS** |

Plaintiff United Parcel Service, Inc. ("UPS"), by and through its attorneys, Ansa Assuncao, LLP, submits this Reply Local Civil Rule 56.1(a) Statement of Undisputed Material Facts in response to Defendant Lexington Insurance Company's ("Lexington") Counterstatement Under Local Rule 56.1 in Opposition to Plaintiff's Motion for Summary Judgment as follows.

1.  UPS and Adelis International Security, Inc. ("Adelis") entered into a Guard Services Agreement dated May 1, 2007 (the "Guard Services Agreement"), whereby Adelis agreed to provide security services at the UPS facility located at 643 West 43rd Street, New York, New York (the "Premises"). (Declaration of Stephen P. McLaughlin, dated June 25, 2013 ("McLaughlin Dec."), Exhibit C.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

**UPS'S REPLY**: No reply is necessary.

2.  Paragraph 7 of the Guard Services Agreement provides as follows:

[Adelis] shall defend, indemnify, and hold harmless UPS, including without limitation, United Parcel Service, Inc., a Delaware corporation and each of its successors, subsidiaries and affiliates, landlord, directors, officers, employees, and agents (hereinafter collectively referred to as 'UPS') of any of the foregoing, from and against any and all claims, losses, damages, suits, fees, judgments, costs, expenses (including attorney's fees), or liabilities of any kind or nature whatsoever related to the Work hereunder, including, but not limited to, those arising or alleged to have arisen out of or in consequence of negligence, wrongful acts or omissions, unlawful acts, or willful misconduct of [Adelis], or of [Adelis's] personnel, which UPS may incur or sustain arising out of or in connection with, but not limited to, personal injury (including death resulting therefrom), property loss or damage,

false arrest, willful detention, false imprisonment, malicious prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny or dishonesty.

[Adelis] shall bear any expense of defending any action, which may be brought against UPS alone or along with [Adelis] and others. UPS will notify [Adelis] in writing of any claim asserted, or action brought, against UPS alone or along with [Adelis] or others. Upon the written request of UPS, [Adelis] shall assume the defense of such action or any proceeding, and in any event will pay any judgment or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth in accordance with the terms set forth above.

(McLaughlin Dec., Exhibit C, at ¶ 7.)

      **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

      **UPS'S REPLY**: No reply is necessary.

3.      The rider to the Guard Services Agreement (the "Rider") provides as follows:

Any contrary or inconsistent provision in the attached agreement notwithstanding, [Adelis], agrees to be responsible for and to indemnify and to hold harmless United Parcel Service, Inc., its parent, landlord and affiliated companies (hereinafter collectively referred to as 'UPS') from any claims, losses, damages, expenses or liabilities of any kind or nature whatsoever, arising or alleged to have arisen in part, out of or in consequence of the work hereunder, which it may incur or sustain by reason of any act or omission of [Adelis] or any employee of [Adelis] and any injury suffered by any employee of [Adelis], including but not limited to personal injury (including death resulting therefrom), property damage, false arrest, willful detention, false imprisonment, malicious prosecution, defamation, libel and slander, assault, battery, embezzlement, larceny and dishonesty, except from and against all losses, damages, expense, etc., as set forth hereinabove, arising out of the [sole] negligence of UPS.

[Adelis] will bear any expense of defending any action which may be brought against UPS alone or along with [Adelis] or others, and upon request of UPS shall assume the defense of such action or any proceeding, and will pay any [judgment] or claim established against or cost or expense incurred by UPS arising from any causes hereinabove set forth.

(McLaughlin Dec., Exhibit C, at Rider.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

**UPS'S REPLY**: No reply is necessary.

4.      Paragraph 8 of the Guard Services Agreement requires Adelis to procure the insurance coverage specified therein, including:

> Comprehensive General Liability Insurance against all hazards (including contractual liability insurance against the liability assumed under the indemnity agreement between UPS and [Adelis] hereinabove set forth and made a condition of this Agreement), with the following minimum limits of liability:
>
> (1) Personal injury and bodily injury, including death resulting therefrom, on an occurrence basis: $1,000,000.00 aggregate. . . .

(McLaughlin Dec., Exhibit C, at ¶ 8(B).)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Agreement speaks for itself and refers all issues of contract construction and interpretation to the Court.

**UPS'S REPLY**: No reply is necessary.

5.      The Rider contains an insurance provision similar to Paragraph 8 of the Guard Services Agreement.  (McLaughlin Dec., Exhibit C, at Rider.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Agreement speaks for itself and refers all issues of contract construction and interpretation to the Court.

**UPS'S REPLY**: No reply is necessary.

6.      Both Paragraph 8 of the Guard Services Agreement and the Rider require Adelis to name UPS as an additional insured in all policies except workers' compensation. (McLaughlin Dec., Exhibit C, at ¶ 8 and Rider.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Agreement speaks for itself and refers all issues of contract construction and interpretation to the Court.

**UPS'S REPLY**: No reply is necessary.

7.      Lexington Insurance Company ("Lexington") issued Adelis a commercial general liability policy bearing policy number 43926334 and a policy term of January 18, 2009 through January 18, 2010 (the "Policy").  (McLaughlin Dec., Exhibit D.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

**UPS'S REPLY**: No reply is necessary.

8.      Lexington also issued an excess liability policy to Adelis, policy number 19883784 with a policy term of January 18, 2009 through January 18, 2010.  (McLaughlin Dec., Exhibit A, at ¶ 11.)

**LEXINGTON'S RESPONSE**: Lexington disputes this fact because Plaintiff has not introduced an excess policy into evidence, and this statement does not constitute a statement of material fact.

**UPS'S REPLY**: Lexington's response does not set forth any specific facts to dispute the

existence of the excess liability policy referred to in Paragraph 8.  *See* Local Rule 56.1(c)-(d).

9.      The Policy contains an additional insured endorsement (the "Additional Insured Endorsement"), which states, in relevant part:

> Section II - Who Is An Insured is amended to include as an additional insured: (1) a person or organization that is the owner of real property or personal property, or (2) a person or organization responsible for hiring [Adelis] as an independent contractor, provided that, all of the following conditions are met:
>
> 1.      [Adelis is] performing 'professional services' on behalf of the owner of the real property or personal property, or the person or organization responsible for hiring [Adelis] as an independent contractor, whichever is applicable;
>
> 2.      [Adelis has] agreed in a written contract or written agreement that such person or organization be added as an additional insured on [Adelis's] policy; and
>
> 3.      the written contract or written agreement is in effect during this policy period and executed prior to the 'occurrence' of the 'bodily injury' or 'property damage', prior to the 'wrongful act', or prior to the offense giving rise to the 'personal and advertising injury", whichever is applicable.
>
> However, such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' caused by [Adelis's] ongoing operations for the additional insured and only to the extent that such 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' is

caused by [Adelis's] negligence or the negligence of those performing operations on [Adelis's] behalf.

(McLaughlin Dec., Exhibit D.)

    **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues of contract construction and interpretation to the Court.

    **UPS'S REPLY**: No reply is necessary.

    10.    UPS qualifies as an additional insured under the Additional Insured Endorsement because (a) Adelis performed professional services on behalf of UPS; (b) Adelis agreed in the Guard Services Agreement that UPS would be added as an additional insured on the Policy; and (c) the Guard Services Agreement was in effect during the applicable policy period and was executed prior to the subject incident. (McLaughlin Dec., Exhibit D.)

    **LEXINGTON'S RESPONSE**: Lexington disputes this fact.

    **UPS'S REPLY**: Lexington's response does not set forth any basis to dispute the facts set forth in Paragraph 10. *See* Local Rule 56.1(c)-(d). Additionally, Lexington's response does not contain any citation to the record evidence as required by Local Rule 56.1(d).

    11.    The Policy provides that Lexington will pay those sums that Adelis "becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 1(a).)

    **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues of contract construction and interpretation to the Court.

    **UPS'S REPLY**: No reply is necessary.

    12.    While the Policy generally excludes contractual liability, it expressly covers liability arising out of "insured contracts" (the "Insured Contract Provision"). (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b).)

    **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues of contract construction and interpretation to the Court. In addition, Plaintiff does not seek insured contract coverage under the Lexington Policy and, therefore, the statement does not constitute a statement of material fact.

    **UPS'S REPLY**: Lexington's response does not contain any citation to the record evidence as required by Local Rule 56.1(d). Lexington's response ignores the second cause of

5

action in Plaintiff's Complaint, dated October 25, 2010 (the "Complaint"), which seeks declaratory relief regarding coverage under the Lexington Policy's insured contract provision. (McLaughlin Dec., Exhibit A, at ¶¶ 41-46.)

13.     The Policy defines "insured contract" as follows:

> [t]hat part of any other contract or agreement pertaining to [Adelis's] business (including an indemnification of a municipality in connection with work performed for a municipality) under which [Adelis] assume[s] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(McLaughlin Dec., Exhibit D, at Section V, ¶ 9(f).)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues of contract construction and interpretation to the Court.  In addition, Plaintiff does not seek insured contract coverage under the Lexington Policy and, therefore, the statement does not constitute a statement of material fact.

**UPS'S REPLY**: Lexington's response does not contain any citation to the record evidence as required by Local Rule 56.1(d).  Lexington's response ignores the second cause of action in the Complaint, which seeks declaratory relief regarding coverage under the Lexington Policy's insured contract provision.  (McLaughlin Dec., Exhibit A, at ¶¶ 41-46.)

14.     Reasonable attorneys' fees and necessary litigation expenses incurred by the party in its defense of the underlying action are included as damages under the Insured Contract Provision.  (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b).)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues of contract construction and interpretation to the Court.  In addition, Plaintiff does not seek insured contract coverage under the Lexington Policy and, therefore, the statement does not constitute a statement of material fact.

**UPS'S REPLY**: Lexington's response does not contain any citation to the record evidence as required by Local Rule 56.1(d).  Lexington's response ignores the second cause of

action in the Complaint, which seeks declaratory relief regarding coverage under the Lexington

Policy's insured contract provision.  (McLaughlin Dec., Exhibit A, at ¶¶ 41-46.)

     15.    The Guard Services Agreement is an "insured contract" under the Policy because it pertains to Adelis's business under which it assumes the tort liability of UPS to pay for bodily injury to a third person.  (McLaughlin Dec., Exhibit D, at Section I, Coverage A, ¶ 2(b); Section V, ¶ 9(f).)

     **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the Policy speaks for itself and refers all issues` of contract construction and interpretation to the Court.  In addition, Plaintiff does not seek insured contract coverage under the Lexington Policy and, therefore, the statement does not constitute a statement of material fact.

     **UPS'S REPLY**: Lexington's response does not contain any citation to the record

evidence as required by Local Rule 56.1(d).  Lexington's response ignores the second cause of

action in the Complaint, which seeks declaratory relief regarding coverage under the Lexington

Policy's insured contract provision.  (McLaughlin Dec., Exhibit A, at ¶¶ 41-46.)

     16.    On January 28, 2009, Marilyn Chase ("Chase") was an Adelis employee who worked at the Premises as a security guard manager.  (McLaughlin Dec., Exhibit A, at ¶ 19.)

     **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

     **UPS'S REPLY**: No reply is necessary.

     17.    Chase alleges that while working at the Premises, she was struck by a tug car that

was owned and operated by UPS and its employees (the "Incident") and sustained personal

injuries.  (McLaughlin Dec., Exhibit G, at ¶ 9.)

     **LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that Chase was struck by a UPS tow car, not the tug car.

     **UPS'S REPLY**: No reply is necessary.

     18.    On November 18, 2009, Liberty Mutual Insurance Company ("Liberty"), acting on behalf of UPS, (a) informed Adelis that UPS had been placed on notice of the Incident involving Adelis employee Chase; (b) referred to Adelis's defense and indemnification obligations under the Guard Services Agreement; (c) tendered UPS's defense against Chase's claims to Adelis and requested full indemnification; (d) requested that the tender be turned over to Adelis's insurance carrier; and (e) advised that it will be seeking reimbursement of its

expenses to date and for all times going forward until Adelis assumes UPS's defense and indemnification.  (McLaughlin Dec., Exhibit E.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the letter speaks for itself.

**UPS'S REPLY**: No reply is necessary.

19.    On December 3, 2009, Lexington (a) acknowledged Liberty's November 18, 2009 letter; (b) acknowledged that the Incident occurred while Chase was working as a security guard within the scope of her employment with Adelis; (c) denied UPS's tender request because it concluded that the Incident was the direct result of UPS's sole negligence; and (d) refused to reimburse Liberty for any expenses associated with the Chase matter.  (McLaughlin Dec., Exhibit F.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the letter speaks for itself.

**UPS'S REPLY**: No reply is necessary.

20.    On March 24, 2010, Chase commenced *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action") against UPS seeking recovery for her alleged personal injuries resulting from the Incident.  (McLaughlin Dec., Exhibit G, at ¶ 9.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that the complaint in the underlying Chase action speaks for itself.

**UPS'S REPLY**: No reply is necessary.

21.    On May 18, 2010, UPS answered Chase's Complaint and alleged, *inter alia*, the following affirmative defenses: (a) Chase's alleged injuries were caused in whole or in part by her contributory negligence and/or culpable conduct; and (b) Chase's acts and/or omissions were the sole proximate cause of her alleged injuries.  (McLaughlin Dec., Exhibit H, at ¶¶ 8, 16.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact, but states that UPS' answer to the complaint in the underlying Chase action speaks for itself.

**UPS'S REPLY**: No reply is necessary.

22.    On February 8, 2012, Chase was deposed.  (McLaughlin Dec., Exhibit I.)

**LEXINGTON'S RESPONSE**: Lexington does not dispute this fact.

**UPS'S REPLY**: No reply is necessary.

23.     Chase testified that she (a) was familiar with the tug's operation and use at the Premises; (b) trained others regarding tugs; (c) saw the tug approaching her; (d) saw the tug entire time before it hit her; (e) took no action to avoid being hit; and (f) remained where she was because she felt she had the right of way.  (McLaughlin Dec., Exhibit I, at 36:9-13; 37:22-38:10; 50:6-17; 51:5-10; 50:23-51:4.)

**LEXINGTON'S RESPONSE**:   Lexington disputes UPS' recitation of Chase's deposition testimony, which speaks for itself.

**UPS'S REPLY**: No reply is necessary.

24.     On June 20, 2012, UPS's counsel in the Underlying Action requested that Lexington revisit its denial of coverage under the Policy, accept the tender of defense and agree to indemnify UPS pursuant to the terms and conditions of the Guard Services Agreement. (McLaughlin Dec., Exhibit J.)

**LEXINGTON'S RESPONSE**:  Lexington does not dispute this fact, but states that the letter speaks for itself.

**UPS'S REPLY**: No reply is necessary.

25.     Lexington never responded to the June 20, 2012 request.  (McLaughlin Dec., Exhibit A, at ¶ 32.)

**LEXINGTON'S RESPONSE**:  Lexington does not dispute this fact.

**UPS'S REPLY**: No reply is necessary.

### UPS'S COUNTERSTATEMENT TO LEXINGTON'S STATEMENT OF ADDITIONAL MATERIAL FACTS

26.     In discovery in this matter, UPS produced a copy of Liberty Mutual Insurance Company ("Liberty Mutual") Commercial General Liability Policy No. TB1-C21-004175-289 (the "Liberty Policy"), issued to UPS for the policy period from January 1, 2009 to January 1, 2010.  (Declaration of J. Gregory Lahr ("Lahr Decl.") dated July 23, 2013, Exhibit B.)

**UPS'S RESPONSE**: UPS does not dispute this fact.

27.     Liberty Mutual is providing a defense for UPS under the Liberty Policy.

**UPS'S RESPONSE**: Paragraph 27 does not contain any citation to the record evidence as required by Local Rule 56.1(d).  Paragraph 27 is irrelevant to, and has no bearing on, the motion for partial summary judgment and should not be considered by the Court in connection

therewith.  Fed. R. Evid. 402.  This alleged fact is not material as it will not "affect the outcome of the suit under governing law."  *Kinsella v. Rumsfeld*, 320 F.3d 309, 311 (2d Cir. 2003), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

28.     The Lexington's additional insured endorsement provides as follows:

The coverage provided by this endorsement to the additional insured shall be excess over any other insurance available to the additional insured covering liability for damages arising out of the premises or operations for which such additional insured has been added pursuant to this endorsement.  Notwithstanding the prior sentence of this paragraph B., the coverage provided to the additional insured under this endorsement shall be primary if the contract or written agreement between you and the additional insured requires that this coverage be primary.

**UPS'S RESPONSE**: UPS does not dispute this fact, but states that Lexington's Policy speaks for itself and refers all issues of contract construction and interpretation to the Court.

29.     Chase testified that she was trained to stay on the yellow lines in the UPS building, and that the lines indicate where employees should walk and stop.  (Lahr. Decl., Exhibit C, at 36-37).

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Chase's deposition testimony, which speaks for itself.

30.     On the night of the accident, Chase was walking on the yellow line inside the building when she saw a UPS driver coming with a tug car pulling several tow cars.  (Lahr Decl., Exhibit C, at 43-44.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Chase's deposition testimony, which speaks for itself.

31.     While Chase waited on the yellow line, the UPS driver made a U-turn, and one of the tow cars struck Chase from behind her calf.  (Lahr Decl., Exhibit C, at 44.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Chase's deposition testimony, which speaks for itself.

32.     Chase testified that she was facing the tow car, and did not get out of the way because she was not expecting the driver to make a U-turn, and she was standing on the yellow line. (Lahr Decl., Exhibit C, at 50-51.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Chase's deposition

testimony, which speaks for itself.

33.     Martial Pamphile was employed by UPS as an unloader on the date of the accident. (Lahr Decl., Exhibit D, at 8.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Pamphile's deposition testimony, which speaks for itself.

34.     Pamphile testified that he saw Chase and stopped the tug car, and then Chase waved him on to keep going. (Lahr Decl., Exhibit D, at 13.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Pamphile's deposition testimony, which speaks for itself.

35.     Pamphile further testified that Chase was on the yellow line and he was making a U-turn when one of the tow cars fishtailed, striking Chase. (Lahr Decl., Exhibit D, at 13-14.)

**UPS'S RESPONSE**: UPS disputes Lexington's recitation of Pamphile's deposition testimony, which speaks for itself.

## UPS'S STATEMENT OF ADDITIONAL MATERIAL FACTS

36.     The Liberty Policy's "other insurance" clause provides that it is excess over:

> [a]ny other primary insurance available to [UPS] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which [UPS has] been added as an additional insured by attachment of an endorsement.

(Lahr Decl., Exhibit B, at UPS000084.)

37.     UPS's deductible under the Liberty Policy matches the limit of the Liberty Policy.

(Lahr Decl., Exhibit B, at UPS000002; UPS00038.)

38.     Pursuant to the Liberty Policy, UPS is responsible for all supplementary payments

because of all bodily injury under Coverage A Bodily Injury and Property Damage Liability of

the Liberty Policy. (Lahr Decl., Exhibit B, at UPS00038.)

39.     Pursuant to the Liberty Policy, supplementary payments include all expenses incurred by Liberty with respect to any suit against UPS that Liberty defends. (Lahr Decl., Exhibit B, at UPS00081.)

Dated: White Plains, New York
       July 30, 2013

ANSA ASSUNCAO, LLP
*Attorneys for Plaintiff*


By: s/ Stephen P. McLaughlin
    Stephen P. McLaughlin (SM- 4136)
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260
stephen.mclaughlin@ansalaw.com

TO:    J. Gregory Lahr, Esq.
       SEDGWICK LLP
       225 Liberty Street, 28th Floor
       New York, New York 10281
       (212) 422-0202
       *Attorneys for Defendant*