UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

UNITED PARCEL SERVICE, INC.,                      :
                                                  :     Civil Action No.
                               Plaintiff,         :     1:12-cv-07961-SAS
                                                  :
              -against-                           :
                                                  :
LEXINGTON INSURANCE COMPANY,                      :
                                                  :
                               Defendant.         :
----------------------------------------------------------------x


### DEFENDANT LEXINGTON INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT


SEDGWICK LLP
225 Liberty Street, 28th floor
New York, New York 10281
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

    A.    The Guard Services Agreement..........................................................2

    B.    The Lexington Policy ..........................................................................2

    C.    UPS's Primary Policy..........................................................................3

    D.    The Chase Accident.............................................................................4

LEGAL ARGUMENT .....................................................................................................6

    A.    Lexington Does Not Owe Coverage to UPS as an Additional Insured ......................6

        1.    *The Evidence Does Not Support a Finding That Chase Was Negligent* ........................6

        2.    *Alternatively, UPS' Request for a Ruling on the Duty to Defend is Premature* ........................9

    B.    The Lexington Policy Provides Excess Coverage.....................................10

    C.    Alternatively, the Lexington and Liberty Policies are Co-Insurance .........................11

    D.    UPS Has Not Sufficiently Supported It's Request for Reimbursement .....................12

CONCLUSION ...............................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

<u>83 Kajima Construction Services, Inc. v. Cati, Inc.</u>,
    755 N.Y.S.2d 375 (1st Dep't 2003)........................................................................9, 10

<u>Bennett v. Cruz</u>,
    562 N.Y.S.2d 638 (1st Dep't 1990)........................................................................7, 8

<u>Bhatia v. Thermal Tech Doors, Inc.</u>,
    No. 000586/2007, 2008 WL 8776693 (Nassau County June 18, 2008)......................8

<u>Bovis Lend Lease LMB, Inc. v. Great American Ins. Co.</u>,
    855 N.Y.S.2d 459 (1st Dep't 2008)........................................................................10

<u>Briarwoods Farm, Inc. v. Central Mut. Ins. Co.</u>,
    866 N.Y.S.2d 847 (Orange County 2008)................................................................12

<u>Chase v. Wilkins</u>,
    173 N.Y.S.2d 297 (3d Dep't 1958) ........................................................................8

<u>Enstrom v. Neumoegen</u>,
    126 N.Y.S. 660 (App. Term 1911) ........................................................................8

<u>Hernandez v. Brooklyn & Queens Transit Corp.</u>,
    284 N.Y. 535 (N.Y. 1940)........................................................................7

<u>Holt v. N.Y. City Transit Auth.</u>,
    542 N.Y.S.2d 250 (2d Dep't 1989) ........................................................................8

<u>Jefferson Ins. Co. v. Travelers Indem. Co.</u>,
    681 N.Y.S.2d 208 (N.Y. 1998)........................................................................11, 12

<u>Landpen Co., L.P. v. The Maryland Casualty Co.</u>,
    No. 03 Civ. 3624, 2005 WL 356809 (S.D.N.Y. Feb. 15, 2005)................................10

<u>Luzzi v. Charles E. Haff Co.</u>,
    96 N.Y.S 456 (App. Term 1906)........................................................................7

<u>Marx v. United States</u>,
    132 F. Supp. 626 (E.D.N.Y. 1955) ........................................................................8

<u>National Fire Ins. Co. v. Harleysville Ins. Co.</u>,
    No. 601631/2009, 2011 WL 3898089 (N.Y. County Aug. 21, 2011)......................12

<u>Pecker Iron Works v. Travelers Ins. Co.</u>,
    756 N.Y.S.2d 822 ........................................................................10

<u>Salles v. Manhattan and Bronx Surface Transit Operating Auth.</u>,
   674 N.Y.S.2d 8 (1st Dep't 1998)...........................................................................8

<u>Schmidt v. S.M. Flickinger Co., Inc.</u>,
   452 N.Y.S.2d 767 (3d Dep't 1982) ...............................................................7

<u>Spoor-Lasher Co., Inc. v. Aetna Cas. and Surety Co.</u>,
   386 N.Y.S.2d 221 (N.Y. 1976)......................................................................6

<u>State Farm Fire and Cas. Co. v. LiMauro</u>,
   492 N.Y.S.2d 534 (N.Y. 1985)....................................................................11

<u>Sylvia v. Eyth</u>,
   144 Misc. 316 (Westchester County 1932) ...................................................7

<u>Wolff v. United States</u>,
   214 F. Supp. 362 (S.D.N.Y. 1963) ...............................................................7

iii

Defendant Lexington Insurance Company ("Lexington"), by and through its attorneys, Sedgwick LLP, hereby submits its memorandum of law in opposition to the motion for partial summary judgment filed by Plaintiff, United Parcel Service, Inc. ("UPS").

## PRELIMINARY STATEMENT

UPS's motion seeks a premature ruling on whether Lexington has a duty to defend UPS as a purported additional insured under Lexington Commercial General Liability Policy No. 43926334 (the "Lexington Policy"), issued to its named insured, Adelis International Security, Inc. ("Adelis"). Adelis, a security company, had entered into a Guard Services Agreement ("GSA") with UPS to furnish security personnel at various locations, and which required Adelis to name UPS as an additional insured on Adelis' general liability policies. While working at a UPS facility pursuant to the GSA, an Adelis employee, Marilyn Chase, was struck by a UPS vehicle through no fault of her own. Chase sued UPS for negligence, and UPS has sought coverage under the Lexington Policy as an additional insured.

The Lexington Policy's additional insured endorsement provides coverage for UPS, but only with respect to liability for bodily injury caused by Adelis' ongoing operations for UPS, and only to the extent that the bodily injury was caused by Adelis' negligence or the negligence of those performing operations for Adelis.

Thus, for UPS to be covered under the Lexington Policy, Chase's bodily injury must have been caused by Adelis or Chase, which is not what is alleged in Chase's complaint, and is not what the evidence shows in the underlying action. As such, coverage is not triggered under the endorsement.

Moreover, the additional insured endorsement provides that coverage afforded under the endorsement is excess coverage over any other insurance available to UPS, unless the GSA requires that the Lexington Policy be primary coverage. The GSA, however, does not contain

this requirement, and even if coverage is available under the Lexington Policy (which it is not) it is excess of other coverage available to UPS through its own liability carrier.

As explained more fully below, the Lexington Policy does not provide coverage to UPS, and even if it did coverage is not triggered until UPS's liability policy is exhausted. Accordingly, Lexington requests that UPS's motion for partial summary judgment be denied in its entirety.

## STATEMENT OF FACTS

The pertinent facts for this motion are recited in UPS's moving brief, and for judicial economy Lexington recites only certain additional facts that are not set forth in UPS's brief.

**A.     The Guard Services Agreement**

UPS recites the relevant portion of the GSA on page 4 of its brief, which quotes language from paragraph 8 of the GSA.  Notably, nowhere in paragraph 8, or in the Rider to the GSA, does it provide that Adelis's comprehensive general liability insurance (*i.e.*, the Lexington Policy) must be primary insurance for UPS.

**B.     The Lexington Policy**

On page 5 of its brief, UPS recites the pertinent portion of the Additional Insured Endorsement in the Lexington Policy.  However, UPS does not provide the following significant language regarding the priority of coverage:

> B.     The coverage provided by this endorsement to the additional insured shall be excess over any other insurance available to the additional insured covering liability for damages arising out of the premises or operations for which such additional insured has been added pursuant to this endorsement.  Notwithstanding the prior sentence of this paragraph B., the coverage provided to the additional insured under this endorsement shall be primary if the written contract or written agreement between you and the additional insured requires that this coverage be primary.

(See Declaration of Stephen P. McLaughlin ("McLaughlin Decl.") dated June 25, 2013, Exhibit D.)

Again, there is nothing in the GSA requiring the Lexington Policy to be primary insurance and, therefore, even if coverage is available to UPS under the Lexington Policy it is only available on an excess basis.

## C.     UPS's Primary Policy

In discovery in this matter, UPS has produced a copy of Liberty Mutual Insurance Company ("Liberty Mutual") Commercial General Liability Policy No. TB1-C21-004175-289 (the "Liberty Policy"), issued to UPS for the policy period from January 1, 2009 to January 1, 2010.  (See Declaration of J. Gregory Lahr ("Lahr Decl.") dated July 23, 2013, Exhibits A and B.)  Lexington also requested copies of any communications between UPS and Liberty, and UPS and its broker, regarding coverage for the Chase Action, but UPS's counsel advised that they will not produce those communications.[1]  Nevertheless, the Liberty Policy indicates that it provides coverage to UPS, and upon information and belief Liberty Mutual already is providing a defense for UPS under the Liberty Policy.

The Insuring Agreement for the Liberty Policy appears on Bates page no. UPS000074, and in pertinent part provides that Liberty Mutual will have the right and duty to defend UPS against any suit seeking damages because of bodily injury.  (Lahr Decl., Exhibit B.)  Chase's bodily injury occurred during the Liberty policy period, and there do not appear to be any applicable exclusions to coverage, or any other grounds on which Liberty Mutual could have denied coverage to UPS.  The Liberty Policy contains a $REDACTED deductible pursuant to the "Deductible – Damages" Endorsement appearing on Bates page no. UPS000038, but this deductible does not apply to the duty to defend.  (Lahr Decl., Exhibit B.)  In fact, the Endorsement specifies that UPS is responsible for all damages up to the Deductible Amount,

---

[1] This discovery dispute is outlined in a letter to the Court dated July 23, 2013.  If UPS had produced the requested communications, which are discoverable, it could be confirmed whether Liberty Mutual is providing a defense to UPS.

NY/1270255v1

including amounts paid in settlement of a claim or suit, but does not specify that UPS is responsible for defense costs.

The Liberty Policy also contains an Other Insurance condition at Bates page no. UPS000084.  (Lahr Decl., Exhibit B.)  This condition indicates that the Liberty Policy provides primary coverage to UPS, unless there is other primary insurance available to UPS as a result of being added as an additional insured by attachment of an endorsement.  Here, even if the Lexington Policy did provide coverage to UPS, it could only be on an excess basis because the GSA agreement does not provide that the Lexington Policy is supposed to be primary coverage. Thus, when comparing the Liberty Policy and the Lexington Policy, the Liberty Policy is the primary policy with a duty to defend, and the Lexington Policy is an excess policy that is triggered only after the Liberty Policy is exhausted.

**D.   The Chase Accident**

UPS provides portions of Chase's deposition testimony and asserts that the testimony "demonstrates that she bears at least partial responsibility for the Incident and her alleged injuries."  (Pl.'s Br., at 8.)  Lexington disagrees with this assertion, and for support attaches Chase's complete deposition transcript, as well as the transcript of the driver of the UPS tug car that struck Chase.  (Lahr Decl., Exhibits C and D.)

Chase testified that in the UPS building there are "lines like in the street that tell you where you walk, when you could walk, and stop when you have to stop."  (Lahr Decl., Exhibit C, at 36-37.)  She was trained by her manager to "[a]lways stay on the yellow lines."  (Lahr Decl., Exhibit C, at 36.)  The purpose of the yellow lines is for the employees' protection.  When vehicles come into the building, the pedestrian should stop and stay on the yellow line.  (Lahr Decl., Exhibit C, at 37.)

4

On the night of the accident, Chase was the security supervisor and she was going to check on another security guard after taking her break. (Lahr Decl., Exhibit C, at 43.) She was walking on the yellow line inside the building when she saw a UPS driver coming with a "tow car." (Lahr Decl., Exhibit C, at 43-44.) The tow cars are what carry packages, and are pulled by a tug. (Lahr Decl., Exhibit C, at 49.) While she waited on the yellow line, the UPS driver made a U-turn, and one of the tow cars struck Chase from behind her calf. (Lahr Decl., Exhibit C, at 44.) Chase testified that she was facing the tow car, and did not get out of the way because she was not expecting the driver to make a U-turn, and she was standing on the yellow line. (Lahr Decl., Exhibit C, at 50-51.) She further testified that she does not know whether she tried to jump in the air to try to avoid having the tow car strike her. (Lahr Decl., Exhibit C, at 51.) After she was struck, she blacked out and awoke underneath a trailer. (Lahr Decl., Exhibit C, at 51.)

Chase's testimony about the accident is identical to the driver's testimony. Martial Pamphile was employed by UPS as an unloader on the date of the accident. (Lahr Decl., Exhibit D, at 8.) His job involved taking boxes out of a truck and placing them on a moving belt. (Lahr Decl., Exhibit D, at 8.) Pamphile was certified to drive a tug car based on taking classes and watching a video. (Lahr Decl., Exhibit D, at 10.) He testified that he saw Chase and stopped the tug, and then Chase waved him on to keep going. (Lahr Decl., Exhibit D, at 13.) He further testified that Chase was on the yellow line and he was making a U-turn when one of the tow cars fishtailed, striking Chase. (Lahr Decl., Exhibit D, at 13-14.) When he began to make the U-turn he lost sight of Chase, but testified that Chase was standing still. (Lahr Decl., Exhibit D, at 18-19.) When the tow car fishtailed, he heard skidding causing him to turn around, but after the tow car already had struck Chase. (Lahr Decl., Exhibit D, at 20.) The tow car took Chase off her feet and she landed underneath a trailer. (Lahr Decl., Exhibit D, at 21.)

## LEGAL ARGUMENT

**A.**    **Lexington Does Not Owe Coverage to UPS as an Additional Insured**

   *1.*    *The Evidence Does Not Support a Finding That Chase Was Negligent*

Lexington acknowledges the New York case law set forth in UPS' brief indicating that an insurer does not have a duty to defend where there is no possible factual or legal basis on which the insurer might eventually be required to indemnify the insured.  See Spoor-Lasher Co., Inc. v. Aetna Cas. and Surety Co., 386 N.Y.S.2d 221, 222 (N.Y. 1976).  This is such a case.

The undisputed testimony from the only witnesses to the accident – Chase and Pamphile – is consistent and does not present an issue of fact regarding how the accident occurred.  The testimony confirms that Chase was standing on the yellow line in the UPS building when she was struck by a fishtailing tow car as the UPS driver attempted to make a U-turn.  In other words, Chase doing what she was trained to do by standing on the yellow line, and no action on her part caused her injuries.  Thus, Chase's bodily injury was not caused by Adelis' negligence, or Chase's negligence.

UPS, however, contends that Chase caused her injuries through her own negligence because she did not protect herself from injury, and disregarded a hazard.  (Pl's Br., at 14.)  UPS further claims that Chase remained in a position of danger, and breached a duty to avoid being hit.  (Pl.'s Br., at 14-15, 16.)

The majority of cases cited by UPS for the proposition that Chase was contributorily negligent involve automobile accidents.  These cases are not relevant because they concern motor vehicle laws and involve situations where there was an issue of fact as to who was at fault for causing the automobile accident.

The few cases cited by UPS involving pedestrians do not support the proposition that Chase was contributorily negligent because those cases contain clear facts demonstrating

negligence by the plaintiff, and otherwise involve issues of fact regarding what caused the pedestrian's injuries.  In Hernandez v. Brooklyn & Queens Transit Corp., 284 N.Y. 535 (N.Y. 1940), the plaintiff attempted to pass ahead of a moving trolley car and was struck by it, thereby exposing himself to the peril.  In Sylvia v. Eyth, 144 Misc. 316 (Westchester County 1932), the plaintiff was walking along the roadway where he was not expected to be, for a distance of 200 feet, without looking back, during conditions that were dark, misty, and foggy.  The case of Wolff v. United States, 214 F. Supp. 362 (S.D.N.Y. 1963), involved a plaintiff who "obviously was in a state of senility so advanced as to seriously impair his memory. His testimony as to what occurred on January 11, 1961 was so incoherent as to make it difficult for the court to determine what his version of the facts was. . . .  There is thus no clear testimony from anyone as to the actual impact, which leads defendant to suggest that plaintiff was not struck by the truck at all, but that he slipped or fell by himself."  Id. at 362-63.  In Schmidt v. S.M. Flickinger Co., Inc., 452 N.Y.S.2d 767 (3d Dep't 1982), there was an issue of fact regarding whether the plaintiff pedestrian walked into an intersection that already had traffic moving through it.  The only other pedestrian case relied on by UPS is from 1906, Luzzi v. Charles E. Haff Co., 96 N.Y.S 456 (App. Term 1906), and contains a mere three sentences explaining the basis for its ruling, and a vigorous and descriptive dissent.

None of the above cases are persuasive because here there is no dispute of fact as to what caused the accident.  Additionally, Chase did not expose herself to a peril, and had no opportunity to avoid being struck.  Rather, she was standing where she was trained to be, and could not have expected the tow car to fishtail as Pamphile negligently made a U-turn.  As such, she cannot be found contributorily negligent as a matter of law.

In Bennett v. Cruz, 562 N.Y.S.2d 638 (1st Dep't 1990), the plaintiff pedestrian was determined by the court not to be contributorily negligent.  It was undisputed that the plaintiff

looked in the direction of oncoming traffic before stepping off the curb, and a truck struck her while backing up, coming from a direction from which no traffic would be expected.  Id. at 639.

Similarly, in Chase v. Wilkins, 173 N.Y.S.2d 297 (3d Dep't 1958), the appellate court reversed the trial court's entry of an order upon a verdict of no cause of action because the weight of the evidence demonstrated that the plaintiff pedestrian was not contributorily negligent by not anticipating that the defendant driver was about to make a left-hand turn.

In Bhatia v. Thermal Tech Doors, Inc., No. 000586/2007, 2008 WL 8776693 (Nassau County June 18, 2008), the court granted the plaintiff's motion for summary judgment on the issue of liability, and held that the plaintiff was not comparatively negligent because he was lawfully in or adjacent to the crosswalk and took steps to observe the vehicles in the intersection before stepping off the curb.  See also Salles v. Manhattan and Bronx Surface Transit Operating Auth., 674 N.Y.S.2d 8 (1st Dep't 1998) (pedestrian in crossing walk when bus driver commenced a turn onto the avenue at a later-than-usual point in the intersection); Holt v. N.Y. City Transit Auth., 542 N.Y.S.2d 250 (2d Dep't 1989) (plaintiff pedestrian not contributorily negligent as a matter of law); Marx v. United States, 132 F. Supp. 626 (E.D.N.Y. 1955) (plaintiff pedestrian not guilty of contributory negligence); Enstrom v. Neumoegen, 126 N.Y.S. 660 (App. Term 1911) (plaintiff pedestrian not guilty of contributory negligence).

Here, there is no dispute that Chase was properly standing on the yellow line as trained, and even ceded the right of way to Pamphile as he was driving the tug car.  There also is no dispute that Pamphile lost control of one of the tow cars as it fishtailed while he was making a U-turn, and the tow car struck Chase knocking her off her feet.  UPS has latched on to Chase's testimony indicating that she believed she had the "right of way" when she was standing on the yellow line, insinuating that this belief is what caused her injuries.  The entirety of Chase's testimony reveals that her belief that she had the "right of way" meant that she thought she was

standing in a safe spot, where she was trained to stand when a vehicle passed.   UPS further claims that Chase somehow should have avoided being struck by the fishtailing tow car, but does not explain how this could have been possible.   It defies logic that Chase knowingly would refuse to move in the face of a tow car about to strike her, and the only possible explanation is that the fishtailing tow car was unexpected, and resulted from Pamphile's negligent U-turn.

As such, there are no disputed facts for a jury, and no evidence to support contributory negligence by Chase.   Consequently, the bodily injury at issue arose from UPS' sole negligence, and the additional insured endorsement is not triggered.

     **2.**     ***Alternatively, UPS' Request for a Ruling on the Duty to Defend is Premature***

Because it appears that UPS is being provided a defense by Liberty Mutual, it is premature for UPS to seek coverage under the Lexington Policy until the underlying Chase action is concluded.   This was the precise holding in <u>83 Kajima Construction Services, Inc. v. Cati, Inc.</u>, 755 N.Y.S.2d 375 (1st Dep't 2003).   In that case, the trial court ruled that it could not be determined whether the plaintiff was entitled to primary coverage as an additional insured under the defendant's policy issued by Investors Insurance Company until a determination as to liability was made in the underlying action.   The additional insured endorsement in the Investors policy afforded additional insured coverage that was primary, but only if the underlying claim was determined to be solely as a result of the negligence or responsibility of Investor's named insured.   This applied to defense expenses as well as indemnity.   Significantly, in affirming the trial court's denial of the plaintiff's motion for immediate coverage under the Investors policy, the appellate court stated:

> As for defense expenses, while it is well established that the duty to defend is greater than the duty to indemnify . . . , that rule is not unyielding but rather one of expedience.   Here, KCS is already being afforded a defense by Tokio [its primary insurer] and there is no practical need for Investors to contribute to that effort, given that the issue of coverage with respect to indemnity is necessarily deferred pending a determination of the underlying action.   That determination

will also resolve the issue of primary responsibility for defense expenses. Moreover, there is an unseemly aspect in having Investors, at this juncture, underwrite the defense expenses of KCS, whose attorneys will no doubt endeavor to cast Investors' named insured as the party solely responsible in the underlying action.

Id. at 377.

UPS' instant motion should have the same result.  That is, until there is a determination in the underlying Chase action as to which parties were negligent, UPS' motion should be denied, and coverage should not be granted under the Lexington Policy.[2]

**B.    The Lexington Policy Provides Excess Coverage**

It is undisputed that the GSA does not require the Lexington Policy to provide primary insurance for UPS.  Accordingly, the Liberty Policy affords primary coverage, and Lexington provides excess coverage.

The additional insured endorsement in the Lexington Policy expressly provides that the coverage afforded by the endorsement is excess coverage over other insurance available to the additional insured, unless the operative contract requires the Lexington Policy to be primary insurance.  In Bovis Lend Lease LMB, Inc. v. Great American Ins. Co., 855 N.Y.S.2d 459 (1st Dep't 2008), the court advised that a subcontract agreement between the named insured and the additional insured is determinative of the priority of coverage afforded to the additional insured if the policy providing additional insured coverage references the requirements of the subcontract.  Id. at 464-65 (citing to Pecker Iron Works v. Travelers Ins. Co., 756 N.Y.S.2d 822, the court noted that the Court of Appeals looked to the subcontract because the insurance policy expressly provided that the terms of the subcontract would determine whether the additional insured coverage afforded was primary or excess).

---

[2] In Landpen Co., L.P. v. The Maryland Casualty Co., No. 03 Civ. 3624, 2005 WL 356809 (S.D.N.Y. Feb. 15, 2005), the court considered the holding in 83 Kajima, and distinguished it on grounds not applicable here.  In Landpen, coverage under the additional insured endorsement did not turn on the relative negligence of the named insured and the additional insured.  Here, however, coverage may be afforded to UPS only if Adelis or someone performing operations on its behalf was negligent.

That is what Lexington contends here.  Because the Lexington Policy expressly references a written contract or agreement between Adelis and an additional insured to determine whether the Lexington Policy is primary or excess, it is appropriate to review the terms of the GSA to determine whether it requires the Lexington Policy to be primary coverage.  The GSA does not contain that requirement and, therefore, the Lexington Policy is excess coverage over the Liberty Policy, and Lexington does not have an immediate defense obligation.

**C.**    **Alternatively, the Lexington and Liberty Policies are Co-Insurance**

If the Court determines that the Lexington Policy provides primary coverage, then at a minimum Lexington and Liberty Mutual are co-insurers of UPS, and the Lexington Policy shares equally with the Liberty Policy with respect to the duty to defend.

New York courts consistently hold that, where two or more insurance policies are triggered, the policies' "other insurance" clauses dictate the priority of coverage.  See Jefferson Ins. Co. v. Travelers Indem. Co., 681 N.Y.S.2d 208 (N.Y. 1998); State Farm Fire and Cas. Co. v. LiMauro, 492 N.Y.S.2d 534 (N.Y. 1985).  Thus, the "other insurance" provisions of the Liberty and Lexington policies should be examined.

As explained above, the additional insured endorsement of the Lexington Policy contains the operative "other insurance" clause pertaining to additional insureds.  The Lexington Policy also contains an Other Insurance condition at page 19 of the Policy, which provides that, if the Policy is primary and there is other insurance that is primary, then the Policy will contribute by equal shares.  The Liberty Policy contains an identical "Other Insurance" condition at Bates page no. UPS000084-85, thereby requiring both the Lexington Policy and the Liberty Policy to contribute equally to UPS' defense.  This was the result in Jefferson Ins. Co. v. Travelers Indem. Co., where the court determined that two primary policies – one providing additional insured coverage and another providing named insured coverage – shared equally because of the

wording of the respective other insurance conditions.  681 N.Y.S.2d at 213.  See also National Fire Ins. Co. v. Harleysville Ins. Co., No. 601631/2009, 2011 WL 3898089 (N.Y. County Aug. 21, 2011) (holding that policy providing additional insured coverage and policy providing named insured coverage must share equally in the defense); Briarwoods Farm, Inc. v. Central Mut. Ins. Co., 866 N.Y.S.2d 847 (Orange County 2008) (same).

Additionally, the Liberty Policy's reference to being excess insurance is not triggered in this instance because the Lexington Policy also indicates that it is excess insurance in the additional insured endorsement and, therefore, these provisions cancel each other out.

**D.** **UPS Has Not Sufficiently Supported It's Request for Reimbursement**

Although UPS requests in Section III of its brief reimbursement of defense costs plus interest, it has not put the defense invoices in evidence and, therefore, an order requiring Lexington to reimburse UPS for a specific amount cannot be made.  Moreover, UPS claims that it is entitled to interest from the date the invoices were paid.  This assumes, wrongly, that Lexington owed a duty defend when those expenses were actually incurred.  In the event the Court determines that Lexington owes a duty to defend UPS, the earliest date that duty could have arisen is when UPS provided Lexington with the Chase deposition transcript on June 20, 2012.  Prior to that date there was no indication that Chase could be contributorily negligent for her own injuries, as Chase's complaint only alleges negligence against UPS.  Lexington requests, in the alternative, that any order requiring reimbursement of defense costs to be such that only reasonable defense costs should be reimbursed, and only from the date when Lexington's duty to defend was triggered.

## **CONCLUSION**

For the foregoing reasons, Lexington respectfully requests that the Court issue an order (a) denying UPS' motion for partial summary judgment in its entirety or, alternatively (b) determining that the Lexington Policy only provides excess insurance or, alternatively (c) determining that the Lexington Policy and the Liberty Policy share equally in the defense of UPS, and any further relief that this Court deems reasonable and just.

Dated: New York, New York
      July 23, 2013

Respectfully submitted,

SEDGWICK LLP

_____/s/ J. Gregory Lahr_____
J. Gregory Lahr (JL9969)
Ryan C. Chapoteau (RC1986)
*Attorneys for Defendant*
*Lexington Insurance Company*
225 Liberty Street, 28th Floor
New York, New York  10281-1008
Telephone:  212.422.0202
Facsimile:  212.422.0925

To:  Stephen P. McLaughlin, Esq.
     Stefanie A. Bashar, Esq.
     Ansa Assuncao LLP
     707 Westchester Ave, Suite 309
     White Plains, New York 10604