UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

UNITED PARCEL SERVICE,

          Plaintiff,

   -against-

LEXINGTON INSURANCE GROUP,

          Defendant.

------------------------------------------------ X

**OPINION AND ORDER**

**12 Civ. 7961 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

United Parcel Service, Inc. ("UPS") brings this diversity action against Lexington Insurance Company ("Lexington") seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 that Lexington is obligated to defend and indemnify UPS in an underlying personal injury action (the "Underlying Action").[1] UPS also seeks damages for Lexington's alleged breach of contract in failing to provide a defense.

---

[1]   *See Chase v. United Parcel Serv., Inc.,* Index No. 7445/10 (Supreme Ct. Kings County filed Mar. 24, 2010).

Lexington previously moved to dismiss the complaint or, alternatively, to stay the litigation and compel UPS to arbitrate its claims against Lexington pursuant to the arbitration provision in the Lexington insurance policy. Lexington's motion was denied.[2]

UPS now moves for partial summary judgment in the form of an order declaring that Lexington owes UPS a duty to defend the Underlying Action, as well as damages in the form of attorneys' fees and litigation expenses incurred to date.  For the following reasons, UPS's motion is GRANTED.

## II.   BACKGROUND

### A.   The Guard Services Agreement

On May 1, 2007, UPS entered into a Guard Services Agreement ("GSA") with Adelis.[3]  The GSA provides that Adelis will furnish UPS with uniformed guards for the facility located at 643 West 43rd Street, New York, New York.[4]  The GSA requires Adelis to carry insurance coverage, including commercial general liability insurance, and provides that UPS shall be named as an

---

[2]    *See United Parcel Serv. v. Lexington Ins. Co.,* No. 12 Civ. 7961, 2013 WL 1897777 (S.D.N.Y. May 7, 2013).

[3]    *See* Plaintiff's Local Civil Rule 56.1(a) Statement of Undisputed Material Facts ("Pl. 56.1") ¶ 1.

[4]    *See id.*

additional insured on these policies.[5]  The GSA also requires Adelis to indemnify UPS against all claims, losses, damages, expenses or liabilities which UPS may incur by reason of any act or omission by any employee of Adelis, or any injury suffered by any employee of Adelis, including personal injury, except when arising out of the sole negligence of UPS.[6]  The GSA also provides that Adelis will assume and pay for UPS's defense in any lawsuit "arising from causes hereinabove set forth."[7]

### B.    The Lexington Insurance Policy

#### 1.    The Insured Contract Provision

The Policy provides that Lexington will pay any amount that Adelis "becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."[8]  While the Policy generally excludes contractual liability, it expressly covers liability arising out of "insured contracts" (the "Insured Contract Provision").[9]  The Policy defines "insured contract" as:

---

[5]      *See id.* ¶¶ 4–6.

[6]      *See id.* ¶¶ 2–3.

[7]      *Id.* ¶ 2.

[8]      *Id.* ¶ 11.

[9]      *Id.* ¶ 12.

> That part of any other contract or agreement pertaining to [Adelis's] business (including an indemnification of a municipality in connection with work performed for a municipality) under which [Adelis] assume[s] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[10]

Reasonable attorneys' fees and necessary litigation expenses incurred by the party in its defense of an underlying action are included as damages under the Insured Contract Provision.[11]

### 2.    The Additional Insured Endorsement

Pursuant to the terms of the GSA, Adelis obtained an insurance policy from Lexington (the "Policy").[12]  The Policy contains an Additional Insured Endorsement, which states, in part:

> Section II - Who Is An Insured is amended to include as an additional insured . . . a person or organization responsible for hiring [Adelis] as an independent contractor, provided that, all of the following conditions are met:

---

[10]    *Id.* ¶ 13.

[11]    *See id.* ¶ 14.

[12]    *See id.* ¶ 7.

4

1. [Adelis is] performing 'professional services' on behalf of . . . the person or organization responsible for hiring [Adelis] as an independent contractor[];

2. [Adelis has] agreed in a written contract or written agreement that such person or organization be added as an additional insured on [Adelis's] policy; and

3. the written contract or written agreement is in effect during this policy period and executed prior to the 'occurrence' of the 'bodily injury' or 'property damage', prior to the 'wrongful act', or prior to the offense giving rise to the 'personal and advertising injury", whichever is applicable.

However, such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' caused by [Adelis's] ongoing operations for the additional insured and only to the extent that such 'bodily injury', 'property damage', 'professional liability', or 'personal and advertising injury' is caused by [Adelis's] negligence or the negligence of those performing operations on [Adelis's] behalf.[13]

## C.    The Underlying Action

Marilyn Chase sued UPS on March 24, 2010, alleging that she was hit and injured by a tow car operated by a UPS employee while she was working as an Adelis security guard on the premises.[14]  UPS alleges that the incident was caused

---

[13]    *Id.* ¶ 9.

[14]    *See id.*  ¶¶ 16–17, 20.

in whole or in part by Chase's own negligence.[15]   The Policy was in effect on the day of the incident.[16]

On November 18, 2009, UPS's insurance carrier, Liberty Mutual Insurance ("Liberty"), tendered UPS's defense against Chase's claims to Adelis and its insurance carrier, Lexington, and requested complete indemnification.[17]   On December 3, 2009, Lexington denied Liberty's request for coverage because Lexington determined that the incident was the result of the sole negligence of the UPS employee who was operating the tug car.[18]   On June 20, 2012, UPS requested that Lexington revisit its denial of coverage.[19]   Lexington did not respond to the request.[20]   UPS filed the instant action against Lexington on October 25, 2012.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable

---

[15]      *See id.* ¶ 21.

[16]      *See id.* ¶¶ 7, 16.

[17]      *See id.* ¶ 18.

[18]      *See id.* ¶ 19.

[19]      *See id.* ¶ 24.

[20]      *See id.* ¶ 25.

inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[21]  "A genuine dispute exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

        "The moving party bears the burden of establishing the absence of any genuine issue of material fact."[23]  To defeat a motion for summary judgment, the non-moving party must show more than "some metaphysical doubt as to the material facts,"[24] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[25]

        In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

---

[21]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.,* 702 F.3d 685, 693 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[22]     *Finn v. New York State Office of Mental Health–Rockland Psychiatric Ctr.,* 489 Fed. App'x 513, 514 (2d Cir. 2012) (quotation marks omitted).

[23]     *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

[24]     *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).

[25]     *Robinson v. Allstate Ins. Co.,* 508 Fed. App'x 7, 9 (2d Cir. 2013) (quoting *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir. 1998)).

issues to be tried."[26]  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[27]

## IV.   APPLICABLE LAW

### A.    The Duty to Defend

An insurer's duty to defend is "exceedingly broad" — much broader than the duty to indemnify.[28]  The insurer must defend "whenever the four corners of the complaint suggest — or the insurer has actual knowledge of facts establishing — a reasonable possibility of coverage" under the policy.[29]  An insurer cannot

---

[26]     *Cuff ex rel. B.C. v. Valley Cent. School Dist.,* 677 F.3d 109, 119 (2d Cir. 2012) (quotation marks and citations omitted).

[27]     *Redd v. New York Div. of Parole,* 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[28]     *International Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co.,* 303 F.3d 419, 424 (2d Cir. 2002) (quoting *Continental Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y.2d 640, 648 (1993)).  *Accord Auto. Ins. Co. of Hartford v. Cook,* 7 N.Y.3d 131, 137 (2006).

[29]     *Maryland Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) (quoting *Continental,* 80 N.Y.2d at 648).  *Accord Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.,* 819 F. Supp. 2d 247, 256–57 (S.D.N.Y. 2011) (Scheindlin, J.) (noting that New York law permits consideration of facts extrinsic to the four corners of the complaint in determining a duty to defend); *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 67 (1991) (holding that "rather than mechanically applying only the 'four corners of the complaint' rule . . . the sounder approach is to require the insurer to provide a defense when it has actual knowledge of facts establishing a reasonable possibility of coverage").

ignore information supplied by the insured in assessing its duty to defend.[30]  An

insurer may avoid its duty to defend only if it establishes, as a matter of law, that

"there is no possible factual or legal basis on which [the insurer] might eventually

be obligated to indemnify [the insured] under any provision of the insurance

policy."[31]

## V.   DISCUSSION

### A.   Coverage Under the Lexington Policy

#### 1.   The Insured Contract Provision

UPS contends that there is a reasonable possibility that Lexington will

owe UPS indemnification pursuant to the Insured Contract Provision.[32]  Lexington

does not address this argument in its Memorandum of Law.  In its Counterstatement

---

[30]    *See Auriemma v. Biltmore Theatre, LLC,* 917 N.Y.S.2d 130, 139 (1st
Dep't 2011) (finding duty to defend where insurer had "actual notice of the
possibility of coverage from [insured's] answers to the complaints . . . and its
deposition testimony"); *Staten Island Molesi Soc. Club, Inc. v. Nautilus Ins. Co.,*
835 N.Y.S.2d 303, 305 (2d Dep't 2007) (insurer cannot ignore information
supplied by the insured in determining duty to defend); *Almar, Inc. v. Utica Mut.
Ins. Co.,* 721 N.Y.S.2d 96, 97 (2d Dep't 2001) (same).

[31]    *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (quotation
marks and citations omitted).  *Accord Maryland Cas. Co.*, 332 F.3d at 160; *State
Farm Fire & Cas. Co. v. Joseph M.,* 964 N.Y.S.2d 621, 622 (2d Dep't 2013).

[32]    *See* Memorandum of Law in Support of Plaintiff United Parcel
Service, Inc.'s Motion for Partial Summary Judgment ("Pl. Mem."), at 13–14.

Under Local Rule 56.1, Lexington states: "Plaintiff does not seek insured contract coverage under the Lexington Policy."[33]

The Policy provides that Lexington will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."[34]  The Policy excludes liability for bodily injury that Adelis has assumed by contract.[35]  However, the exclusion does not apply to "insured contracts,"[36] defined as "[t]hat part of any other contract or agreement pertaining to [Adelis's] business . . . under which [Adelis] assume[s] the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization,"[37] including "reasonable attorney fees and necessary litigation expenses" incurred in connection with defending such a claim.[38]

---

[33]    Defendant Lexington Insurance Company's Counterstatement Under Local Rule 56.1 in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def. 56.1") ¶ 12.

[34]    Lexington Insurance Policy ("Lexington Policy"), Ex. D to 6/25/13 Declaration of Stephen P. McLaughlin, counsel to plaintiff ("McLaughlin Decl.") Section I(A), ¶ 1(a).

[35]    *See id.* Section I(A), ¶ 2(b).

[36]    *Id.*

[37]    *Id.* Section V, ¶ 9.

[38]    *Id.* Section I(A), ¶ 2(b).

The GSA is an "insured contract" because it pertains to Adelis's business, and provides that Adelis will assume the tort liability of UPS for the bodily injury of third parties.[39]  Thus, the Policy covers UPS to the extent that the GSA legally obligates Adelis to pay for Chase's bodily injury.  The terms of the GSA require Adelis to indemnify UPS unless the accident was due to the sole negligence of UPS.[40]  Therefore, Lexington must indemnify UPS pursuant to the Insured Contract Provision unless the accident was the result of the sole negligence of UPS.

### 2.      The Additional Insured Endorsement

#### a.      UPS Is an Additional Insured

UPS is also covered by the Additional Insured Endorsement because Adelis performed professional services on behalf of UPS, Adelis agreed that UPS would be added as an additional insured on the Policy through the GSA, and the GSA was executed prior to Chase's injury and remained in effect during the policy period.[41]  Thus, Lexington "will pay those sums that [UPS] becomes legally

---

[39]     *See* Pl. 56.1 ¶¶ 2–3, 13.

[40]     *See id.* ¶¶ 2–3.

[41]     *See id.* ¶ 9 (Extending coverage to "a person or organization responsible for hiring [Adelis] as an independent contractor, provided that...: 1) [Adelis is] performing 'professional services' on behalf of . . . the person or organization . . .; 2) [Adelis has] agreed in a written contract or written agreement

obligated to pay as damages because of 'bodily injury,' . . and will have the right and duty to defend the insured against any 'suit' seeking those damages."[42]

However, the Policy covers UPS as an additional insured "only to the extent that such 'bodily injury'. . . is caused by [Adelis's] negligence or the negligence of those performing operations on [Adelis's] behalf."[43]  Thus, Lexington must indemnify UPS only *to the extent* that the injury was caused by Chase's negligence.

### b.    Lexington's Coverage Is Primary Not Excess

Lexington argues that its coverage of UPS pursuant to the Additional Ensured Endorsement is excess, while Liberty's coverage is primary.[44]  Because Liberty is already providing a defense as a primary insurer, Lexington argues,

---

that such person or organization be added as an additional insured on [Adelis's] policy; and 3) the written contract or written agreement is in effect during this policy period and executed prior to the 'occurrence' of the 'bodily injury'").

[42]    Lexington Policy Section I(A), ¶ 1(a).

[43]    Pl. 56.1 ¶ 9.

[44]    *See* Defendant Lexington Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp. Mem.") at 10–11.

Lexington's coverage is not triggered unless and until the Liberty Policy is exhausted.[45]

Lexington's Additional Ensured Endorsement states that coverage as an additional insured "shall be excess over any other insurance available" unless "the written contract or written agreement between you and the additional insured requires that this coverage be primary."[46]  Because the GSA does not explicitly state that Adelis must obtain *primary* insurance for UPS, Lexington argues that its coverage is excess over UPS's other insurance, Liberty.[47]

UPS responds by citing *Pecker Iron Works of New York v. Traveler's Insurance Company*, in which the New York Court of Appeals interpreted a nearly identical additional insured endorsement to provide primary as opposed to excess coverage.[48]  In *Pecker*, the insurance policy stated that coverage pursuant to the additional insured endorsement would be excess unless the insured had agreed in writing with the additional insured that coverage would be primary.[49]  A separate

---

[45]      *See id.*

[46]      Lexington Policy, "Additional Insured — Owners and Property Managers When Required by Written Contract With You."

[47]      *See* Opp. Mem. at 1–2.

[48]      *See* 99 N.Y.2d 391, 393 (2003).

[49]      *See id.*

written agreement required the insured to add the plaintiff to its insurance as an additional insured, but did not explicitly specify whether coverage would be primary or excess.[50]   The Court concluded that coverage was "primary coverage unless unambiguously stated otherwise," since the "well-understood meaning of the term [additional insured] is an entity enjoying the same protection as the named insured."[51]   Given the controlling precedent in *Pecker,* Lexington owes UPS primary coverage pursuant to the Additional Insured Endorsement.

### c.   Liberty's Coverage Is Excess

The Parties disagree as to whether the Liberty Policy also provides primary coverage to UPS in the Underlying Action, such that the two insurers should share the costs of defense.   Both the Lexington Policy and the Liberty Policy contain "other insurance" clauses stating that coverage shall be primary unless the insured has other primary coverage through an additional insured endorsement, in which case the coverage shall be excess.[52]   Because the Lexington

---

[50]      *See id.*

[51]      *Id.* (quotation marks and citations omitted).

[52]      *See* Liberty Mutual Commercial Policy ("Liberty Policy"), Ex. B to 7/23/13 Declaration of J. Gregory Lahr, counsel to defendant ("Lahr Decl."), at 84 ("This insurance is excess over . . . [a]ny other primary insurance available to you . . . for which you have been added as an additional insured by attachment of an endorsement."); Lexington Policy Section IV, ¶ 4(b) ("This insurance is excess over . . . any other primary insurance available . . . for which you have been added

Policy covers UPS as an additional insured and the Liberty Policy covers UPS as a primary insured, the "other insurance" clause in the Liberty contract is triggered while the "other insurance" clause in Lexington's policy is not.  Thus, Liberty's coverage is excess while Lexington's remains primary.  The two provisions do not "cancel each other out" as suggested by Defendants.[53]

Lexington cites a provision in its Policy that calls for equal contribution to defense costs where two different insurers provide primary coverage.[54]  However, that provision simply prescribes the method of cost-sharing where two primary insurance policies apply; it does not determine when Lexington's coverage will be primary as compared to excess.  As explained above, the "other insurance" clauses of the two contracts reveal that Lexington's coverage is primary and Liberty's is excess.  Thus, if Lexington owes a duty to defend pursuant to the terms of its policy, the existence and potential applicability of the Liberty Policy does not alter that duty.

_____

as an additional insured by attachment of an endorsement.").

[53]  *See Harleysville Ins. Co. v. Travelers Ins. Co.,* 831 N.Y.S.2d 625, 627 (4th Dep't 2007) (finding that where both policies provided primary coverage except where other primary insurance was available through an additional insured endorsement, and one policy provided additional insured coverage while the other provided primary coverage, clauses did not cancel each other out and result in coinsurance).

[54]  *See* Opp. Mem. at 11.

15

**B.     Lexington Owes UPS a Duty to Defend**

Under the Insured Contract Provision, Lexington must indemnify UPS in the Underlying Action unless the accident was solely the result of UPS's negligence.  Under the Additional Insured Endorsement, Lexington must indemnify UPS *to the extent* that the accident was caused by Chase's negligence. Thus, Lexington owes UPS a duty to defend if there is a reasonable possibility that Chase could be found comparatively negligent in the Underlying Action.[55]

Chase alleges that she was hit by a tow-car operated by a UPS employee while she was on duty as an Adelis security guard.[56]  According to her testimony at deposition, the driver of the tug made a U-turn that caused a tow car to skid out and knock her off her feet.[57]  Chase testified that she was standing on the yellow line when she was hit, which is where she had been trained to stand when vehicles were operating inside the building.[58]  Chase further testified that she watched the tow car until it struck her, but did not attempt to move out of the way

---

[55]     *See, e.g., Maryland Cas. Co.,* 332 F.3d at 160.

[56]     *See* Pl. 56.1 ¶¶ 16–17, 20.

[57]     *See* 2/8/12 Deposition Testimony of Marilyn Chase, Ex. C to Lahr Decl., at 44, 48–51.

[58]     *See id.* at 37, 51.

16

because she "ha[d] the right of way."[59]  She also stated that she did not know the

driver was going to make a U-turn.[60]  The driver of the tug, Martial Pamphile,

similarly testified that Chase was standing on the yellow line when she was hit by a

tow-car that skidded out as Pamphile was making a U-turn.[61]

Despite the fact that Chase was following the safety protocol that she

had been taught, a jury could still find that she was negligent in failing to move out

of the way if the danger should have been obvious.[62]  Whether Chase should have

foreseen the danger and taken steps to protect herself is a fact question not capable

of resolution as a matter of law.  Because there is a reasonable possibility that

---

[59]     *Id.* at 50–51.

[60]     *See id.* at 50.

[61]     *See* 5/23/12 Deposition Testimony of Martial Pamphile, Ex. D to Lahr Decl., at 13–14.

[62]     *See, e.g., Kane v. United States,* 189 F. Supp. 2d 40, 52 (S.D.N.Y. 2002) (noting that under New York law, "[a] plaintiff must exercise the reasonable care that a reasonably prudent person would use under similar circumstances to protect herself from injury"); *Jones v. Vialva-Duke,* 966 N.Y.S.2d 187, 187 (2d Dep't 2013) (noting that the party with the "right-of-way may still be found partially at fault for an accident if he or she fails to use reasonable care to avoid a collision"); *Graeber-Nagel v. Naranjan,* 956 N.Y.S.2d 530, 531 (2d Dep't 2012) (same); *Giraldez v. City of New York Cent. R.R. Co.,* 625 N.Y.S.2d 517, 518 (1st Dep't 1995) (plaintiff may not disregard a hazard that could have been avoided with reasonable caution).

Chase could be found negligent in the underlying action, Lexington owes UPS a duty to defend.

## C.    Declaratory Judgment Is Not Premature

Lexington argues that it is premature for UPS to seek a declaration regarding Lexington's duty to defend before the Underlying Action has concluded.[63]  Lexington cites *Kajima Construction Services v. Cati*, in which the court postponed decision on the relative obligations of the two insurers until after a determination of negligence in the underlying action.[64]  However, in *Kajima*, the primacy of coverage was dependent upon the underlying negligence determination. For that reason, the two insurers were in relatively equal positions pending resolution of the underlying action, and there was no compelling reason for the court to predict their respective obligations sooner.

In this case, however, the primacy of insurance is clear from the language of the two contracts.[65]  Lexington is primary and Liberty is excess.

---

[63]    *See* Opp. Mem. at 9.

[64]    *See* 755 N.Y.S.2d 375 (1st Dep't 2003).

[65]    *See BP Air Conditioning Corp. v. One Beacon Ins. Group,* 821 N.Y.S.2d 1, 9 (1st Dep't 2006), *modified on other grounds,* 8 N.Y.3d 708, 714 (2007) (distinguishing *Kajima*, where primary responsibility for defense expenses depended upon the determination of negligence in the underlying action, because defendant insurer's "status as a primary insurer [was] not contingent on any future factual determination" but was instead discernible from the contract language).

18

Because there is a reasonable possibility that Lexington will be forced to indemnify UPS, Lexington must pay UPS's defense costs pending resolution of the Underlying Action.

### D. Calculating Damages

Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action.[66]  The insurer must also pay interest at a rate of nine percent from the date of each legal bill.[67]  "Generally, the insurer will be liable for defense costs from the time that the duty was triggered (i.e., when a complaint alleging facts arguably entitling the insured to coverage is made) until it is determined that the actual facts place the case outside the coverage provided."[68]

---

[66]    *See United States Fid. & Guar. Co. v. Copfer,* 48 N.Y.2d 871, 873 (1979) ("We agree that the insurer breached its contractual duty to defend and indemnify the insured and thus may be held liable for the expenses the insured incurred in providing for his own defense."); *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.,* 962 N.Y.S.2d 9, 11 (1st Dep't 2013) (noting that, "in the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so" (quotation marks and citation omitted)).

[67]    *See Langenberg v. Sofair,* No. 03 Civ. 8339, 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 7, 2006); *National Union,* 962 N.Y.S.2d at 11.

[68]    *Maryland Cas. Co. v. W.R. Grace & Co.-Conn*, No. 88 Civ. 4337, 1994 WL 167962, at *5 (S.D.N.Y. Apr. 29, 1994).  *Accord Smart Style Indus., Inc. v. Pennsylvania Gen. Ins. Co.*, 930 F. Supp. 159, 163 (S.D.N.Y. 1996) (finding that insurer owed damage in the form of attorneys' fees commencing when it was

However, the filing of a complaint is not the only event that can place an insurer on notice and trigger the duty to defend. "The insurer must provide a defense if it has knowledge of facts that potentially bring the claim within the policy's indemnity coverage,"[69] even if those facts are extrinsic to the complaint.

Lexington argues that it had no reason to believe Chase might have been comparatively negligent until it was given a copy of Chase's deposition testimony on June 20, 2012, and therefore the duty to defend cannot have arisen before that time.[70] UPS points out that it asserted Chase's negligence in its Answer on May 18, 2010, which stated that "any injuries and/or damages sustained by the plaintiff . . . were caused in whole or in part by the contributory negligence and/or culpable conduct of each plaintiff."[71]

Because UPS has not submitted invoices for its defense costs and litigation expenses, a specific award of damages for breach of contract cannot be made at this time. The question of precisely when Lexington's duty to defend was

---

placed on notice of the underlying action).

[69]   *Park Place Entm't Corp. v. Transcon. Ins. Co.,* No. 01 Civ. 6546, 2003 WL 1913709, at *2 (S.D.N.Y. Apr. 18, 2003) (citing *Fitzpatrick,* 78 N.Y.2d at 67).

[70]   *See* Opp. Mem. at 12.

[71]   UPS's Verified Answer, Ex. H to McLaughlin Decl. ¶ 8.

triggered, and therefore when the damages period began, is best addressed through a separate briefing on damages.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgement is hereby GRANTED.  Lexington owes UPS a duty to defend the Underlying Action, and must reimburse UPS for reasonable attorneys' fees and litigation expenses incurred in defending the action, plus interest at a rate of nine percent per year.  UPS is directed to file a request for fees and costs within twenty-one (21) days of receipt of this Order.  Lexington may respond within fourteen (14) days of receipt and UPS may reply within seven (7) days thereafter.  The Clerk of Court is directed to close this motion (Docket No. 19).


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            October ___, 2013


21

**-Appearances-**

**Counsel for Plaintiff:**

Stefanie Ann Bashar, Esq.
Stephen P. McLaughlin, Esq.
Ansa Assuncao, LLP
707 Westchester Avenue, Suite 309
White Plains, NY 10604
(914) 298-2271
Fax: (914) 298-2270

**Counsel for Defendant:**

J. Gregory Lahr, Esq.
Ryan Christopher Chapoteau, Esq.
Sedgwick LLP
225 Liberty Street, 28th Floor
New York, NY 10281
(212) 898-4014
Fax: (212) 422-0925