UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED PARCEL SERVICE, INC.,

                         Plaintiff,

          - against -

LEXINGTON INSURANCE COMPANY,

                         Defendant.

Case No.: 12-cv-07961 (SAS)

ECF Case

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF UNITED PARCEL SERVICE, INC.'S
MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

ANSA ASSUNCAO, LLP
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

     A.     The Incident .......................................................................................... 2

     B.     UPS's Tender And Lexington's Response .................................................. 2

     C.     The Underlying Action ........................................................................... 3

     D.     UPS's Request For Reconsideration......................................................... 3

     E.     The Order .............................................................................................. 4

LEGAL ARGUMENT ........................................................................................................ 4

I.     UPS'S ATTORNEYS' FEES AND
     LITIGATION EXPENSES ARE REASONABLE. .......................................... 4

II.    LEXINGTON WAS OBLIGATED TO DEFEND UPS IN
     THE UNDERLYING ACTION FROM THE BEGINNING. ........................... 7

CONCLUSION.................................................................................................................... 9

**Page**

**Cases**

*Ahmad v. Khalil*,
    2013 WL 3388641 (Supreme Ct. Kings County July 9, 2013)....................................5

*Beckman v. Keybank, N.A.*,
    2013 WL 1803736 (S.D.N.Y. April 29, 2013) ...........................................................6

*Bergerson v. New York State Office of Mental Health, Central New York*
    *Psychiatric Ctr.*, 652 F.3d 277 (2d Cir. 2011)...........................................................5

*Blum v. Stenson*,
    465 U.S. 886 (1984)....................................................................................................5

*Bravia Capital Partners, Inc. v. Fike*,
    2013 WL 1728059 (S.D.N.Y. April 22, 2013) ...........................................................5

*In re Citigroup Inc. Securities Litigation*,
    2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013) ..............................................................6

*Employers Ins. Co. of Wausau v. General Star Nat. Ins. Co.*,
    2004 WL 1555143 (S.D.N.Y. July 9, 2004) ..............................................................8

*Francis v. Atlantic Infiniti, Ltd.*,
    34 Misc.3d 1221(A), 2012 WL 398769 ......................................................................5

*Gagne v. Maher*,
    594 F.2d 336 (2d Cir. 1979)........................................................................................7

*Greene v. City of New York*,
    2013 WL 579121 (S.D.N.Y. Oct. 25, 2013) (Scheindlin, J.)......................................4

*Imbeault v. Rick's Cabaret Int'l Inc.*,
    2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) ...........................................................6

*Lunday v. City of Albany*,
    42 F.3d 131,134 (2d Cir.1994)....................................................................................6

*Maryland Casualty Co. v. W.R. Grace & Co.-Conn.*,
    1994 WL 167962 (S.D.N.Y. April 29, 1994) ........................................................7, 8

*National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*,
    103 A.D.3d 473, 962 N.Y.S.2d 9 (1st Dep't 2013) ...................................................7

*Park Place Entertainment Corp. v. Transcontinental Ins. Co.*,
    2003 WL 1913709 (S.D.N.Y. April 18, 2003) ..........................................................8

*Reiter v. MTA New York City Transit Auth.*,
457 F.3d 224 (2d Cir.2006)........................................................................................5

*Rosado v. City of New York*,
2012 WL 955510 (S.D.N.Y. March 15, 2012) (Scheindlin, J.) ..................................7

*Stellar Mechanical Services of New York, Inc. v. Merchants Ins. of New*
*Hampshire*, 74 A.D.3d 948, 903 N.Y.S.2d 471 (2d Dep't 2010) .............................8

*Underdog Trucking, L.L.C. v. Verizon Services Corp.*,
276 F.R.D. 105 (S.D.N.Y. 2011) ...............................................................................5

*Wausau Business Ins. Co. v. Alpine Consulting Co. of New York, Inc.*,
2013 WL 1223382 (S.D.N.Y. March 25, 2013) .........................................................5

Plaintiff United Parcel Service, Inc. ("UPS"), by its attorneys, Ansa Assuncao, LLP, submits this memorandum of law in support of its motion for attorneys' fees and litigation expenses incurred in defending *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action"), plus interest and attorneys fees and costs of this motion.

## PRELIMINARY STATEMENT

On October 16, 2013, the Court held that Defendant Lexington Insurance Company ("Lexington") must reimburse UPS for reasonable attorneys' fees and litigation expenses incurred in defending the Underlying Action, plus interest at a rate of nine percent per year from the date of each legal bill. The Court directed UPS to file a request for fees and expenses.

UPS seeks attorneys' fees of $35,269.00 and expenses of $2,503.73, for a total of $37,772.73, incurred in defending the Underlying Action, plus interest and the attorneys' fees and costs of this motion. These fees and expenses are reasonable given the attorneys' qualifications and experience, the quality of the services provided and the hours spent defending the Underlying Action. These services include all defense activities in the Underlying Action from its commencement through the close of discovery, including drafting pleadings and motions, conducting discovery, taking depositions and attending court conferences.

In the event that Lexington again raises its prior argument that its duty to defend did not arise until it was provided with a copy of Marilyn Chase's ("Chase") deposition transcript, this argument should be rejected. It would be yet another attempt by Lexington to avoid its obligation to pay for UPS's defense. Chase's negligence has always been an issue in the Underlying Action. It was asserted as an affirmative defense in UPS's Answer. At her deposition, Chase simply described how the subject incident occurred. Lexington was already aware of those facts and circumstances.

UPS should not be forced to bear the burden of investigating the incident and developing further evidence to demonstrate the existence of coverage. This would encourage a recalcitrant insurer, like Lexington, to disclaim coverage in the hope that the insured lacks the resources to pursue its rights to coverage. Here, these costs should have been incurred by Lexington from the start. Lexington should not be rewarded for its refusal to provide a defense until it was ordered to do so by this Court.

## STATEMENT OF FACTS

### A.    The Incident

UPS and Adelis International Security, Inc. ("Adelis") entered into a Guard Services Agreement dated May 1, 2007 (the "Guard Services Agreement"), whereby Adelis agreed to provide security services at the UPS facility located at 643 West 43rd Street, New York, New York (the "Premises"). (Declaration of Stephen P. McLaughlin, dated November 7, 2013 ("McLaughlin Dec."), Exhibit A, at p. 2.)

On January 28, 2009, Marilyn Chase ("Chase") was an Adelis employee who worked at the Premises as a security guard manager. (McLaughlin Dec., Exhibit A, at p. 5.) Chase alleges that while working at the Premises, she was struck by a tug car that was owned and operated by UPS and its employees (the "Incident") and sustained personal injuries. (*Id*., Exhibit D, at ¶ 9.)

### B.    UPS's Tender And Lexington's Response

On November 18, 2009, Liberty Mutual Insurance Company ("Liberty"), acting on behalf of UPS, informed Adelis that UPS had been placed on notice of the Incident. (McLaughlin Dec., Exhibit B.) Liberty tendered UPS's defense against Chase's claims to Adelis and requested full indemnification under the terms of the Guard Services Agreement. (*Id*.) Liberty requested that the tender be turned over to Adelis's insurance carrier. (*Id*.) Liberty also advised that it would

be seeking reimbursement of all the expenses it incurred until Adelis assumed UPS's defense and indemnification. (*Id*.)

Lexington acknowledged Liberty's November 18, 2009 letter on December 3, 2009. (McLaughlin Dec., Exhibit C.) Lexington conceded that the Incident occurred while Chase was working as a security guard within the scope of her employment with Adelis. (*Id*.) However, it denied UPS's tender request because it concluded that the Incident was the direct result of UPS's sole negligence. (*Id*.) Lexington refused to reimburse any expenses associated with the Chase matter. (*Id*.)

## C.      The Underlying Action

On March 24, 2010, Chase commenced the Underlying Action against UPS seeking recovery for her alleged personal injuries resulting from the Incident. (McLaughlin Dec., Exhibit D, at ¶ 9.)

On May 18, 2010, UPS answered Chase's Complaint. (McLaughlin Dec., Exhibit E.) UPS alleged, *inter alia*, the following affirmative defenses: (1) Chase's alleged injuries were caused in whole or in part by her contributory negligence and/or culpable conduct; and (2) Chase's acts and/or omissions were the sole proximate cause of her alleged injuries. (*Id*., at ¶¶ 8, 16.)

## D.      UPS's Request For Reconsideration

On February 8, 2012, Chase was deposed. (McLaughlin Aff., Exhibit F.) Scott C. Perez, Esq. from The Law Offices of Edward Garfinkel, the firm appointed by Lexington to defend Adelis, attended Chase's deposition. (*Id*.) Chase's deposition testimony demonstrates that she bears at least partial responsibility for the Incident and her alleged injuries.

In light of Chase's deposition testimony, on June 20, 2012, UPS's counsel in the Underlying Action requested that Lexington revisit its denial of coverage under the policy,

accept the tender of defense and agree to indemnify UPS pursuant to the terms and conditions of the Guard Services Agreement. (McLaughlin Dec., Exhibit G.) Lexington never responded to the June 20, 2012 letter. (*Id.*, Exhibit A, at p. 6.)

## E. The Order

On June 25, 2013, UPS moved for partial summary judgment (1) on Lexington's duty to defend it in the Underlying Action; and (2) for reimbursement of the attorneys' fees and expenses incurred to date in its defense of the Underlying Action, plus interest.

On October 16, 2013, this Court granted UPS's motion for partial summary judgment, holding that Lexington owes UPS a duty to defend the Underlying Action. (McLaughlin Dec., Exhibit A, at p. 21.) This Court further held that Lexington must reimburse UPS for reasonable attorneys' fees and litigation expenses incurred in defending the Underlying Action, plus interest at a rate of nine percent per year from the date of each legal bill, and directed UPS to file a request for fees and costs. (*Id.*, at pp. 19 and 21.)

## LEGAL ARGUMENT

## I.

## UPS'S ATTORNEYS' FEES AND LITIGATION EXPENSES ARE REASONABLE.

Pursuant to this Court's Order, Lexington must reimburse UPS for the reasonable attorneys' fees and litigation expenses incurred in defending the Underlying Action, plus interest. The fees and expenses set forth in the Declaration of Steven P. Orlowski, dated November 7, 2013 (the "Orlowski Declaration"), are reasonable.

The court determines the amount of a fee award by calculating the "lodestar" figure, which represents the "presumptively reasonable fee." *Greene v. City of New York*, No. 12 Civ. 5427, 2013 WL 579121, at *2 (S.D.N.Y. Oct. 25, 2013) (Scheindlin, J.). The figure is calculated "by multiplying a reasonable hourly rate by the number of reasonably expended hours." *Id.*,

quoting *Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011).

The reasonable hourly rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Reiter v. MTA New York City Transit Auth.,* 457 F.3d 224, 232 (2d Cir.2006), quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984). The court may also rely on its own knowledge of private firm hourly rates. *Wausau Business Ins. Co. v. Alpine Consulting Co. of New York, Inc.*, No. 11 Civ. 2482, 2013 WL 1223382, at *7 (S.D.N.Y. March 25, 2013).

The Orlowski Declaration sets forth the attorneys' fees incurred in UPS's defense of the Underlying Action. The fees are $190 per hour for partners and counsel (most of whom have over 15 years of litigation experience), $155 per hour for associates (who have approximately 10 years of litigation experience) and $80 per hour for paralegals. These hourly rates are reasonable given the attorneys' qualifications and experience. *Ahmad v. Khalil*, No. 53803/12, 2013 WL 3388641, at *14 (Supreme Ct. Kings County July 9, 2013) (holding that an hourly rate of $350 for a matrimonial attorney with 24 years of experience was reasonable); *Francis v. Atlantic Infiniti, Ltd.*, 34 Misc.3d 1221(A), 2012 WL 398769, at *6 (holding that the hourly rate of $300 per hour is reasonable for the Queens County community for an experienced attorney of 10 to 15 years, $250.00 per hour for five to 10 years, $225.00 per hour for five or less years and $85.00 per hour for a paralegal); *Bravia Capital Partners, Inc. v. Fike*, No. 09 Civ. 6375, 2013 WL 1728059, at *8 (S.D.N.Y. April 22, 2013) (approving hourly rates for a motion to compel in a contract case at $400 for a partner with 20 years of experience in tort/product liability, $375 for a partner with 15 years of litigation experience and $225 for an associate who graduated law school in 2008 and had general litigation experience); *Underdog Trucking, L.L.C. v. Verizon*

*Services Corp.*, 276 F.R.D. 105, 109-10 (S.D.N.Y. 2011) (approving hourly rates for a motion to compel at $550 for a partner with over 45 years of litigation experience, $221 for an associate with approximately six years of experience, and $208.25 for an associate with approximately two years of experience); *Imbeault v. Rick's Cabaret Int'l Inc.*, No. 08 Civ. 5458, 2009 WL 2482134, at \*4-5 (S.D.N.Y. Aug. 13, 2009) (approving an hourly rate of $400 for a partner with 13 years of experience, $325 for an associate with approximately eight years of experience and $80 for paralegals and law clerks).

With respect to the hours reasonably expended, the court considers "the validity of the representations that a certain number of hours were usefully and reasonably expended." *In re Citigroup Inc. Securities Litigation*, Nos. 09 MD 2070 and 07 Civ. 9901, 2013 WL 3942951, at \*16 (S.D.N.Y. Aug. 1, 2013), quoting *Lunday v. City of Albany,* 42 F.3d 131,134 (2d Cir.1994).

Here, the legal services provided are supported by detailed, contemporaneous time records indicating the attorney who performed the work, the date, the hours expended and a description of the work performed. (Orlowski Declaration, Exhibit A.) These services include defense strategy, pleadings, written discovery, depositions and motions. The total time expended of 197.70 hours is reasonable based upon the services performed.

The attorneys' fees incurred in the Underlying Action total $35,269.00. This amount represents the reasonable hourly rates multiplied by the number of reasonably expended hours. Accordingly, it should be approved by the Court.

The Court should also approve the expenses set forth in the Orlowski Declaration. Courts typically allow counsel to recover their reasonable out-of-pocket expenses, including court and process server fees and photocopies. *Beckman v. Keybank, N.A.*, No. 12 Civ. 7836, 2013 WL 1803736, at \*14 (S.D.N.Y. April 29, 2013). The expenses incurred here include court

fees, transcript fees, process server fees, medical record fees and copying fees. (Orlowski Declaration, Exhibit A.) These expenses total $2,503.73. (*Id*.) These expenses are reasonable and were necessary in connection with the Underlying Action.

Finally, hours reasonably spent by counsel in preparing the fee application and in litigating a fee award are also compensable. *Gagne v. Maher*, 594 F.2d 336, 343-44 (2d Cir. 1979); *Rosado v. City of New York*, No. 11 Civ. 4285, 2012 WL 955510, at *2 (S.D.N.Y. March 15, 2012) (Scheindlin, J.). UPS will submit a declaration regarding the total hours expended on this motion, including the anticipated reply papers, when the reply papers are filed.[1]

## II.

### LEXINGTON WAS OBLIGATED TO DEFEND UPS IN THE UNDERLYING ACTION FROM THE BEGINNING.

In opposition to UPS's motion for partial summary judgment, Lexington argued that its duty to defend did not arise until it was given a copy of Chase's deposition transcript and, therefore, it should not be responsible for UPS's attorneys' fees and expenses prior to that time. If Lexington attempts this argument again, it should be rejected.

If the insurer breaches its duty to defend, the insured's damages are the expenses reasonably incurred in defending the action after the insurer's refusal to do so. *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474, 962 N.Y.S.2d 9, 11 (1st Dep't 2013). Generally, the insurer is liable for defense costs from the time that the duty to defend was triggered until it is determined that the actual facts place the case outside the coverage provided. *Maryland Casualty Co. v. W.R. Grace & Co.-Conn.*, No. 88 Civ. 4337, 1994 WL 167962, at *5 (S.D.N.Y. April 29, 1994). The duty is triggered when the complaint alleges

---

[1] UPS cannot submit the declaration at this time because the extent of Lexington's opposition to this motion and the time to prepare reply papers are unknown.

facts arguably entitling the insured to coverage or the insurer has knowledge of such facts. *Id.*; *Park Place Entertainment Corp. v. Transcontinental Ins. Co.*, No. 01 Civ. 6546, 2003 WL 1913709 (S.D.N.Y. April 18, 2003).

Here, Lexington's duty to defend was triggered from the beginning. Chase's negligence has always been an issue. UPS tendered its defense to Adelis and Lexington when it first learned of Chase's claims. (McLaughlin Dec., Exhibit B.) Chase alleged that she suffered injuries while working at the Premises. These allegations do not preclude a finding at trial that her injuries were caused by her negligence. *Employers Ins. Co. of Wausau v. General Star Nat. Ins. Co.*, No. 03 Civ. 6575, 2004 WL 1555143, at \*4 (S.D.N.Y. July 9, 2004). Accordingly, Chase's claims raised the possibility of coverage sufficient to trigger Lexington's duty to defend UPS. *Id.*

UPS also asserted affirmative defenses regarding Chase's negligence in its Answer. UPS asserted that (1) Chase's alleged injuries were caused in whole or in part by her contributory negligence and/or culpable conduct; and (2) Chase's acts and/or omissions were the sole proximate cause of her alleged injuries. (McLaughlin Dec., Exhibit E, at ¶¶ 8, 16.)

Chase's deposition testimony did <u>not</u> introduce any new facts or allegations. *Cf. Stellar Mechanical Services of New York, Inc. v. Merchants Ins. of New Hampshire*, 74 A.D.3d 948, 952, 903 N.Y.S.2d 471, 476 (2d Dep't 2010) (holding that the second amended complaint's new allegations that the accident was caused by the insured's employees' negligence suggested for the first time a reasonable possibility of coverage in the underlying action for the additional insured under the insured's insurance policy, thereby triggering the insurer's duty to defend the additional insured). Chase simply described how Incident occurred. Lexington was already aware of those facts and circumstances. Nonetheless, it still repeatedly declined UPS's requests for a defense and coverage under the policy.

Lexington's argument is just another attempt to shirk its responsibility to pay for UPS's defense in the Underling Action. This is further demonstrated by its claim that it received notice when it received Chase's deposition transcript, even though the attorney it appointed to represent Adelis attended the deposition and knew her testimony more than four months earlier. (McLaughlin Dec., Exhibit F.) In addition, after the deposition, UPS's attorney in the Underlying Action had several conversations with the attorney in effort to get Lexington to reconsider its denial of tender. (Orlowski Dec., at ¶ 5.)

If Lexington's argument were correct, an insurer would have every incentive to deny a defense to its insured. The denial would force the insured to incur substantial costs to develop evidence to defend itself, thereby showing that there is coverage. After the court finds that the evidence demonstrates a duty to defend, the insurer would then take over the defense and save all of the prior costs. The insurer would wrongfully reap the benefits of the insured's efforts. This result cannot be allowed.

## CONCLUSION

For the foregoing reasons, UPS respectfully requests that the Court issue an Order granting its motion in its entirety.

Dated: White Plains, New York
      November 7, 2013

ANSA ASSUNCAO, LLP
*Attorneys for Plaintiff*


By: s/ Stephen P. McLaughlin
    Stephen P. McLaughlin (SM- 4136)
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260
stephen.mclaughlin@ansalaw.com