UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

UNITED PARCEL SERVICE, INC.,            :
                                        :       Civil Action No.
                    Plaintiff,          :       1:12-cv-07961-SAS
                                        :
        -against-                       :
                                        :       **Oral Argument Requested**
LEXINGTON INSURANCE COMPANY,            :
                                        :
                    Defendant.          :

------------------------------------------------------------x

**DEFENDANT LEXINGTON INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR REIMBURSEMENT OF DEFENSE EXPENSES**

SEDGWICK LLP
225 Liberty Street, 28th floor
New York, New York 10281
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .......................................................................................2

    A.    The Lexington Policy......................................................................2

    B.    UPS Requests Coverage From Lexington ...........................................4

        1.    Lexington Receives Notice of an Occurrence ............................4

        2.    UPS Does Not Provide Notice Of The Complaint Or Its Answer..............4

        3.    UPS Finally Provides Notice Of The Underlying Action By Tendering The Chase Deposition..................................4

    C.    The Court Requests Clarification Of When UPS Triggered Lexington's Duty To Defend .........................................................5

LEGAL ARGUMENT.........................................................................................6

    A.    Defense Costs Prior To June 20, 2012 Are Not Covered By The Lexington Policy Due To UPS'S Failure to Provide Notice of the Lawsuit................................................................6

        1.    UPS Did Not Provide Lexington With Notice Of The Lawsuit .................6

        2.    The Lexington Policy Only Provides Coverage After Proper Tender Of A Claim ..................................9

    B.    Alternatively, If UPS Was Not Required To Give Notice of The Lawsuit, It Was Not Apparent That Coverage May Be Triggered Until Chase's Deposition .........................................................10

    C.    The Lexington Policy Only Provides Coverage For Costs Directly Incurred In The Defense Of The Underlying Action...........................11

CONCLUSION...................................................................................................12

DOCS/18089335v1

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### Cases

American Ins. Co. v. Fairchild Indus.,
    56 F.3d 435 (2d Cir. 1995) ................................................................. 6, 7, 8

Cellex Biosciences, Inc. v. St. Paul Fire & Marine Ins. Co.,
    537 N.W.2d 621 (Minn. Ct. App. 1995)................................................ 10

Chase v. United Parcel Serv., Inc.,
    Index No. 7445/10 (Supreme Ct. Kings County, filed Mar. 24, 2010) ..................................... 1

City of New York v. St. Paul Fire and Marine Ins. Co.,
    21 A.D.3d 978, 801 N.Y.S.2d 362 (2d Dep't 2005)................................ 6

Clemente v. Home Ins. Co.,
    791 F. Supp. 118 (E.D. Pa. 1992),
    aff'd, 981 F.2d 1246 (3d Cir. 1992)...................................................... 9

Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co.,
    716 S.W.2d 348 (Mo. Ct. App. 1986)................................................... 10

Employers Ins. Co. of Wasau v. General Star Nat. Ins. Co.,
    No. 03 Civ. 3575, 2004 WL 1555143 (S.D.N.Y. July 9, 2004) ............... 7

Employers Mut. Cas. Co. v. Key Pharms.,
    75 F.3d 815 (2d Cir. 1996) ................................................................ 12

Fisher v. Hanover Ins. Co.,
    288 A.D.2d 806, 733 N.Y.S.2d 761 (3d Dep't 2001)............................ 8

Fitzpatrick v. American Honda Mortor Co.,
    78 N.Y.2d 61, 571 N.Y.S.2d 672 (1991) ............................................ 11

Garay v. Nat'l Garange Mut. Ins. Co.,
    117 Fed. Appx. 785 (2d Cir. 2004)....................................................... 7

Maryland Cas. Co. v. W.R. Grace & Co.,
    No. 88 Civ. 4337, 1994 WL 167962 (S.D.N.Y. April 29, 1994)............... 7

Michaud v. Merrimack Mut. Fire Ins. Co.,
    No. 94-0175B, 1994 WL 774683 (D. R.I. Nov. 16, 1994)....................... 9

Mighty Midgets v. Centennial Ins. Co.,
    47 N.Y.2d 12, 416 N.Y.S.2d 559 (1979) ............................................ 12

Mount Vernon Fire Ins. Co. v. Eastside Renaissance Assocs. Ltd.,
  No. 92 Civ. 7138-SAS, 1996 WL 18866 (S.D.N.Y. Jan. 17, 1996) ........................................ 12

Nationwide Mut. Ins. Co. v. Davis,
  No. 99 Civ. 11928-SAS, 2000 WL 964939 (S.D.N.Y. Jul. 7, 2000) ........................................ 6

Northern Ins. Co. v. Allied Mut. Ins. Co.,
  955 F.2d 1353 (9th Cir. 1992) ...................................................................................... 9

Oriska Ins. Co. v. Am. Textile Maint.,
  322 Fed. Appx. 36 (2d Cir. 2009) .................................................................................. 12

Simon Prop. Group, L.P. v. Lumbermen's Mut. Cas. Co.,
  459 Fed. Appx. 16 (2d Cir. 2012) .................................................................................. 6

Smart Style Indus. Inc. v. Pennsylvania General Ins. Co.,
  930 F. Supp. 159 (S.D.N.Y. Jul. 10, 1996) ...................................................................... 9

Stellar Mech. Serv. v. Merchants Ins.,
  74 A.D.3d 948, 903 N.Y.S.2d 471 (2d Dep't 2010) ............................................................ 11

Viles Contr. Corp. v. Hartford Fire Ins. Co.,
  271 A.D.2d 349, 708 N.Y.S.2d 281 (1st Dep't 2000) .......................................................... 8

Wm. C. Vick Const. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,
  52 F. Supp. 2d 569 (E.D.N.C. Mar. 24, 1999),
  aff'd, 213 F. 3d 634 (4th Cir. 2000) .............................................................................. 9

DOCS/18089335v1

Defendant Lexington Insurance Company ("Lexington"), by and through its attorneys, Sedgwick LLP, hereby submits its memorandum of law in opposition to the motion for reimbursement of defense expenses filed by Plaintiff, United Parcel Service, Inc. ("UPS").

## PRELIMINARY STATEMENT

UPS's motion seeks reimbursement of attorneys' fees and costs that (1) are beyond the scope of the Court's decision finding that Lexington owes a duty to defend UPS under Lexington Commercial General Liability Policy No. 43926334 (the "Lexington Policy"), issued to its named insured, Adelis International Security, Inc. ("Adelis"), and (2) otherwise are not covered by the Lexington Policy.

Marilyn Chase ("Chase") was struck by a UPS vehicle while employed by Adelis on January 28, 2009. Nearly ten months later, on November 18, 2009, Liberty Mutual, on behalf of UPS, informed Lexington of the occurrence involving Chase, and requested that Lexington assume the defense of any potential lawsuit. After investigating the claim and determining that UPS was solely negligent for the accident, Lexington denied coverage by letter dated December 3, 2009. Neither UPS nor Liberty Mutual challenged Lexington's coverage determination.

Chase subsequently filed a complaint against UPS on March 24, 2010, styled Chase v. United Parcel Serv., Inc., Index No. 7445/10 (Supreme Ct. Kings County, filed Mar. 24, 2010) (the "Underlying Action"). Neither UPS nor Liberty Mutual ever informed Lexington of this development, as required by the Lexington Policy. Chase was deposed on February 8, 2012.[1] Not only did UPS never notify Lexington of the Underlying Action, it also did not advise Lexington of Chase's deposition testimony until its defense counsel sent a tender letter dated June 20, 2012. In the interim (and thereafter), UPS's defense counsel engaged in numerous

---

[1] In the Court's decision dated October 16, 2013, the Court determined that a jury could use Chase's testimony to find that she was partially negligent for her injury. (Docket Entry, No. 35).

communications with UPS's coverage counsel regarding potential coverage under the Lexington Policy.

Now UPS seeks reimbursement of all defense fees and costs incurred from the commencement of the Underlying Action.  However, as explained more fully below, Lexington only provides coverage for defense expenses after an insured satisfies the Policy's notice provision, including tendering notice of an occurrence as well as notice of a lawsuit.  In accordance with the Court's ruling, as well as the Policy language and New York law, Lexington is only responsible for reimbursement of attorneys' fees and costs incurred after UPS tendered a potentially covered claim on June 20, 2012, and which are directly related to UPS' defense (and not related to seeking coverage under the Policy).

Accordingly, Lexington only owes UPS $18,224.50 in attorneys' fees and costs, subject to the Policy's $2,500 deductible, for a total amount of $15,724.50.

## STATEMENT OF FACTS

The pertinent facts for this motion are recited in the Court's Order dated October 16, 2013, and in UPS's moving brief.  In the interest of judicial economy, Lexington recites only certain additional facts that have not been set forth therein.

### A.    The Lexington Policy

The Lexington Policy is an occurrence-based policy with a $1 million limit of liability for each occurrence subject to a $2,500 deductible.  (See Declaration of Ryan C. Chapoteau ("Chapoteau Decl.") dated November 21, 2013, Exhibit A at 1).  The deductible is applied to defense costs.  (Chapoteau Decl., Exhibit A at 21).  As a condition precedent to coverage, an insured is contractually obligated to report an occurrence and a lawsuit to Lexington.  As described in Section IV – Conditions, subparagraph 2:

    a.    you must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

     (1)     How, when and where the "occurrence" or offense took place;

     (2)     The names and addresses of any injured persons and witnesses; and

     (3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.     *If a claim is made or "suit" is brought against any insured; you must:*

     (1)     Immediately record the specifics of the claim or "suit" and the date received; and

     (2)     *Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

c.     *You and any other involved insured must:*

     (1)     *Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";*

     (2)     Authorize us to obtain records and other information;

     (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.     *No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

(Chapoteau Decl., Exhibit A at 22) (emphasis added).

     The Lexington Policy includes these requirements for an insured tendering an occurrence and/or a lawsuit as a condition precedent to trigger coverage. As discussed below, the only

3

instance in which UPS attempted to satisfy its notice requirement with respect to the Underlying Action was when defense counsel tendered a request for coverage on June 20, 2012.

**B.     UPS Requests Coverage From Lexington**

   *1.     Lexington Receives Notice of an Occurrence*

   By letter dated November 18, 2009, Lexington received a request from Liberty Mutual, on behalf of UPS, to defend and indemnify UPS for Chase's injuries.  (<u>See</u> Declaration of Stephen P. McLaughlin ("McLaughlin Decl.") dated November 7, 2013, Exhibit B).   This correspondence only provided Lexington notice of an occurrence.  (McLaughlin Decl., Exhibit B).  After completing an investigation into the matter, Lexington denied this demand by letter dated December 3, 2009, because the evidence showed that Chase's injuries were a direct result of UPS's sole negligence.  (McLaughlin Decl., Exhibit C).  Notably, neither UPS nor Liberty Mutual contested Lexington's determination.  (Chapoteau Decl., Exhibit B)

   *2.     UPS Does Not Provide Notice Of The Complaint Or Its Answer*

   Chase ultimately filed a Complaint against UPS on March 24, 2010 (McLaughlin Decl., Exhibit D), and UPS filed its Answer on May 18, 2010 (McLaughlin Decl., Exhibit E).  Neither UPS nor Liberty Mutual ever provided any notice relating to the commencement of the Underlying Action, or any subsequent evidence that coverage was triggered under the Lexington Policy to refute Lexington's denial letter.  (Chapoteau Decl., Exhibit B).  Moreover, UPS failed to provide Lexington with any notice that it had retained counsel, filed an Answer, and was engaging in discovery.  (Chapoteau Decl., Exhibit B).

   *3.     UPS Finally Provides Notice Of The Underlying Action By Tendering The Chase Deposition*

   By letter dated June 20, 2012, UPS's defense counsel in the Underlying Action finally informed Lexington that he had conducted Chase's deposition on February 8, 2012, when she testified to not moving out of the way before being struck by a tug car.  (McLaughlin Decl.,

4

Exhibit G).  Apparently due to this new development in the Underlying Action, defense counsel tendered the claim to Lexington, requesting that Lexington provide a defense and indemnity to UPS.  (McLaughlin Decl., Exhibit G).  The correspondence from defense counsel enclosed the Chase deposition transcript, but did not attach a copy of the Complaint or Answer.  (McLaughlin Decl., Exhibit G).  This correspondence was the first instance in which UPS attempted to provide notice of the Underlying Action and demonstrate that Chase's accident may not have been the direct result of UPS's sole negligence.  (Chapoteau Decl., Exhibit B).

**C.      The Court Requests Clarification Of When UPS Triggered Lexington's Duty To Defend**

On October 16, 2013, the Court issued a decision on UPS's motion for partial summary judgment, concluding that Lexington has a duty to defend UPS in the Underlying Action. (McLaughlin Decl., Exhibit A at 21).  As part of this duty, Lexington must reimburse UPS's reasonable attorneys' fees and costs incurred in defending the Underlying Action, plus interest. (McLaughlin Decl., Exhibit A at 21).  However, as it remained unclear when UPS triggered Lexington's duty to defend, which would establish the date from which Lexington must pay for defense expenses in the Underlying Action, the Court has requested that the parties brief this issue in a separate motion.  (McLaughlin Decl., Exhibit A at 21-22).

Although UPS never informed Lexington of Chase's Complaint or its Answer as required by the notice provision of the Lexington Policy, UPS now seeks from Lexington indemnification totaling $37,772.73, plus interest.  (Docket Entry, No. 36).  This amount consists of all attorneys' fees and costs incurred in the Underlying Action, including costs that pre-date the tender on June 20, 2012.  (See Declaration of Steven P. Orlowski ("Orlowski Decl.") dated November 7, 2013, Exhibit A).  UPS failed to deduct attorneys' fees and costs it incurred prior to complying with the notice requirement of the Lexington Policy.  (Orlowski Decl., Exhibit A).  Additionally, UPS improperly seeks reimbursement for attorneys' fees and costs not directly incurred for the

defense of the Underlying Action, including communications regarding coverage under the Lexington Policy, traveling to and engaging in claims reviews with Liberty Mutual, and the amount spent for its current motion.  (Docket Entry, No. 36).  As demonstrated below, these fees and costs are not reimbursable.

## LEGAL ARGUMENT

**A.    Defense Costs Prior To June 20, 2012 Are Not Covered By The Lexington Policy Due To UPS'S Failure to Provide Notice of the Lawsuit**

### *1.    UPS Did Not Provide Lexington With Notice Of The Lawsuit*

An additional insured has an independent duty to notify an insurer of a claim and make a timely demand for coverage.  See, e.g., City of New York v. St. Paul Fire and Marine Ins. Co., 21 A.D.3d 978, 981, 801 N.Y.S.2d 362 (2d Dep't 2005).  Failure to provide proper notice of a lawsuit to fulfill the condition precedent notice provision will preclude coverage even if an insurer was not prejudiced.  See Simon Prop. Group, L.P. v. Lumbermen's Mut. Cas. Co., 459 Fed. Appx. 16, 18 (2d Cir. 2012) ("Under New York law, 'compliance with a policy's notification provisions is a condition precedent to the insurer's liability under the policy.' Without a valid excuse, 'an insured's failure to provide timely notice of a claim to its excess insurer is a complete defense to coverage, regardless of whether the carrier was prejudiced by the late notice.'") (citations omitted).  See also Nationwide Mut. Ins. Co. v. Davis, No. 99 Civ. 11928-SAS, 2000 WL 964939 at *2, (S.D.N.Y. Jul. 7, 2000) (New York law requires insureds to comply with notice-of-occurrence provisions as a condition precedent to coverage).

It has been determined that, under an occurrence-based policy, an insured's duty to give timely notice of an occurrence is separate and distinct from its additional separate duty to give timely notice of a claim or lawsuit.  See American Ins. Co. v. Fairchild Indus., 56 F.3d 435, 439 (2d Cir. 1995).  In Fairchild, the insuring policy's notice provision read:

Insured's Duties in the Event of Occurrence, Claim or Suit:

(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

(c) The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

Id. at 437 n.1.

The Second Circuit noted a difference between the condition precedent in paragraph (a) – notifying the insurer of an accident which may develop into a claim – and the condition precedent in paragraph (b) – notifying the insurer of a filed lawsuit.  See id. at 439.  See also Garay v. Nat'l Garange Mut. Ins. Co., 117 Fed. Appx. 785, 788 (2d Cir. 2004) (citing Fairchild); Cf. Employers Ins. Co. of Wasau v. General Star Nat. Ins. Co., No. 03 Civ. 3575, 2004 WL 1555143 at *4 (S.D.N.Y. July 9, 2004) (coverage implicated from date of original notice because Underlying Action already commenced).

UPS cites to Maryland Cas. Co. v. W.R. Grace & Co., No. 88 Civ. 4337, 1994 WL 167962 at *5 (S.D.N.Y. April 29, 1994), for the proposition that an insurer's liability for defense costs is triggered on the same date as its duty to defend.  However, W.R. Grace provides that: "[a]lthough many of the administrative letters submitted by Grace are sufficiently adversarial to

7

establish the duty to defend, summary judgment cannot be granted to Grace because Grace has not established that it provided timely notice of suit and occurrence to the insurers as the polices require." Id. at *4. Thus, compliance with notice provisions is a condition precedent to coverage, regardless of whether an insurer learns of the claim through other means. See id. Accordingly, the insurer does not have to bear defense costs until an insured provides proper notice of a claim. See id. at *4-5.

Similar to the policy in <u>Fairchild</u>, the Lexington Policy requires any insured, including UPS, to provide notice of an occurrence which may result in a claim pursuant to paragraph (a) of the notice provision, *as well as* provide notice of a lawsuit brought against the insured pursuant to paragraph (b) of the notice provision. (Chapoteau Decl., Exhibit A at 22)  The Liberty Mutual letter dated November 18, 2009, makes reference to an incident involving Chase. (McLaughlin Decl., Exhibit B).  Although this correspondence may satisfy the first condition of providing notice of an occurrence (which is not at issue in this motion), it did not provide the requisite notice of a lawsuit because the Underlying Action did not commence until more than four months later in March 2010.  UPS had an additional duty to keep Lexington apprised of any litigation filed by Chase and to notify Lexington of any subsequent pleadings.  UPS failed to abide by both of these requirements.

Even if Lexington's duty to defend was triggered at the time Chase filed her Complaint, as UPS argues, notice of the lawsuit is a condition precedent to coverage.  Insureds are required to forward promptly all legal documents of a claim to the insurer as a condition precedent to coverage.  See <u>Viles Contr. Corp. v. Hartford Fire Ins. Co.</u>, 271 A.D.2d 349, 708 N.Y.S.2d 281 (1st Dep't 2000); <u>Fisher v. Hanover Ins. Co.</u>, 288 A.D.2d 806, 807, 733 N.Y.S.2d 761 (3d Dep't 2001).  Chase ultimately filed her Complaint on March 24, 2010, and UPS answered on May 18, 2010.  Under the Lexington Policy, UPS had a duty to notify Lexington of the Underlying Action

8

as soon as practicable, and forward filed pleadings pursuant to paragraphs (b) and (c) of the notice condition.  (Chapoteau Decl., Exhibit A at 22).  UPS made no efforts to provide such documentation and did not keep Lexington appraised of the litigation.  (Chapoteau Decl., Exhibit B).

As this notice provision is a condition precedent to coverage, Lexington should not have to bear defense expenses incurred by UPS until it was properly notified of the claim.  Because UPS made no attempts to fulfill its obligation of providing notice to Lexington of the Underlying Action as soon as practicable, Lexington's duty to defend the Underlying Action was not triggered until UPS tendered such information, thereby precluding reimbursement for any fees and costs until that date.

### 2.    *The Lexington Policy Only Provides Coverage After Proper Tender Of A Claim*

In addition to the notice requirement, occurrence policies include a voluntary payment provision, such as paragraph (d) of the Lexington Policy's notice provision, which precludes an insured from pre-tender indemnification.  An insurer shall only be liable for defense expenses from the time the duty to defend was triggered, which occurs when an insured tenders a covered claim.  See Smart Style Indus. Inc. v. Pennsylvania General Ins. Co., 930 F. Supp. 159, 164 (S.D.N.Y. Jul. 10, 1996) (insured only entitled to attorneys' fees back to the date it gave notice pursuant to the voluntary payment provision).  Multiple courts across the country share New York's view, and likewise have concluded that an insured's failure to adhere to a voluntary payment provision serves as a bar to pre-tender fees and costs.[2]

---

[2] See, e.g., Michaud v. Merrimack Mut. Fire Ins. Co., No. 94-0175B, 1994 WL 774683, at *6–7 (D. R.I. Nov. 16, 1994) (denying, on the basis of voluntary payments clause, defense costs that were voluntarily paid by plaintiff); Wm. C. Vick Const. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 52 F. Supp. 2d 569 (E.D.N.C. Mar. 24, 1999), aff'd, 213 F. 3d 634 (4th Cir. 2000) (under voluntary payments provision, insurer was not obligated to pay for legal expenses incurred prior to tender); Northern Ins. Co. v. Allied Mut. Ins. Co., 955 F.2d 1353, 1360 (9th Cir. 1992) (by virtue of a "voluntary payment" clause, an insurer was not liable for pre-tender costs: "California courts have consistently honored these provisions and will not require insurers to pay for voluntarily incurred pre-tender costs"); Clemente v. Home Ins. Co., 791 F. Supp. 118, 122 (E.D. Pa. 1992), aff'd, 981 F.2d 1246 (3d Cir. 1992) ("The definition of claims expenses is plain and unambiguous.  It provides coverage only for expenses with which the

9

Aside from UPS' late notice of the Underlying Action, it did not seek consent from Lexington to retain counsel or otherwise incur fees and costs associated with the Underlying Action.  As such, any expenses incurred before June 20, 2012, constitute voluntary payments and are not reimbursable.

Moreover, UPS's tender letter of June 20, 2012, did not enclose copies of the pleadings, only the Chase Deposition.  (McLaughlin Decl., Exhibit G).  Therefore, UPS still did not fulfill its requirement to immediately forward copies of legal papers to Lexington.

Lexington's duty to defend should only be triggered from June 20, 2012, because of UPS's failure to provide proper notice of the Underlying Action and seek Lexington's consent to incur defense expenses.  As a sophisticated party, UPS should understand how to comply with the commonplace condition precedent to coverage requiring an insured to provide notice of a lawsuit as soon as practicable.  Upon failing to fulfill its obligations under the Lexington Policy, UPS should not then be afforded the full benefits of coverage.  Accordingly, Lexington should only reimburse UPS in the amount of $18,224.50, which includes fees and costs incurred since June 20, 2012, less certain uncovered fees described below, subject to a $2,500 deductible.

**B.    Alternatively, If UPS Was Not Required To Give Notice of The Lawsuit, It Was Not Apparent That Coverage May Be Triggered Until Chase's Deposition**

Although the general principal is that allegations in a complaint determine whether a claim triggers an insurer's duty to defend, this may not always be the case.  If the four corners of the complaint do not trigger coverage, extrinsic evidence may activate the insurer's duty to defend, but only after such information is provided to the insurer.  See, e.g., Fitzpatrick v.

---

Company has been involved to some extent either through consent or through incurring the expenses itself.  Mr. Clemente has produced no affidavit, deposition, answer to interrogatory, admission, or other evidence raising a genuine issue of material fact regarding the Company's consent to or incurring of any of the expenses for which he seeks coverage[.  Therefore,] … judgment will be entered in favor of the defendant, The Home Insurance Company."); Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co., 716 S.W.2d 348, 357 (Mo. Ct. App. 1986) (insurer not obligated to pay defense costs because it had not been asked in advance to consent to such costs); Cellex Biosciences, Inc. v. St. Paul Fire & Marine Ins. Co., 537 N.W.2d 621, 623 (Minn. Ct. App. 1995) (policy provided that an insured could "not assume any financial obligation or pay out any money without our consent." As a result, court held that pre-tender defense costs were not covered.).

American Honda Mortor Co., 78 N.Y.2d 61, 66-67, 571 N.Y.S.2d 672 (1991) ("rather than mechanically applying only the 'four corners of the complaint' rule in these circumstances, the sounder approach is to require the insurer to provide a defense *when it has actual knowledge* of facts establishing a reasonable possibility of coverage") (emphasis added).   See also Stellar Mech. Serv. v. Merchants Ins., 74 A.D.3d 948, 952, 903 N.Y.S.2d 471, 476 (2d Dep't 2010).

UPS argues that Lexington's duty to defend was triggered at the time Chase commenced the Underlying Action because her negligence always was at issue.  However, the four corners of the Complaint do not reference any contributory negligence.  (McLaughlin Decl., Exhibit D). Looking beyond the Complaint to extrinsic evidence, Lexington's duty to defend would be triggered only when it became aware of facts establishing a reasonable possibility of coverage. UPS argues that its boilerplate affirmative defenses in its Answer, including alleged contributory negligence and Chase's acts being the sole proximate cause of her injuries, demonstrate entitlement to coverage.  (McLaughlin Decl., Exhibit E).  However, the Complaint and Answer were never tendered to Lexington for consideration.  (Chapoteau Decl., Exhibit B).  Without actual knowledge of the existence of these pleadings, Lexington could not have determined that a reasonable possibility of coverage existed on the date the Underlying Action originated or on the date UPS filed its Answer.

UPS tendered Chase's deposition transcript, and the Court has determined that Chase's testimony could be used to demonstrate alleged negligence contributing to the accident. (McLaughlin Decl., Exhibit G).  Thus, Lexington did not have actual knowledge of facts establishing a reasonable possibility of coverage until June 20, 2012.

C.      **The Lexington Policy Only Provides Coverage For Costs Directly Incurred In The Defense Of The Underlying Action**

Insureds do not have a right to demand reimbursement for expenses incurred beyond the scope of providing a defense of the underlying action.  New York case law firmly concludes that

insurers are not required to reimburse an insured for any expenses incurred in their efforts to establish coverage.  See Mighty Midgets v. Centennial Ins. Co., 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559 (1979) ("It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights. . . ."); Oriska Ins. Co. v. Am. Textile Maint., 322 Fed. Appx. 36, 37 (2d Cir. 2009) (insured cannot recover legal expenses in coverage claim despite insurer losing controversy and being held responsible for the risk) (citing Employers Mut. Cas. Co. v. Key Pharms., 75 F.3d 815, 824 (2d Cir. 1996)); Mount Vernon Fire Ins. Co. v. Eastside Renaissance Assocs. Ltd., No. 92 Civ. 7138-SAS, 1996 WL 18866 at *1 (S.D.N.Y. Jan. 17, 1996) (citing Mighty Midgets).

UPS tendered all defense costs incurred from Lester Schwab Katz & Dwyer, LLP. According to the narrative descriptions for some of these fees, the attorneys' work includes time spent trying to obtain coverage under the Lexington Policy, and traveling to and engaging in claims reviews with Liberty Mutual (the precise uncovered fees are set forth in Chapoteau Decl., Exhibit C).  Additionally, UPS seeks attorneys' fees and costs incurred in preparing this motion. Lexington should not be responsible for indemnifying UPS for these amounts as they are not related to its defense of the Underlying Action.  Subtracting these uncovered costs in the amount of $5,564, Lexington calculates the reasonable indemnification cost of $18,224.50, subject to a $2,500 deductible.

## CONCLUSION

For the foregoing reasons, Lexington respectfully requests that the Court issue an order determining that Lexington only owes UPS $18,224.50 subject to a $2,500 deductible, and any further relief that this Court deems reasonable and just.

Dated:  New York, New York
        November 21, 2013

                                        Respectfully submitted,

                                        SEDGWICK LLP


                                        _____/s/ J. Gregory Lahr_____
                                        J. Gregory Lahr (JL9969)
                                        Ryan C. Chapoteau (RC1986)
                                        *Attorneys for Defendant*
                                        *Lexington Insurance Company*
                                        225 Liberty Street, 28th Floor
                                        New York, New York  10281-1008
                                        Telephone:  212.422.0202
                                        Facsimile:  212.422.0925


To:  Stephen P. McLaughlin, Esq.
     Stefanie A. Bashar, Esq.
     Ansa Assuncao LLP
     707 Westchester Ave, Suite 309
     White Plains, New York 10604

## AFFIRMATION OF SERVICE

I, RYAN C. CHAPOTEAU, ESQ., hereby certify that on the 21st day of November, 2013, the within Defendant Lexington Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Reimbursement of Defense Expenses was filed, and was served to the counsel on record via Electronic Filing at the email addresses provided.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        November 21, 2013

By:   /s/ Ryan C. Chapoteau
      Ryan C. Chapoteau (RC-1986)

14