UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED PARCEL SERVICE, INC.,

Plaintiff,

- against -

LEXINGTON INSURANCE COMPANY,

Defendant.

Case No.: 12-cv-07961 (SAS)

ECF Case

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF UNITED PARCEL SERVICE, INC.'S MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**

ANSA ASSUNCAO, LLP
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... II

PRELIMINARY STATEMENT .......... 1

LEGAL ARGUMENT .......... 3

I. LEXINGTON'S DISCLAIMER EXCUSED ANY NOTICE OBLIGATIONS UNDER THE POLICY. .......... 3

II. UPS'S PAYMENT OF ATTORNEYS' FEES ARE NOT VOLUNTARY PAYMENTS UNDER THE POLICY. .......... 6

III. LEXINGTON'S DUTY TO DEFEND WAS TRIGGERED WHEN UPS FIRST TENDERED ITS DEFENSE. .......... 7

IV. LEXINGTON ASSERTS IMPROPER OBJECTIONS TO ATTORNEYS' SERVICES. .......... 8

V THE POLICY'S DEDUCTIBLE DOES NOT APPLY. .......... 9

CONCLUSION .......... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*American Ref-Fuel Co. of Hempstead v. Resource Recycling, Inc.*,
281 A.D.2d 573, 722 N.Y.S.2d 570 (2d Dep't 2001) ............ 3

*Auerbach v. Otsego Mutual Fire Ins. Co.*,
36 A.D.3d 840, 829 N.Y.S.2d 195 (2d Dep't 2007) ............ 3

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
261 F.2d 293 (S.D.N.Y. 2003) ............ 3

*H.S. Equities, Inc. v. Hartford Accident and Indemnity Co.*,
661 F.2d 264 (2d Cir. 1981) ............ 4

*Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co. of New York*,
31 N.Y.2d 34, 339 N.Y.S.2d 97 (1972) ............ 6

*Lentini Brothers Moving & Storage Co., Inc. v. New York Property Insurance Underwriting Association*,
53 N.Y.2d 835, 440 N.Y.S.2d 174 (1981) ............ 3

*Mid City Dodge, Inc. v. Universal Underwriters Ins. Co.*,
306 A.D.2d 868, 761 N.Y.S.2d 897 (4th Dep't 2003) ............ 4

*Moye v. Thomas*,
153 A.D.2d 673, 544 N.Y.S.2d 675 (2d Dep't 1989) ............ 4

*Park Place Entertainment Corp. v. Transcontinental Ins. Co.*,
No. 01 Civ. 6546, 2003 WL 1913709 (S.D.N.Y. April 18, 2003) ............ 7

*Smart Style Industries, Inc. v. Pennsylvania General Ins. Co.*,
930 F.Supp. 159 (S.D.N.Y. 1996) ............ 6, 7, 8

*State Farm Insurance Co. v. Domotor*,
266 A.D.2d 219, 697 N.Y.S.2d 348 (2d Dep't 1999) ............ 3

*Stellar Mechanical Services of New York, Inc. v. Merchants Ins. of New Hampshire*,
74 A.D.3d 948, 903 N.Y.S.2d 471 (2d Dep't 2010) ............ 7

*U.S. Underwriters Ins. Co. v. Tauber*,
604 F.Supp.2d 521 (E.D.N.Y. 2009) ............ 4

*Wasau Underwriters Ins. Co. v. QBE Ins. Corp.*,
496 F.Supp.2d 357 (S.D.N.Y. 2007) ............ 6

Plaintiff United Parcel Service, Inc. ("UPS"), by its attorneys, Ansa Assuncao, LLP, submits this reply memorandum of law in further support of its motion for attorneys' fees and litigation expenses incurred in defending *Chase v. United Parcel Service, Inc.*, Index No. 7445/10 (Supreme Ct. Kings County) (the "Underlying Action"), plus interest, and attorneys' fees and costs of this motion.

## PRELIMINARY STATEMENT

This Court held that Defendant Lexington Insurance Company ("Lexington") must reimburse UPS for the reasonable attorneys' fees and litigation expenses incurred in defending the Underlying Action, plus interest. These fees and expenses are $37,772.73.

While Lexington does not dispute the reasonableness of the total amount, it persists in asserting meritless arguments to avoid its obligations to UPS under the policy. Lexington's arguments should be rejected for the following reasons.

First, Lexington cannot use the policy's notice provision as a means to reduce its liability for UPS's defense costs. UPS had no obligation to notify Lexington of the Underlying Action or forward Marilyn Chase's ("Chase") Complaint to it. Lexington had already denied UPS's tender of Chase's claim before the Underlying Action was commenced. Lexington's disclaimer excused UPS from any further obligations under the policy. An insurer has no right to demand continuing compliance with a policy's notice provision after it repudiates liability.

Second, any additional notice requirement for the Underlying Action was fulfilled by Adelis International Security, Inc. ("Adelis"), the policy's named insured. Lexington cannot claim that it did not have notice of the Underlying Action or a copy of Chase's Complaint because Adelis provided them.

It is disingenuous to suggest that UPS's recovery should be reduced because it failed to provide multiple notices to Lexington of the Underlying Action. Those notices would have been

futile in light of the disclaimer. They would not have changed Lexington's refusal to provide a defense. It maintained this position until the time this Court granted UPS's motion for partial summary judgment on the duty to defend.

Third, the policy's voluntary payment provision did not require UPS to obtain Lexington's prior approval of the attorneys' fees and litigation expenses under these circumstances. After it disclaims coverage, an insurer has no pre-approval right. Here, UPS did not voluntarily pay the attorneys' fees and expenses to defend itself in the Underlying Action. UPS was forced to incur these costs because Lexington breached its obligation and refused to defend UPS.

Fourth, all services were reasonable and necessary to the defense of the Underlying Action. Lexington should not be allowed to "nickel-and-dime" UPS on the fees and expenses it incurred due to Lexington's breach. Lexington had notice of Chase's claim before the Underlying Action was commenced. Lexington should have defended UPS from the beginning. If Lexington had honored its contractual duties, it could have controlled the course of the litigation and the corresponding costs. Instead, it improperly refused to defend UPS. Lexington must now pay the defense costs. It should not be allowed to decide which fees it believes were necessary to the defense of the Underlying Action.

Finally, Lexington improperly tries to apply the policy's deductible to the fees. Adelis is responsible for the deductible. Lexington cannot collect two deductibles for the same occurrence.

## LEGAL ARGUMENT

**I.**

**LEXINGTON'S DISCLAIMER EXCUSED ANY NOTICE OBLIGATIONS UNDER THE POLICY.**

This Court should reject Lexington's argument that UPS is not entitled to attorneys' fees prior to June 20, 2012 because UPS did not provide notice of the Underlying Action until then. This argument is contrary to law.

An insurer "may not insist upon adherence to the terms of its policy after it has repudiated liability on the claim by sending a letter disclaiming coverage." *State Farm Insurance Co. v. Domotor*, 266 A.D.2d 219, 220, 697 N.Y.S.2d 348, 350 (2d Dep't 1999); *see also Auerbach v. Otsego Mutual Fire Ins. Co.*, 36 A.D.3d 840, 842, 829 N.Y.S.2d 195, 196 (2d Dep't 2007). Once an insurer repudiates liability, the insured is excused from any further obligations under the policy. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F.2d 293, 295 (S.D.N.Y. 2003); *Lentini Brothers Moving & Storage Co., Inc. v. New York Property Insurance Underwriting Association*, 53 N.Y.2d 835, 836, 440 N.Y.S.2d 174, 175 (1981); *State Farm Insurance Co.*, 266 A.D.2d at 220, 697 N.Y.S.2d at 350.

For example, in *American Ref-Fuel Co. of Hempstead v. Resource Recycling, Inc.*, 281 A.D.2d 573, 574, 722 N.Y.S.2d 570, 570 (2d Dep't 2001), the insurers notified their insured that they would not provide a defense for possible causes of action arising from its employee's injuries. The court held that since this notice served as a repudiation of the insurers' liability, the insured was excused from further compliance with its obligations under the policy. The court held that the insurers could not rely on the insured's subsequent noncompliance as a defense to their duty to defend the insured in the employee's underlying personal injury action. The court held that the insurers were obligated to defend and indemnity the insured.

The insurer's repudiation of liability on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy. *H.S. Equities, Inc. v. Hartford Accident and Indemnity Co.*, 661 F.2d 264, 270 (2d Cir. 1981). Courts reject the insurer's attempt to insist upon timely notice of a lawsuit after its repudiation of liability. For example, in *Mid City Dodge, Inc. v. Universal Underwriters Ins. Co.*, 306 A.D.2d 868, 761 N.Y.S.2d 897 (4th Dep't 2003), the insured established that the insurer had already disclaimed coverage when it first received notice of the underlying claim. The court held that the insured established as a matter of law that forwarding the legal papers in the underlying action "would have been a useless act." *Id*. at 869, 761 N.Y.S.2d at 898, quoting *Moye v. Thomas*, 153 A.D.2d 673, 674, 544 N.Y.S.2d 675, 676 (2d Dep't 1989). The court granted judgment in favor of the insured on liability and remitted the matter to determine the damages on its claims for indemnification under the policy and for its attorneys' fees, costs and disbursements associated with the defense of the underlying action.

Similarly, in *U.S. Underwriters Ins. Co. v. Tauber*, 604 F.Supp.2d 521 (E.D.N.Y. 2009), the insurer learned of an infant's injury from his attorney six months later. The insurer disclaimed coverage for failure to provide timely notice of the injury and the policy not covering the incident. The infant sued the insured. The insurer learned of the action over a year later when it received a notice for motion of default judgment. The insurer disclaimed coverage again for failure to provide timely notice of the action. The court rejected the insurer's notice argument, noting that the insurer had disclaimed coverage before the action was filed. The court held that the insured and the infant had no obligation to provide notice.

The result should be the same here. On November 18, 2009, UPS provided notice of Chase's claim and tendered its defense to Lexington. On December 3, 2009, Lexington denied

UPS's tender request because it concluded that the incident was the direct result of UPS's sole negligence. Lexington confirms this tender and denial. (Declaration of Ralph J. Panetta, dated November 20, 2013 ("Panetta Dec."), at ¶¶ 3-4.)

Lexington's disclaimer excused UPS from further obligations under the policy. Since this disclaimer occurred prior to Chase's commencement of the Underlying Action, UPS had no obligation to notify Lexington that the Underlying Action was commenced or forward any legal papers received in connection with the Underlying Action.[1] These actions would have been useless because Lexington had already made its determination.

The cases cited by Lexington are inapposite. None of them involve the insured's notice obligations after it was sued on a claim for which the insurer previously disclaimed coverage.

In any event, Lexington received notice of the Underlying Action and a copy of Chase's Complaint from Adelis, at the latest on or about October 7, 2010, when UPS commenced the third-party action. The policy places the burden of notice upon Adelis, the named insured. Specifically, the policy states that "[i]f a claim is made or 'suit' is brought against any insured, you must . . . notify us as soon as practicable. You must see to it that we receive written notice of the claim or 'suit' as soon as practicable." (Chapoteau Dec., Exhibit A, Form PRG 3161, at Section IV(2)(b), p. 17.) The word "you" refers to the named insured shown on the declarations. (*Id.*, at p. 1.) The declarations list Adelis as the named insured. (Chapoteau Dec., Exhibit A, Commercial General Liability Declarations Including Professional.) The notice provision,

[1] Despite Lexington's contentions, the policy also does not require UPS to notify Lexington that it retained counsel, filed an answer and was engaged in discovery, or otherwise keep Lexington apprised of the litigation. The policy only requires Lexington to be sent legal papers received in connection with a suit. (Declaration of Ryan C. Chapoteau, dated November 21, 2013 ("Chapoteau Dec."), Exhibit A, Form PRG 3161, at Section IV(2)(c), p. 17.) That obligation was excused by Lexington's prior disclaimer.

therefore, applies to Adelis, not UPS as an additional insured. *Wasau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F.Supp.2d 357, 361 (S.D.N.Y. 2007). UPS is entitled to rely upon Adelis's notice to the Lexington for compliance with any notice obligations. *Id.*

**II.**

**UPS'S PAYMENT OF ATTORNEYS' FEES ARE NOT VOLUNTARY PAYMENTS UNDER THE POLICY.**

Lexington misconstrues the policy's voluntary payment provision in an effort to avoid paying attorneys' fees prior to June 20, 2012. The policy's voluntary payment provision states that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (Chapoteau Dec., Exhibit A, Form PRG 3161, at Section IV(2)(d), p. 17.)

Lexington twists this provision to create a fictitious requirement that UPS must seek Lexington's consent to retain counsel and incur fees and costs associated with the Underlying Action. There is no basis to require this consent when Lexington had previously disclaimed coverage. *Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co. of New York,* 31 N.Y.2d 34, 339 N.Y.S.2d 97 (1972).

Lexington's reliance on *Smart Style Industries, Inc. v. Pennsylvania General Ins. Co.*, 930 F.Supp. 159 (S.D.N.Y. 1996) is misplaced. The case actually supports UPS's position. The court held that a voluntary payment provision "cannot literally be read as prohibiting an insured from incurring any expense without the explicit prior approval of the insurer." *Id*. at 163. Rather, the provision must be construed according to the insured's reasonable expectations. The court held that once the insurer was notified of the claim, it was in a position to control or influence the litigation, and it was obligated to provide a defense. The insurer could not avoid that obligation by delaying its consent to the defense costs and then relying on the policy's

voluntary payment provision. When the insurer did not provide its prompt consent, the insured's payments were no longer voluntary within the meaning of the provision.

Here, Lexington denied UPS's tender before the attorneys' fees and expenses in question were incurred. As a result of Lexington's unjustifiable refusal to defend UPS, UPS was forced to incur them. UPS, therefore, did not voluntarily pay them within the meaning of the policy's voluntary payment provision. Lexington cannot now avoid liability for them on the ground that they were paid without its consent. *Smart Style Industries, Inc.*, 930 F.Supp. at 164.

**III.**

**LEXINGTON'S DUTY TO DEFEND WAS TRIGGERED WHEN UPS FIRST TENDERED ITS DEFENSE.**

Lexington argues that its duty to defend was triggered when it received a copy of Chase's deposition transcript. Its theory is that the transcript was the first time it became aware of facts establishing a reasonable possibility of coverage.

Lexington ignores the fact that it was aware of Chase's claims from the beginning. Chase was an employee of Lexington's insured. Lexington had access to her to fully investigate her claims. In fact, Lexington claims it investigated the matter before it disclaimed coverage. (Panetta Dec., at ¶ 4.) Lexington's duty to defend, therefore, was triggered at the time of UPS's first tender. *Park Place Entertainment Corp. v. Transcontinental Ins. Co.*, No. 01 Civ. 6546, 2003 WL 1913709 (S.D.N.Y. April 18, 2003).

Chase did not introduce any new facts or allegations at her deposition. As a result, Lexington cannot argue that her testimony gave it knowledge of facts that it did not already have. *Cf. Stellar Mechanical Services of New York, Inc. v. Merchants Ins. of New Hampshire*, 74 A.D.3d 948, 952, 903 N.Y.S.2d 471, 476 (2d Dep't 2010).

Lexington ignores UPS's arguments that (1) the attorney Lexington appointed to represent Adelis attended the deposition and knew Chase's testimony more than four months earlier; and (2) after the deposition, UPS's attorney in the Underlying Action had several conversations with the attorney in effort to get Lexington to reconsider its denial of tender. These arguments further demonstrate that Lexington is trying to minimize its exposure by arguing that its duty was triggered by its receipt of Chase's deposition transcript instead of when it knew about her testimony months earlier.

If Lexington's argument is accepted, the insurer would have an unfair advantage over its insured. The insurer could improperly deny a defense to the insured, thereby forcing the insured to incur substantial costs in developing evidence to defend itself. The insurer would save these costs and reap the benefits of the insured's efforts when it is ordered to defend the insured. This is an unjust result.

**IV.**

**LEXINGTON ASSERTS IMPROPER OBJECTIONS TO ATTORNEYS' SERVICES.**

Lexington objects to certain services provided by UPS's attorneys in the Underlying Action. There is no basis for its objections.

The question is whether the services were reasonable and necessary to the defense of the Underlying Action. The services at issue meet this standard. For example, UPS's attorneys' preparation for and attendance at meetings with UPS and Liberty Mutual Insurance Company were necessary to update the client and develop the defense of the Underlying Action.

In addition, UPS tendered its defense before the Underlying Action was commenced. At that time, Lexington was in a position to control or influence the litigation. *Smart Style Industries, Inc.*, 930 F.Supp. at 164. Instead, Lexington improperly disclaimed coverage and

forced UPS to retain attorneys to defend it. Lexington should not be allowed to now pick and choose which services it believes were necessary to the defense of the Underlying Action.

**V.**

**THE POLICY'S DEDUCTIBLE DOES NOT APPLY.**

Lexington contends that the policy's $2,500 deductible applies to the payment of UPS's attorneys' fees. Lexington misreads the policy. The policy states that "[t]he Deductible stated in the Declaration applies to each 'occurrence' and 'wrongful act' and shall be paid by the 'Insured.'" (Chapoteau Dec., Exhibit A, Form PRG 3161, at Section III(5), p. 16.)

There is only one occurrence: Chase's incident. As the named insured, Adelis is responsible for paying the deductible. (Chapoteau Dec., Exhibit A, Commercial General Liability Declarations Including Professional.) Adelis was required to pay the deductible in connection with Lexington's defense of it in the third-party action.

Lexington, therefore, is improperly attempting to collect two deductibles for the same occurrence. This should not be allowed.

**CONCLUSION**

For the foregoing reasons and those set forth in its moving papers, UPS respectfully requests that the Court issue an Order granting its motion in its entirety.

Dated: White Plains, New York
November 27, 2013

ANSA ASSUNCAO, LLP
*Attorneys for Plaintiff*

By: s/ Stephen P. McLaughlin
Stephen P. McLaughlin (SM- 4136)
707 Westchester Avenue, Suite 309
White Plains, New York 10604
(914) 298-2260
stephen.mclaughlin@ansalaw.com