UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED PARCEL SERVICE, INC.,

              Plaintiff,

   - against -

LEXINGTON INSURANCE COMPANY,

             Defendant.
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/16/14

**OPINION AND ORDER**

12 Civ. 7961 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

      United Parcel Service, Inc. ("UPS") brought this action seeking a declaration that Lexington Insurance Company ("Lexington") is obligated to defend and indemnify UPS against a Complaint filed against it in an underlying personal injury action.[1] In an Opinion and Order dated October 16, 2013, I granted UPS's motion for partial summary judgment and held that (1) Lexington owed a duty to defend the Underlying Action; and (2) Lexington must reimburse UPS for reasonable attorneys' fees and litigation expenses incurred in defending the

---

    [1] *See Chase v. United Parcel Serv., Inc.*, Index No. 7445/10 (Supreme Ct. Kings Co. filed Mar. 24, 2010).

Underlying Action, plus interest at a rate of nine percent per year.[2] The Opinion, however, did not address when Lexington's duty to defend was triggered and therefore when the damages period began. UPS was directed to file a request for fees and costs within twenty-one (21) days of receipt of the Opinion. On November 7, 2013, UPS submitted a request for attorneys' fees in the amount of $35,269.00, and costs of $2,503.73, totaling $37,772.73. I hereby grant UPS's request for fees and costs albeit in a reduced amount.

## II. LEGAL STANDARD

Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action.[3] The insurer must also pay interest at a

---

[2] *See United Parcel Service v. Lexington Ins. Group*, No. 12 Civ. 7961, 2013 WL 5664989 (S.D.N.Y. Oct. 16, 2013). A detailed factual background is provided in the October 16 Opinion and is not repeated here.

[3] *See United States Fid. & Guar. Co. v. Copfer*, 48 N.Y.2d 871, 873 (1979) ("We agree that the insurer breached its contractual duty to defend and indemnify the insured and thus may be held liable for the expenses the insured incurred in providing for his own defense."); *National Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 962 N.Y.S.2d 9, 11 (1st Dep't 2013) (noting that, "in the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so" (quotation marks and citation omitted)).

rate of nine percent from the date of each legal bill.[4] "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[5] "'The district court retains discretion to determine . . . what constitutes a reasonable fee.'"[6] In determining the amount of a fee award, courts must calculate the "lodestar" figure which represents the "presumptively reasonable fee."[7] "In reducing the 'lodestar' amount, the court may exclude the excessive and unreasonable hours from its calculation by making an across the board reduction, or percentage cut, in the amount of hours."[8]

---

[4] *See Langenberg v. Sofair*, No. 03 Civ. 8339, 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 7, 2006); *National Union*, 962 N.Y.S.2d at 11.

[5] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[6] *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998), ellipsis in original).

[7] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-52 (2010) (stating that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case) (emphasis in original). *Accord Millea*, 658 F.3d at 166 ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'").

[8] *T.S. Haulers, Inc. v. Cardinale*, No. 09 Civ. 0451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing *Green v. City of New York*, 403 Fed. App'x 626, 630 (2d Cir. 2010) (stating that district courts are authorized "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'") (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237

A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel."[9] In making this determination, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."[10] "The reasonable hourly rate for such calculation is determined by the rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."[11] The burden is on the movant to show "by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates."[12]

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'"[13] In doing so, the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and

---

(2d Cir. 1987) (internal quotation marks and citation omitted))).

[9]  *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005).

[10]  *Id.*

[11]  *Streck v. Board of Educ. of the East Greenbush Cent. Sch. Dist.*, 408 Fed. App'x 411, 416 (2d Cir. 2010).

[12]  *Farbotko*, 433 F.3d at 209.

[13]  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

arguments of the parties."[14]

## III. DISCUSSION

### A. Hourly Rates

In support of UPS's request for reimbursement for attorneys' fees and litigation expenses, UPS's counsel submits invoices for services it rendered in defending the Underlying Action.[15] Lexington does not dispute the proposed hourly rates for Steven Orlowski, UPS's lead attorney, or supporting partner, counsel, associates and paralegals from which he received assistance. The Court finds that, in light of factors including the time and labor required, experience and qualifications, and attorney rates in this district, the rates proposed in the Orlowski declaration are reasonable.[16]

---

[14] *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

[15] *See* 11/7/13 Declaration of Steven P. Orlowski, plaintiff's counsel, in Support of Motion for Attorneys' Fees and Litigation Expenses ("Orlowski Decl.") ¶ 6; Lester Schwab Katz & Dwyer, LLP Invoices ("Invoices"), Ex. A to Orlowski Decl.

[16] Steven Orlowski, a member of the law firm Lester Schwab Katz & Dwyer, LLP, has broad experience as a commercial litigator, including personal injury matters, and is regularly compensated at a rate of $190 per hour. Richard Eniclerico, Noah Katz, Jonathon Groubert, and Paul Carney, partners and counsel at the same firm have over fifteen years of litigation experience and are also compensated at a rate of $190 per hour. Robyn Leader, John Kalin, and Julie Shiferman, associates at the firm, are regularly compensated at a rate of $155 per hour. The paralegals, Antoinette Mega, Clayton Phillips, Michelle Lewis, Yassed

## B. Hours Expended

### 1. Damages Period

In his Declaration Orlowski represents the time expended by the firm on the Underlying Action as 197.70 hours.[17] The Invoices, attached as Exhibit A to the Declaration, are detailed time entries that document the attorney who performed the work, the hours expended, and a description of the work performed.[18] These time entries account for the legal services rendered to UPS in defense of the Underlying Action and date from April 28, 2010 through October 24, 2013.[19] Lexington argues that pursuant to the Commercial General Liability Policy (the "Policy"), issued to its named insured, Adelis International Security, Inc. ("Adelis"), UPS had a duty to notify Lexington of the Underlying Action and failed to fulfill this condition precedent by not tendering notice of the Complaint.[20] Lexington further argues that because of UPS's failure to provide proper notice of

---

Baez, Mary Catherine Finnegan, and Kimberly Davidson, are experienced in litigation and compensated at a rate of $80 per hour. *See* Orlowski Decl. ¶¶ 6-14.

[17] *See id.* ¶ 15.

[18] *See* Invoices, Ex. A to the Orlowski Decl.

[19] *See* Orlowski Decl. ¶ 5.

[20] *See* Defendant Lexington Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Reimbursement of Defense Expenses ("Def. Mem.") at 9.

the Underlying Action and seek Lexington's consent to incur defense expenses, it is not responsible for any charges incurred before it received a copy of Marilyn Chase's deposition testimony on June 20, 2012.[21]

"It is established that a repudiation of liability by an insurer on the ground that the loss is not covered by the policy operates as a waiver of the notice requirements contained in the policy."[22] Here, Lexington concedes that it received UPS's November 18, 2009 notice of Chase's claim and denied coverage on December 3, 2009 reasoning that an internal investigation revealed that Chase's injuries resulted from the sole negligence of UPS.[23] UPS also points out that it asserted affirmative defenses regarding Chase's contributory negligence in its Answer.[24] Because Lexington was on notice of the claim from the outset of the Underlying Action, its duty to defend was triggered when UPS first tendered its

---

[21] *See id.*

[22] *H.S. Equities, Inc. v. Hartford Acc. and Indem. Co.*, 661 F.2d 264, 270 (2d Cir. 1981).

[23] *See* 11/20/13 Declaration of Ralph J. Panetta, defendant's claims analyst, in Support of Lexington Insurance Company's Opposition to Plaintiff's Motion for Reimbursement of Defense Costs ¶¶ 3-4.

[24] *See* UPS's Verified Answer, Ex. E to 11/7/13 Declaration of Stephen P. McLaughlin, counsel to plaintiff ¶ 8.

defense[25] and Lexington's disclaimer thereby excused UPS from further obligations under the Lexington Policy.

Finally, Lexington's reliance on *Smart Style Industries, Incorporated v. Pennsylvania General Insurance Company* is misplaced.[26] While the court noted that a "voluntary payments" clause is enforceable and that costs incurred before consent is given may not be reimbursed, it ultimately rejected the insurer's argument that coverage is not triggered until an insurer actually gives its consent.[27] The court reasoned that, "once the duty to defend is triggered, it would be unreasonable for an insurer to withhold consent for reasonable expenses incurred after notice was given, merely because consent had not yet been granted when those reasonable expenses were incurred."[28] Once UPS notified Lexington of the Underlying Action the duty to defend was triggered and Lexington was in a position to control or influence the litigation. Accordingly, UPS was also not

---

[25] *See Park Place Entm't Corp. v. Transcon. Ins. Co.*, No. 01 Civ. 6546, 2003 WL 1913709, at *2 (S.D.N.Y. Apr. 18, 2003) (citing *Fitzpatrick v. American Honda Motor Co., Inc.*, 78 N.Y.2d 61, 67 (1991)).

[26] *See* 930 F. Supp. 159, 163 (S.D.N.Y. 1996).

[27] *See id.* ("'Voluntary payments' clause cannot literally be read as prohibiting an insured from incurring any expense without the explicit prior approval of the insurer. Rather, the clause must be construed according to the reasonable expectations of the insured.").

[28] *Id.* at 164.

required to seek Lexington's consent to retain counsel and incur litigation expenses in the Underlying Action.

### 2. Declaratory Judgment Action

Lexington argues that UPS is not entitled to reimbursement for expenses it incurred in the declaratory judgment action nor for those in connection with its fee application.[29] It is well settled in New York that "an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy."[30] However, it is also well settled that the time spent on an attorney's fee application is compensable.[31]

The expenses incurred in the declaratory judgment action are set forth in the Declaration of Ryan C. Chapoteau.[32] Lexington suggests a reduction in

---

[29] *See* Def. Mem. at 11.

[30] *Continental Info. Sys. Corp. v. Federal Ins. Co.*, No. 02 Civ. 4168, 2003 WL 145561, at *5 (S.D.N.Y. Jan. 17, 2003) (citing *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 323 (1995); *Mighty Midgets Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979)).

[31] *See Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1064 (S.D.N.Y. 1992) (citing *Gagne v. Maher*, 594 F.2d 336 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980)).

[32] *See* 11/21/13 Declaration of Ryan C. Chapoteau, defendant's counsel, in Support of Defendant Lexington Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Reimbursement of Defense Expenses; Opposition to Lester Schwab Katz & Dwyer, LLP Invoices, Ex. C to Chapoteau Decl.

those fees should be $5,564.00.[33] It is impossible to say precisely how much time plaintiff's counsel devoted to prosecuting the declaratory judgment action. But a review of the time records reveals that a reduction of $3,000.00 is a fair reduction. Based on these hours and the reasonable hourly rates described above the total fees awarded at this time are $32,269.00.[34]

### C. Costs

UPS also seeks $2,503.73 in costs for expenses incurred including court fees, transcript fees, process server fees, medical record fees, and copying fees.[35] These amounts appear reasonable and are included in UPS's fee award.

## IV. CONCLUSION

In sum, UPS seeks $35,269.00 in attorneys' fees and $2,503.73 in costs. In the Court's discretion, a reduction in the amount of $3,000.00 was made to adjust for the non-compensable time spent on the declaratory judgment action. Accordingly, UPS is hereby awarded total attorneys' fees of $32,269.00 and total

---

[33] *See* Def. Mem. at 12.

[34] (170.6 hours x $190 per hour) + (.80 hours x $95 per hour) + (9.0 hours x $155 per hour) + (17.3 hours x $80 per hour). Because Adelis as the named insured was required to pay the per-occurrence deductible, Lexington may not now attempt to improperly collect two deductibles for the same occurrence and this amount is not subject to the Policy's $2,500 deductible.

[35] *See* Orlowski Decl. ¶ 17.

Accordingly, UPS is hereby awarded total attorneys' fees of $32,269.00 and total costs of $2,503.73, for a combined award of $34,772.73. However, UPS may submit a request for fees incurred in bringing this motion if it does so no later than close of business on January 22, 2014. The Clerk of the Court is directed to close UPS's motion for attorneys' fees and costs (Docket Entry # 36).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       January 15, 2014

## - Appearances -

**For Plaintiff:**

Stefanie Ann Bashar, Esq.
Stephen P. McLaughlin, Esq.
Ansa Assuncao, LLP
707 Westchester Avenue, Suite 309
White Plains, NY 10604
(914) 298-2271

**For Defendant:**

J. Gregory Lahr, Esq.
Sedgwick, LLP
225 Liberty Street, 28th Floor
New York, NY 10281
(212) 898-4014

Ryan Christopher Chapoteau, Esq.
Sedgwick, LLP
125 Broad Street
New York, NY 10004
(212) 898-402