```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED PARCEL SERVICE, INC.,              :
                                          :     Civil Action No.
              Plaintiff,                  :     1:12-cv-07961-SAS
                                          :
    -against-                             :
                                          :     Oral Argument Requested
LEXINGTON INSURANCE COMPANY,              :
                                          :
              Defendant.                  :
---------------------------------------------------------------x
```

**DEFENDANT LEXINGTON INSURANCE COMPANY'S
MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**

 

SEDGWICK LLP
225 Liberty Street, 28th floor
New York, New York 10281
Telephone: (212) 422-0202
Facsimile: (212) 422-0925

Attorneys for Defendant
LEXINGTON INSURANCE COMPANY

DOCS/18423890v1

Defendant Lexington Insurance Company ("Lexington"), by and through its attorneys, Sedgwick LLP, hereby submits its memorandum of law in opposition to the motion for attorneys' fees submitted by Plaintiff, United Parcel Service, Inc. ("UPS").

## PRELIMINARY STATEMENT

This is an insurance coverage action in which UPS seeks coverage for defense costs and indemnity under a Lexington commercial general liability as it relates to an underlying personal injury matter pending in New York state court. In prior Orders, the Court has determined that Lexington owes a duty to defend UPS, and awarded a specific amount to be reimbursed under the Lexington Policy.

UPS's instant motion improperly seeks attorneys' fees incurred as part of its motion for partial summary judgment on the duty to defend under the Lexington Policy. As explained below, UPS does not cite to any statute or contract as a basis to depart from the American rule that does not award a prevailing party its attorneys' fees. See, e.g., Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186 (2d Cir. 2003) ("Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule.")

Moreover, UPS' motion is contrary to well-established New York law involving declaratory judgment actions as set forth in Mighty Midgets, Inc. v. Centennial Insurance Co., 416 N.Y.S.2d 559 (N.Y. 1979): "In contrast with other legal systems . . . it has now been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights. . . . There is nothing in the nature of this suit for declaratory judgment that should cause us to add to the exceptions to this now ingrained policy."

Consequently, UPS' motion should be denied.

**BACKGROUND**

A.  **UPS' Initial Motion for Partial Summary Judgment**

In its motion for partial summary judgment filed on June 25, 2013, UPS moved for a determination of whether it was owed a defense under Lexington Commercial General Liability Policy No. 43926334 (the "Lexington Policy") for an underlying personal injury action titled <u>Chase v. United Parcel Serv., Inc.</u>, Index No. 7445/10 (Supreme Ct. Kings County, filed Mar. 24, 2010) (the "Underlying Action").

However, UPS did not include the defense invoices incurred in the Underlying Action for which it sought reimbursement. Thus, in the Order dated October 16, 2013 (the "10/16 Order"), the Court noted that, "[b]ecause UPS has not submitted invoices for its defense costs and litigation expenses, a specific award of damages for breach of contract cannot be made at this time. The question of precisely when Lexington's duty to defend was triggered, and therefore when the damages period began, is best addressed through a separate briefing on damages." (10/16 Order, at 20-21.)

B.  **Lexington's Unsuccessful Effort to Obtain the Defense Invoices**

Prior to UPS submitting the separate briefing requested by the Court, Lexington attempted to determine whether it could reach an agreement with UPS on the defense costs amount that may be owed under the Lexington Policy. (<u>See</u> Declaration of J. Gregory Lahr ("Lahr Decl.") dated February 5, 2014.)

By email dated October 23, 2013, Lexington contacted UPS to obtain a copy of the invoices for which UPS sought reimbursement. UPS replied that it was in the process of obtaining them, and on October 30, 2013, Lexington inquired into the status of obtaining the invoices. (<u>See</u> Lahr Decl., ¶¶ 5-7.) By letter dated November 1, 2013, UPS provided summaries of the defense invoices with no narratives showing what work actually was performed by defense

2

counsel, and prohibited Lexington's counsel from sharing the invoices with Lexington – the entity that was to remit payment for the invoices. (Lahr Decl., ¶ 8.)

By email dated November 1, 2013, and through a follow-up conversation with UPS' counsel, Lexington's counsel attempted to obtain the complete defense invoices, as well as permission to share the invoices with Lexington. (Lahr Decl., ¶¶ 9-10.) UPS did not respond to these efforts, and by email dated November 6, 2013, Lexington's counsel again sought to obtain a complete copy of the invoices. (Lahr Decl., ¶¶ 11-12.) UPS ignored Lexington's efforts to resolve this issue.

C.  **UPS' Subsequent Motion for Reimbursement of Defense Costs**

On November 7, 2013, UPS submitted a supplemental brief regarding the fees and costs it claimed were reimbursable pursuant to the 10/16 Order (the "Defense Costs Motion"). Notably, UPS included a complete copy of the defense invoices with its motion, which it previously refused to provide to Lexington, and only then allowed the invoices to be shared with Lexington.[1]

Lexington opposed UPS' Defense Costs Motion with respect to certain defense costs that are not covered under the Policy. That is, because UPS did not provide notice of the Underlying Action until June 20, 2012, and included fees and costs incurred by its defense counsel unrelated to the defense of the Underlying Action, Lexington properly argued that a reduction in the amount being sought by UPS was appropriate.

By Order dated January 15, 2014 (the "1/15 Order"), the Court awarded UPS a specific amount to be reimbursed under the Lexington Policy. The Court also invited UPS to submit a

---

[1] In view of this background, it is curious that UPS asserts in the Declaration of Stephen P. McLaughlin that it made an attempt to avoid the cost of making the Defense Costs Motion (McLaughlin Decl. at ¶ 6), when it repeatedly refused to provide the information that Lexington required to determine what defense costs were being sought, and what amounts were reimbursable under the Lexington Policy.

3

fee application with respect to the Defense Costs Motion, which it did by motion dated February 3, 2014 (the "Fee Application").

## LEGAL ARGUMENT

### A. There is no Legal Basis for UPS' Instant Fee Application

As an initial matter, the need for UPS' Fee Application is entirely its own doing. Because it neglected to include the defense invoices when it initially moved for partial summary judgment, thereby preventing the Court from making a specific award in the 10/16 Order, and then refused to provide complete copies of the defense invoices to Lexington until making its Defense Costs Motion on November 6, 2013, UPS prevented Lexington from having any opportunity to examine the invoices in an effort to reach an agreement with UPS over what may be reimbursed under the Lexington Policy.

Nevertheless, the Fee Application has no legal basis because there is no contract between Lexington and UPS which permits a prevailing party to obtain attorneys' fees, and there is no statute or common law rule that allows it either.

There are numerous cases within the Second Circuit discussing the "American rule" that disallows attorneys' fees for a prevailing party, which is wholeheartedly applied in New York.[2] As explained in Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186 (2d Cir. 2003):

> Under the general rule in New York, attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule. . . .  This policy "provides freer and more equal access to the courts ... [and] promotes democratic and libertarian principles." *Mighty Midgets, Inc.,* 47 N.Y.2d at 22, 416 N.Y.S.2d 559, 389 N.E.2d 1080.  Accordingly, while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create.

---

[2] In this diversity case, the Court should apply the substantive law of New York.  See, e.g., First Roumanian Am. Congregation v. GuideOne Mut. Ins. Co., 862 F. Supp. 2d 293 (S.D.N.Y. 2012) (citing to Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427-28, 116 S.Ct. 2211, 2219-20 (1996)).

4

Here the only contract at issue is the Lexington Policy, and it does not provide a basis for UPS to seek attorneys' fees for prevailing on motions filed in this coverage action. Rather, the only reference to attorneys' fees and costs relates to the duty to defend contained in the Policy, but this duty cannot be extended to provide reimbursement for UPS' Defense Costs Motion. See Mount Vernon City School Dist. v. Nova Cas. Co., 945 N.Y.S.2d 202, 210-211 (N.Y. 2012) (denying request for attorneys' fees because contract was not unmistakably clear that they were allowed). Moreover, there is no statute at issue that allows UPS to recover attorneys' fees, and UPS does not cite to any statute in its Fee Application. As such, there is no legal basis for the Fee Application.

Indeed, had this litigation proceeded in state court, UPS would not be permitted to obtain attorneys' fees for prevailing on its motion for partial summary judgment as set forth in Mighty Midgets, Inc. v. Centennial Insurance Co., 416 N.Y.S.2d 559, 564 (N.Y. 1979) ("In contrast with other legal systems . . . it has now been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights. . . . There is nothing in the nature of this suit for declaratory judgment that should cause us to add to the exceptions to this now ingrained policy."), and New York University v. Continental Insurance Co., 639 N.Y.S.2d 283, 292 (N.Y. 1995) ("It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy.").

UPS' motion for partial summary judgment and subsequent Defense Costs Motion are merely an effort to settle UPS' rights under the Lexington Policy, and Lexington has done nothing to place UPS in a defensive posture in this action to enable it to assert a right to recover attorneys' fees. As such, New York law absolutely prevents UPS from obtaining the relief sought in its Fee Application.

5

In the 1/15 Order, the Court cited to Soler v. G & U, Inc., 801 F. Supp. 1056 (S.D.N.Y. 1992), as grounds to permit UPS to file the Fee Application. However, in Soler the court was considering a fee application submitted by a "prevailing party" in a matter arising under the Fair Labor Standards Act, which contains a fee-shifting provision. Id. at 1059-60. It was only because of the fee-shifting provision in that statute that the plaintiffs were permitted to seek reimbursement for the attorney fee application. Id.

This is consistent with the other case cited in the 1/15 Order, Gagne v. Maher, 594 F.2d 336 (2d Cir. 1979), which also is cited in the Soler decision. In Gagne, a fee application was granted under the Civil Rights Attorney's Fees Awards Act. The court noted as follows:

> We turn first to the question whether Congress intended to authorize an award of attorneys' fees in this situation. In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court held that only Congress can authorize an exception to the usual American rule that attorneys' fees are usually not recoverable by the winning party in litigation in federal courts. Congress thereafter amended 42 U.S.C. § 1988 in the Fees Act, Pub.L. No. 94-559, 90 Stat. 2641 (1976), to permit a federal court to award attorneys' fees to a prevailing party in suits brought to enforce certain civil rights acts, among them 42 U.S.C. § 1983.

Id. at 339. The court considered whether the plaintiff's attorneys could recover fees for services performed in connection with the fee application. Id. at 343-44. In deciding that such fees were recoverable, the court cited to other federal court cases for support, but all of those cases also involved statutes with fee-shifting provisions. Id.

Here, there is no statutory fee-shifting provision available to UPS and, therefore, no legal right to be compensated for preparing the Defense Costs Motion.

Thus, because there is no basis for the Fee Application in contract, statute, or court rule, UPS' motion to recoup fees associated with the Defense Costs Motion should be denied in its entirety.

B.  **Even if UPS is Permitted to Recoup Fees, They are Excessive**

Even if UPS had a legal basis to recover its fees for the Defense Costs Motion, which it does not, the time spent on that effort was overly excessive in view of what it sought to recover.

In UPS' Defense Costs Motion, it sought to recoup $37,772.73 in fees and costs. When UPS finally provided Lexington with the defense invoices (but only through filing the Defense Costs Motion), and as set forth in Lexington's opposition to the Defense Costs Motion, it was willing to reimburse UPS for $18,224.50 in attorneys' fees and costs. As such, UPS filed the Defense Costs Motion to recoup an additional $19,548.23, and as set forth in its current Fee Application, it allegedly incurred $15,991.50 to recover that amount, taking a collective 58.2 hours to prepare the Motion. Thus, UPS' time spent on the Defense Costs Motion was 82% of what it endeavored to recover, which is clearly excessive. See Davis v. City of New Rochelle, 159 F.R.D. 549, 561 (S.D.N.Y. 1994) (noting that courts within the Second Circuit have awarded fee applications in the range of 8 to 24 percent of the total time claimed); Soler v. G & U, Inc., 801 F. Supp. 1056, 1065 (S.D.N.Y. 1992) (granting 10.6% of the amount claimed).

## CONCLUSION

For the foregoing reasons, Lexington respectfully requests that the Court issue an order denying Plaintiff's Motion for Attorneys Fees, and any further relief that this Court deems reasonable and just.

Dated: New York, New York
　　　　February 5, 2014

　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　SEDGWICK LLP

　　　　　　　　　　　　　　　　　　　　　/s/ J. Gregory Lahr
　　　　　　　　　　　　　　　　　　　J. Gregory Lahr (JL9969)
　　　　　　　　　　　　　　　　　　　Ryan C. Chapoteau (RC1986)
　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　*Lexington Insurance Company*
　　　　　　　　　　　　　　　　　　　225 Liberty Street, 28th Floor
　　　　　　　　　　　　　　　　　　　New York, New York  10281-1008
　　　　　　　　　　　　　　　　　　　Telephone:  212.422.0202
　　　　　　　　　　　　　　　　　　　Facsimile:  212.422.0925


To:　Stephen P. McLaughlin, Esq.
　　　Stefanie A. Bashar, Esq.
　　　Ansa Assuncao LLP
　　　707 Westchester Ave, Suite 309
　　　White Plains, New York 10604

8

## AFFIRMATION OF SERVICE

I, RYAN C. CHAPOTEAU, ESQ., hereby certify that on the 11th day of February, 2014, the within Defendant Lexington Insurance Company's Memorandum of Law in Opposition to Plaintiff's Motion for Reimbursement of Defense Expenses was filed, and was served to the counsel on record via Electronic Filing at the email addresses provided.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       February 5, 2014

                                        By:   /s/ Ryan C. Chapoteau
                                              Ryan C. Chapoteau (RC-1986)